UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 7, 2019

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No. 19-1 |
| | ) | Grand Jury Original |
| v. | ) | |
| | ) | VIOLATION: |
| **FREDERICK GOODING,** | ) | |
| | ) | 18 U.S.C. § 1347 (Health Care Fraud); |
| **Defendant.** | ) | 18 U.S.C. § 2 (Causing an Act to be |
| | ) | Done). |
| | ) | |
| | ) | FORFEITURE ALLEGATION: |
| | ) | 18 U.S.C. § 982(a)(7); 21 U.S.C. § 853(p) |
| | ) | (Criminal Forfeiture). |

## INDICTMENT

The Grand Jury charges that:

### Introduction

At all times material to this Indictment:

1. The Medicare Program ("Medicare") was a federal healthcare program providing benefits to individuals who were over the age of 65 or disabled. Medicare was administered by the United States Department of Health and Human Services through its agency, the Centers for Medicare and Medicaid Services ("CMS").

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. Individuals who were eligible to receive services under Medicare were called "beneficiaries" or "recipients." Medical professionals, such as physicians, that enrolled in Medicare and purported to provide covered medical services to beneficiaries were known as "providers."

1

4. For purposes of this Indictment, "Part B" of Medicare paid providers for eligible physician and outpatient medical services provided by a provider to a beneficiary.

5. To participate in Medicare and become a provider, a medical professional or entity had to submit an enrollment application and, among other things, certify to abide by all federal and local laws, regulations, and program rules applicable to providers. Medicare assigned accepted providers a unique provider-identification number for billing purposes. Only those providers that were assigned a provider-identification number could submit claims for payment to Medicare. In most instances, Medicare paid providers for services or items purportedly provided to beneficiaries.

6. To obtain payment for eligible services to beneficiaries, providers submitted and caused to be submitted claims to Medicare. These claims included, among other information, the beneficiary's name, the purported service provided, the date of service, the medical professional who purportedly rendered the service or item, and the amount of money claimed by the provider for the service or item on behalf of the beneficiary. Medicare only paid for services and items that were medically reasonable, necessary, and actually provided as claimed.

7. Medicare also required providers to maintain complete and accurate patient medical records reflecting a beneficiary's medical assessment, diagnoses, and treatment. Medicare required complete and accurate patient medical records both to verify that the services were provided as claimed by a provider and to review the appropriateness of Medicare payments to a provider.

**Defendant and Relevant Entities**

8. From in or around 1996 to in or around 2013, FREDERICK GOODING was a physician licensed to practice medicine in Delaware. From in or around 2012 to in or around the present and for purposes of this Indictment, FREDERICK GOODING was also a physician licensed to practice medicine in the District of Columbia.

9. On or about December 2, 2010, FREDERICK GOODING was sanctioned by the Board of Medical Licensure and Discipline of the State of Delaware ("Delaware Board") for the incompetence in the practice of medicine because FREDERICK GOODING, among other things, performed cervical block injections (generally injecting medicine in and around a patient's neck to alleviate pain) without the use of fluoroscopic guidance (medical-imaging equipment that provides a physician with real-time images of the body to assist in guiding a needle used for an injection).

10. The Delaware Board, among other sanctions, suspended the medical license of FREDERICK GOODING for a period of six months and placed his medical license on a period of probation of approximately two years. The Delaware Board also prohibited FREDERICK GOODING from performing cervical and para-cervical injections.

11. In or around 2012, FREDERICK GOODING applied to renew his license to practice medicine in the District of Columbia. On or about July 13, 2012, the Board of Medicine for the District of Columbia ("D.C. Board") reinstated the medical license of FREDERICK GOODING but with restrictions. The D.C. Board, based on the findings of the Delaware Board, similarly prohibited FREDERICK GOODING from performing cervical and para-cervical injections. On or about February 6, 2014, the D.C. Board terminated its restrictions on the medical license of FREDERICK GOODING.

12. FREDERICK GOODING was the Chief Executive Officer and President of Frederick W. Gooding, M.D. & Associates, P.C., located at 1160 Varnum Street, Suite 202, SE, Washington, D.C. 20017 ("Gooding & Associates").

13. FREDERICK GOODING was a Medicare provider and submitted and caused to be submitted to Medicare claims for Part-B services that he purported to provide on behalf of beneficiaries.

14. From in or around January 2015 to in or around August 2018, FREDERICK GOODING, compared to all Medicare providers in the District of Columbia, Maryland, Virginia, and Delaware, ranked as follows for money paid by Medicare for the following procedures that FREDERICK GOODING purported to provide to beneficiaries at Gooding & Associates:

| Code | Description | Ranking |
|---|---|---|
| 64636 | "Destruction of lower or sacral spinal facet joint nerves with imaging guidance." | #1 |
| 64635 | "Destruction of lower or sacral spinal facet joint nerves using imaging guidance." | #4 |
| 64634 | "Destruction of upper or middle spinal facet joint nerves with imaging guidance." | #1 |
| 64643 | "Injection of chemical for destruction of nerve muscles on arm or leg, 1-4 muscles." | #1 |
| J7326 | "Hyaluronan or derivative, gel-one, for intra-articular injection, per dose" | #1 |
| 64633 | "Destruction of upper or middle spinal facet joint nerves using imaging guidance." | #1 |

## COUNTS ONE - ELEVEN

### Health Care Fraud
### (18 U.S.C. §§ 1347, 2)

15. Paragraphs 1 through 14 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein.

16. From in or around January 2015 to in or around August 2018, the exact dates being unknown to the Grand Jury, in the District of Columbia elsewhere, Defendant

### FREDERICK GOODING

in connection with the delivery of and payment for healthcare benefits, items, and services, did knowingly and willfully execute and attempt to execute, a scheme and artifice to defraud a healthcare benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of Medicare.

### Purpose of the Scheme and Artifice

17. It was a purpose of the scheme and artifice for FREDERICK GOODING to unlawfully enrich himself by, among other things, (a) submitting and causing to be submitted false and fraudulent Medicare claims for Part-B services that FREDERICK GOODING knew were not medically necessary, not provided or both; and (b) concealing the submission of false and fraudulent claims to Medicare.

## The Scheme and Artifice

18. The manner and means by which FREDERICK GOODING sought to accomplish the purpose of the scheme and artifice included, among other things, the following:

19. At Gooding & Associates, FREDERICK GOODING conducted medical visits with beneficiaries who complained of, among other conditions, back and joint pain. FREDERICK GOODING purported to treat the complained-of conditions by primarily injecting the at-issue body part with medicine.

20. At Gooding & Associates, FREDERICK GOODING purported to treat a variety of medical issues around the body with injections. FREDERICK GOODING, for example, purported to inject areas around a beneficiary's spinal facet joints, a procedure that generally involved injecting medicine into a beneficiary's back to reduce back pain. FREDERICK GOODING also purported to perform aspirations, a procedure that generally involved using a needle to remove fluid from a joint to treat joint swelling and discomfort.

21. FREDERICK GOODING submitted and caused to be submitted to Medicare claims for injections and aspirations that were not medically necessary, not provided or both. Medicare paid FREDERICK GOODING on these false and fraudulent claims.

22. FREDERICK GOODING also submitted and caused to be submitted to Medicare claims for injections provided with the aide and benefit of fluoroscopic guidance, as generally described in paragraph 9. FREDERICK GOODING knew that he was not providing such injections with fluoroscopic guidance, as required by Medicare. Indeed, FREDERICK GOODING did not have a fluoroscopy machine at Gooding & Associates. Medicare paid FREDERICK GOODING on these false and fraudulent claims.

23. To disguise his scheme and artifice, FREDERICK GOODING falsified medical documents, such as Procedure Reports, to make it appear as if FREDERICK GOODING performed the purported procedures for claims that were submitted to, and paid by, Medicare.

24. From in or around January 2015 to in or around August 2018, FREDERICK GOODING, billed to Medicare approximately $12.7 million. Medicare paid approximately $3.6 million on those claims.

### Acts in Execution of the Scheme and Artifice

25. On or about the dates set forth below, in the District of Columbia, and elsewhere, FREDERICK GOODING executed and caused to be executed the scheme and artifice, as set forth below:

| COUNT | BENEFICIARY | CODE | DESCRIPTION | APPROX. DATE OF SERVICE | APPROX. PAYMENT |
|---|---|---|---|---|---|
| 1 | K.M. | 64636 | Destruction of lower or sacral spinal facet joint nerves with imaging guidance | 3/31/2016 | $647.74 |
| 2 | K.M. | 64636 | Destruction of lower or sacral spinal facet joint nerves with imaging guidance | 10/13/2016 | $485.81 |
| 3 | G.B. | J7326 | Hyaluronan or derivative, gel-one, for intra-articular injection, per dose | 11/10/2016 | $460.66 |

| COUNT | BENEFICIARY | CODE | DESCRIPTION | APPROX. DATE OF SERVICE | APPROX. PAYMENT |
|---|---|---|---|---|---|
| 4 | G.B. | 64636 | Destruction of lower or sacral spinal facet joint nerves with imaging guidance | 11/10/2016 | $647.74 |
| 5 | A.M. | 64635 | Destruction of lower or sacral spinal facet joint nerves using imaging guidance | 10/11/2016 | $387.48 |
| 6 | A.M. | 64636 | Destruction of lower or sacral spinal facet joint nerves with imaging guidance | 10/11/2016 | $647.74 |
| 7 | Y.A. | J7326 | Hyaluronan or derivative, gel-one, for intra-articular injection, per dose | 6/14/17 | $426.19 |
| 8 | J.G. | 64636 | Destruction of lower or sacral spinal facet joint nerves with imaging guidance | 2/16/2016 | $647.74 |
| 9 | J.G. | 64483 | Injections of anesthetic and/or steroid drug into lower or sacral spine nerve root using imaging guidance | 2/27/18 | $202.53 |

| **COUNT** | **BENEFICIARY** | **CODE** | **DESCRIPTION** | **APPROX. DATE OF SERVICE** | **APPROX. PAYMENT** |
|---|---|---|---|---|---|
| 10 | S.B. | 64636 | Destruction of lower or sacral spinal facet joint nerves with imaging guidance | 2/24/2016 | $647.74 |
| 11 | S.B. | 64635 | Destruction of lower or sacral spinal facet joint nerves using imaging guidance | 7/13/2016 | $387.48 |

**(Health Care Fraud, in violation of 18 U.S.C. §§ 1347, 2).**

### FORFEITURE ALLEGATION

26. Upon conviction of any of the offenses alleged in this Indictment, defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived from gross proceeds traceable to the commission of these offenses, pursuant to Title 18, United States Code, Section 982(a)(7). The United States will also seek a forfeiture money judgment against defendant equal to the value of any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of these offenses, pursuant to Title 18, United States Code, Section 982(a)(7).

27. If any of the property described above as being subject to forfeiture, as a result of any act or omission of defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

e.   has been commingled with other property that cannot be divided without difficulty;

defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 982(a)(7); and Title 21, United States Code, Section 853(p)).**

_____ for
JESSIE K. LIU
United States Attorney
D.C. Bar No. 415793

_____
SCOTT ARMSTRONG
Trial Attorney
D.C. Bar No. 993851
Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
202-355-5704
Scott.Armstrong@usdoj.gov

A TRUE BILL:

_____
Foreperson

Dated: July 30, 2019