```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3   United States of America,     ) Criminal Action
                                    ) No. 19-cr-255
 4                  Plaintiff,      )
                                    ) JURY TRIAL
 5   vs.                           ) DAY 4
                                    )
 6   Frederick Gooding,            ) Washington, DC
                                    ) September 9, 2022
 7                  Defendant.     ) Time:  1:30 p.m.
     _____
 8
                      TRANSCRIPT OF JURY TRIAL
 9                        HELD BEFORE
             THE HONORABLE JUDGE TANYA S. CHUTKAN
10                UNITED STATES DISTRICT JUDGE

11   _____

                      A P P E A R A N C E S
12
     For Plaintiff:     JILLIAN D. WILLIS, ESQ.
13                      JIL SIMON, ESQ.
                        U.S. Department of Justice
14                      1400 New York Avenue NW
                        Washington, DC 20005
15                      (202) 353-0822

16   For Defendant:     MICHAEL J. KHOURI, ESQ.
                        Khouri Law Firm, APC
17                      2222 Martin, Suite 215
                        Irvine, CA 92612
18                      (949) 336-2433
                        FREDERICK D. COOKE, JR., ESQ.
19                      Rubin, Winston, Diercks, Harris & Cooke, LLP
                        1250 Connecticut Avenue NW, Suite 700
20                      Washington, DC 20036
                        (202) 861-0870
21   _____

22   Court Reporter:          Janice E. Dickman, RMR, CRR, CRC
                              Official Court Reporter
23                            United States Courthouse, Room 6523
                              333 Constitution Avenue, NW
24                            Washington, DC  20001
                              202-354-3267
25
```

1      *  *  *  *  *  *  *  *AFTERNOON SESSION*  *  *  *  *  *  *  *

2               THE COURT:  I hope you all had a good lunch.  And

3      we're only four minutes behind, so we're improving.  Thank you

4      all for being prompt.

5           Ms. Willis?

6               MS. WILLIS:  Yes, Your Honor.  If we could switch

7      back to publishing Exhibit 7.

8               THE COURTROOM DEPUTY:  This is admitted?

9               MS. WILLIS:  This is admitted.

10              THE COURT:  Yes.

11                   DIRECT EXAMINATION (Cont.)

12                      STEPHEN QUINDOZA

13     BY MS. WILLIS:

14     Q.  Now, Mr. Quindoza, we were talking about Exhibit 7, which

15     is claims data, is that correct?

16     A.  Yes, ma'am.

17     Q.  Now, is the claims data in Exhibit 7, is that in Excel

18     format?

19     A.  Yes.

20     Q.  And does Excel format allow you to filter and to hide

21     certain columns?

22     A.  Yes.

23     Q.  So for ease, does it appear that this spreadsheet has now

24     been filtered for particular individuals and relevant columns?

25     A.  Yes, ma'am.

1    Q.  Okay.  So we were talking about the individual with the

2    initials K.M. in line 19,300.  Do you remember that

3    conversation?

4    A.  Yes, ma'am.

5    Q.  And I think you indicated that there, based on the claims

6    data, was a claim for K.M. on 10-13-2016, associated with CPT

7    code 64636, is that correct?

8    A.  Yes.

9    Q.  Ms. Slater, could you scroll to the right, please?  Stop.

10         Mr. Quindoza, can you tell us if this claim was billed

11   and if Medicare paid?

12   A.  Yes, ma'am.  It was billed and it was paid by Medicare.

13   Q.  Okay.  Let's talk about an individual with the initials

14   G.B.  Ms. Slater, could you scroll back to the left and scroll

15   down to G.B.?  Or it could be up.  It's claim line 19,133.

16         And, Ms. Slater, can you scroll to claim line 19,133.

17         Okay.  And stop.

18         Mr. Quindoza, do you see line 19,133?

19   A.  Yes, ma'am.

20   Q.  Based on the claims data, was there a claim submitted for

21   an individual with the initials G.B. for CPT code 7326?

22   A.  Yes.

23   Q.  And on the same date was there a claim submitted for the

24   same beneficiary for CPT code 64636?

25   A.  For which -- yes.

1    Q.  Now, starting with the claim line 7 -- J7326, Ms. Slater,

2    could you scroll a little bit to the right?  Stop.

3         Do you see a diagnosis code that was submitted with

4    claim -- with the claim in 19,133 for J7326?

5    A.  Yes.

6    Q.  What is that diagnosis code, AG?

7    A.  In AG?

8    Q.  Yes.

9    A.  Osteoarthritis of the knee.

10   Q.  So does AG have the diagnosis code and AH have the

11   description?

12   A.  Yes.

13   Q.  And, Ms. Slater, can you scroll to the right of it?  Was

14   this claim billed and paid?

15   A.  Yes.

16              (Bench conference:)

17              THE COURT:  Okay.  Mr. Cooke?

18              MR. COOKE:  Yes, Your Honor.  The witness is

19   testifying to something that I don't believe he can testify to;

20   that is to say, there's no foundation to show that he knows

21   that the bill was actually paid.  He said this form says it was

22   paid, this form says it was billed, but he doesn't know if it

23   was actually paid.

24              MS. WILLIS:  Right.  I can clarify and say, "Does the

25   claims data indicate this was billed and paid?"

1           THE COURT:  You can cross-examine him.  He's

2      testifying, the records are in evidence.  He's testifying in

3      summary fashion.  He certainly can't say that they were paid,

4      and you can clarify it that way.  I mean, and you can elicit on

5      cross examination.  But I've already told the jury that the

6      purpose of this witness's testimony is just to aid them in

7      interpreting the records.

8           MR. COOKE:  Yes, Your Honor.  My only point is that

9      the words he used were, "It was paid," as opposed to, "This

10     form says it was paid."

11          THE COURT:  Okay.  Ms. Willis will clarify.  Thank

12     you.

13          (Open court:)

14     BY MS. WILLIS:

15     Q.  Just for clarification, Mr. Quindoza, when we're talking

16     about claims billed and paid, is that just based on the claims

17     data?

18     A.  Yes, ma'am.

19          THE COURT:  In other words -- I'm sorry -- you don't

20     have any personal knowledge of whether they were paid or not,

21     it's just what the data shows on the -- what the data shows?

22          THE WITNESS:  Yes, ma'am, just what the data shows.

23          THE COURT:  Thank you.

24     BY MS. WILLIS:

25     Q.  Let's talk about an individual with the initials A.M.

1          Ms. Slater, can you scroll to the claim line No.

2     18,912?

3          Based on your review of the data, was there a claim

4     submitted for a beneficiary with the initials A.M. for CPT code

5     64635, for services on or about 10 -- or, 10-11-2016?

6     A.  Yes.

7     Q.  And, Ms. Slater, if you could scroll to the right?

8          Does the data -- based on the data, was the claim billed

9     and paid?

10    A.  Yes, ma'am.

11          THE COURT:  Ms. Willis, if you could get on the

12    phone.

13          (Bench discussion:)

14          THE COURT:  I think it would be clearer if you said,

15    "Does the data show?"  You know, "Does the data indicate,"

16    instead of, "Based on the data, was the claim paid?"  Because,

17    again, that implies a fact.

18          MS. WILLIS:  Okay.

19          (Open court:)

20    BY MS. WILLIS:

21    Q.  Just for clarification, Mr. Quindoza, when we had the

22    question about was the claim billed and paid, you don't have

23    personal knowledge of that, is that correct?

24    A.  No.

25    Q.  And we're only talking about whether the data shows the

```
 1    claim was billed and paid, is that correct?

 2    A.  Yes.

 3    Q.  Okay.  Thank you.  Now, also for the same date, in the next

 4    line down, 18913, based on the data, was this same

 5    beneficiary -- or, for the same beneficiary, was there a claim

 6    submitted on -- for services on 10-11-2016 for CPT code 64636?

 7    A.  Yes.

 8    Q.  And based on the data, does it show -- the data -- that the

 9    claim was billed?

10    A.  Yes.

11    Q.  Okay.  And paid?

12    A.  Yes.

13    Q.  Ms. Slater, if you could scroll back to the left.

14         On the same date of service, based on the data, for

15    10-11-2016, is there a claim for an ultrasound of arm or leg in

16    claim line No. 18908?

17    A.  Yes.

18    Q.  And that is the same patient, A.M.?

19    A.  Yes, ma'am.

20    Q.  Does that claim include a modifier?

21    A.  Yes.

22    Q.  And what is that modifier?

23    A.  If you could scroll to the right so I could see it?

24         Oh, there it is.  Modifier 59.

25    Q.  Now, was there a claim for -- moving on to a beneficiary
```

1    with the initials Y.A.

2    A.  Yes.

3    Q.  I believe it's at the top.  Okay.  For beneficiary Y.A.,

4    looking at the date of service of 6-14-2017, was there a claim

5    submitted for CPT code J7326?

6    A.  Yes.

7    Q.  And for the record, are we looking at line 12,568?

8    A.  Yes, ma'am.

9    Q.  Ms. Slater, could you scroll to the right?

10        And stop.

11        Is there a diagnosis code associated with this claim

12   submission?

13   A.  Yes.

14   Q.  And what is the description of that diagnosis code?

15   A.  Osteoarthritis of the knee.

16   Q.  Ms. Slater, if you could scroll to the right some more.

17        Stop.

18        Based on the data, was this claim both billed -- just

19   based on the data, both billed and paid?

20   A.  Yes.

21   Q.  For a beneficiary with the initials J.G., in line 22,371,

22   based on the data, was there a claim submitted for a

23   beneficiary with the initials J.G., for the date of service

24   2-16-2016 and the CP code 64636?

25   A.  Yes, ma'am.

1    Q.  And does the data reflect both -- scroll to the right some

2    more, Ms. Slater.

3         Does the data reflect both -- and go back to the left.

4    Keep going.

5         Does the data reflect both a billed amount and a paid

6    amount?

7    A.  Yes, ma'am.

8    Q.  Ms. Slater, if you could go back all the way to the left

9    for J.G.  On this same date, 2-16-2016 -- and when I say on the

10   same date, I am only referring to the date of service reflected

11   in the data -- was there also an ultrasound code submitted?

12   A.  Yes, ma'am.

13   Q.  How many?

14   A.  I'm sorry?

15   Q.  How many?  Oh, just one.  Sorry.  I didn't mean to answer.

16        Do you see one ultrasound code submitted?

17   A.  For the date of February 16, 2016?

18   Q.  Yes.

19   A.  Yes, just one.

20   Q.  And is there a modifier associated with that?

21   A.  Yes.

22   Q.  And what is that modifier?

23   A.  59.

24   Q.  Staying with J.G.  Back to the left, Ms. Slater.

25        Was there a claim submitted for this same beneficiary

```
 1    with the initials J.G. for CPT code 64483 on 2-27-2018?

 2    A.  Yes.

 3    Q.  And is that in claim line -- or, claim detail line 22,492?

 4    A.  Yes.

 5    Q.  And, Ms. Slater, if you could scroll to the right a bit.

 6         And stop.

 7         Does the claims data reflect both a billed amount and a

 8    paid amount?

 9    A.  Yes, ma'am.

10    Q.  Now, going to claim detail line 17,469, was there a claim

11    submitted, based on the data, for a beneficiary with the

12    initials S.B. for CPT code 64636 for a date of service of

13    2-24-2016?

14    A.  Yes, ma'am.

15    Q.  Ms. Slater, could you scroll to the right.

16         Stop.

17         Based on the data, is there both a billed amount and

18    paid amount reflected?

19    A.  Yes.

20    Q.  Ms. Slater, could you take us to claim line 17,502.

21         For this same individual with initials S.B., for date of

22    service 7-13-2016, was there a claim submitted under CPT code

23    64635?

24    A.  Yes.

25    Q.  And, Ms. Slater, could you scroll to the right, please?
```

```
 1            Does the data reflect both billed and paid amounts?

 2    A.  Yes.

 3    Q.  Now, I'm going to ask Ms. Slater to refilter the data.

 4            Mr. Quindoza, were their claims submitted for CPT codes

 5    64635 and 64636 between May, 2017 and May 2018?

 6    A.  Yes, ma'am.

 7    Q.  And if Ms. Slater filters the data, would it help you tell

 8    us how many?

 9    A.  Yes.

10    Q.  Based on the data.  Just based on the data.

11            (Pause.)

12            MS. WILLIS:  I appreciate everyone's patience.  May I

13    have the court's indulgence?

14            THE COURT:  Sure.

15            (Pause.)

16    BY MS. WILLIS:

17    Q.  Okay.  Mr. Quindoza, does the spreadsheet now appear to be

18    filtered for 64635 and 64636, which are the CPT codes in

19    column Q?

20    A.  Yes, ma'am.

21    Q.  Does the date of service also appear to be filtered, which

22    is column J, for dates of service between May 2017 through 2018

23    of the data, which ends in May 2018?

24    A.  Yes, ma'am.

25    Q.  Okay.  Based on this, approximately how many times during
```

1    this time period were these codes submitted?

2    A.  Okay.  If Ms. Slater doesn't mind, highlight any of the

3    columns, then I can do a proper count.  For example, just click

4    on the "Q," column Q, just click on it.

5              No, at the top.  Click on the letter "Q" itself.

6              296 times.

7              THE COURT:  Wow.  I am not good at Excel.

8    BY MS. WILLIS:

9    Q.  Mr. Quindoza, do you work with Excel often?

10   A.  Yes.

11   Q.  Okay.  Now, Mr. Quindoza, we've talked about the claims

12   data in general that SafeGuard Services accesses in the regular

13   course of its business.  And you mentioned that SafeGuard

14   Services regularly accesses claims data for practitioners

15   throughout the country, is that correct?

16   A.  Yes, ma'am.

17   Q.  And in the regular course of its business does SafeGuard

18   Services generate peer comparisons?

19   A.  Yes.

20   Q.  When I say "peer comparisons," data reflecting comparisons

21   between different providers?

22   A.  Yes.

23   Q.  Have you reviewed Exhibits 8A through 8X?

24             MS. WILLIS:  And I'm going to ask Your Honor if I can

25   approach the witness.

1          THE COURT:  Yes.

2     MS. WILLIS:

3     Q.  What am I showing you?

4     A.  This is a CD that I reviewed four days ago.

5     Q.  And did you review the data in Exhibits 8A and 8X to

6     ensure they are true and accurate copies of claims data that

7     SafeGuard Services has access to in the regular course of

8     business?

9     A.  Yes, ma'am.

10          MS. WILLIS:  At this time the government would move

11    to admit Exhibits 8A through 8X.

12          THE COURT:  Any objection?

13          MR. KHOURI:  Lack of foundation.

14          THE COURT:  Overruled.

15    BY MS. WILLIS:

16    Q.  Now, we're not going to publish 8A through 8X.

17          Mr. Quindoza, for the claims data we've been looking at

18    in Exhibit 7 and all of the Exhibits in 8A and 8X, did you

19    prepare some summaries?

20    A.  Yes.

21    Q.  Did you also review underlying enrollment documents related

22    to Frederick Gooding and Gooding Medical Care -- Medical

23    Associates?

24    A.  Yes, ma'am.

25    Q.  And did you create summaries for all of the things that

1    you -- for these things that you reviewed; the Medicare

2    enrollment documents, this data in Exhibit 7, and the data in

3    Exhibit 8A through 8X?

4    A.  Yes.

5    Q.  Now, for the Medicare enrollment data, to prepare that did

6    you review the 8 -- an 855 from 2012 for Mr. Gooding?

7    A.  Yes.

8    Q.  And just for the witness, can you show Exhibit 1, which has

9    already been admitted into evidence.

10            Is this what you based that summary on?

11   A.  Yes, ma'am.

12   Q.  And did you also look at the EFT, or just --

13            THE COURT:  Did you want this up for -- I mean, it's

14   been admitted.  Do you want the jury to have this?

15            MS. WILLIS:  Sure.  Just for the foundation of what

16   the summary is based on.

17            THE COURT:  You can pull it up.

18   BY MS. WILLIS:

19   Q.  Is this the 855 that you reviewed?

20   A.  Yes, ma'am.

21   Q.  Did you also review an EFT?  Or did you base it just on the

22   855?

23   A.  I also reviewed the EFT applications.

24   Q.  Can you show the witness Exhibit 2A, please, Ms. Slater?

25   That's been admitted and may be pulled up.

```
1    BY MS. WILLIS:

2    Q.  Can you scroll through it, Ms. Slater, a little slower, so

3    we can see all the pages?

4    A.  I'm sorry, go back up.  One more.

5            Stop.

6            That is the EFT application.

7    Q.  Okay.  And you can take that down, Ms. Slater.

8            And so is exhibit -- can you show the witness Exhibit

9    9A?  Just the witness.

10           Did you prepare this summary based on those documents?

11   A.  Yes, ma'am.

12           MS. WILLIS:  At this time the government would move

13   to admit 9A.

14           THE COURT:  Any objection?

15           MR. KHOURI:  Same objection, Your Honor.  Foundation.

16   BY MS. WILLIS:

17   Q.  Did you prepare this based on the documents that we just

18   looked at?

19   A.  Yes.

20           THE COURT:  It will be admitted.

21           MR. COOKE:  Phone.

22           THE COURT:  I am going to ask for one lawyer per

23   witness.

24        (Bench discussion:)

25           THE COURT:  Yes?
```

1          MR. KHOURI:  The reason I was indicating that

2     foundation was lacking is he's preparing summaries based upon a

3     form and based upon data that he has no idea where it came from

4     and whether it's reliable.

5          THE COURT:  Okay.  Mr. Khouri, I'm going to tell you,

6     we had a pretrial conference, we submitted -- there were

7     pleadings submitted in this case.  You didn't make this

8     objection about the data then.  So, you objected to the

9     summaries and you objected to the summary testimony, but you

10    didn't make this objection.  And so you're making this now?

11         MR. KHOURI:  Yes, Your Honor.

12         THE COURT:  And why did you not make it before and

13    why is it not waived?

14         MR. KHOURI:  Well, I don't think in a criminal trial

15    you waive an objection.  As a matter of fact, you preserve it,

16    in my opinion, at the trial.  I'm unaware of any order of the

17    Court saying that all objections be submitted before the trial.

18         THE COURT:  You expressly did not object.  And, in

19    fact, if I look right now for the pleadings, I could probably

20    find where you say you don't object.

21         MR. KHOURI:  Well, that's not accurate.  We didn't

22    object based upon the summary exhibits, and that's what --

23         THE COURT:  But you had an opportunity to at the

24    pretrial conference, when the subject of the summary evidence

25    came up.  You had a further chance to object to the

1     reliability, authenticity of the underlying records, and you

2     didn't.

3              MR. KHOURI:  That's true.

4              THE COURT:  All right.  Your objection, just so we're

5     clear, the record is clear, is based on what now?

6              MR. KHOURI:  Lack of foundation as to the

7     authenticity and the reliability of the records.

8              MS. WILLIS:  If I can make argument, if it would be

9     helpful?

10             THE COURT:  Yes, Ms. Willis.

11             MS. WILLIS:  With regards to summary Exhibit 9A, the

12    summary is based on exhibits that have already been admitted

13    into evidence.  So there is no admissibility issue for the

14    underlying records because Exhibits 1 and 2A came in through

15    the Medicare witness at Novitas who -- the jury has seen them,

16    they're already in.  This witness has indicated that he looked

17    through that exhibit, looked at those exhibits that were -- had

18    already been admitted and made a summary of them.

19         So there is no argument that the underlying summary --

20    or, the underlying information is not admissible because it has

21    already been admitted, and admitted without objection, from

22    what I recall, regarding the other summary exhibits.

23         For Exhibits, I guess, 7 through 8X, the government

24    would just note, relying on the same arguments that it made in

25    its pleadings, that these business -- these -- this data, these

1    are -- this is data that is regularly used in the course of

2    SafeGuard Services' business.  I believe in the government's

3    pleading they submitted a Fourth Circuit, I believe, case,

4    where the Fourth Circuit confirmed that the SafeGuard Services'

5    witness could testify about data, such as the claims data.

6         The government would also note that the Exhibits 8A

7    through 8X were also in discovery provided, with a 902(11), to

8    defense counsel from SafeGuard Services, from another employee

9    of SafeGuard Services, about how the claims data is regularly

10   used in the regular course of business.

11        It's a business record and this witness has testified

12   that he is a contractor of Medicare and as part of their duties

13   as a contractor of Medicare, research -- not research -- fraud

14   waste and abuse through their role in administering -- sorry,

15   fraud, waste, and abuse services, they regularly access the

16   claims data that is stored -- or, obtained and then stored -- I

17   can't -- I apologize, remember the exact place that he used.

18        But, he has authenticated that the data that we are

19   looking at is not only data that he recognizes from being here

20   in court today, that he actually confirmed, in their system at

21   SafeGuard Services, that these are true and correct copies of

22   those business records.

23        So I think with all of that, this data is admissible.

24   And this was all argued previously in the government's

25   pleadings regarding the summary exhibits.

```
1              THE COURT:  I agree.  The foundation has been laid,

2      so the objection is overruled.

3              (Open court:)

4              THE COURT:  The objection is overruled.

5          Do you remember the question?

6              THE WITNESS:  Ma'am?

7              THE COURT:  Do you remember the question?

8              THE WITNESS:  No, ma'am.

9              THE COURT:  Okay.  I didn't think so.  You can ask it

10     again, Ms. Willis.

11     BY MS. WILLIS:

12     Q.  Did you prepare summary Exhibit 9A based on Exhibits 1 and

13     2A?

14     A.  Yes, ma'am.

15             MS. WILLIS:  At this time the government would move

16     to admit 9A.

17             THE COURT:  It will be admitted over objection.

18             MR. KHOURI:  Yes.

19             MS. WILLIS:  Permission to publish.

20             THE COURT:  Yes.

21     BY MS. WILLIS:

22     Q.  Now, Mr. Quindoza, based on a -- your review of the

23     underlying enrollment summary -- underlying enrollment forms,

24     what is the NPI number associated with Dr. Frederick Gooding --

25     I'm sorry, Frederick Gooding, MD?
```

1    A.  1255377180.

2    Q.  And is there a NPI number associated with Fredrick W.

3    Gooding, MD, and Associates?

4    A.  Yes.

5    Q.  Is this a summary of information in Exhibits 1 and 2 as it

6    relates to the NPI numbers for Frederick Gooding in those 2012

7    enrollment documents?

8    A.  Yes, ma'am.

9    Q.  Did you also prepare summaries based on the claims data

10   that we looked at in Exhibit 7?

11   A.  Yes.

12          MS. WILLIS:  At this time the government would

13   move -- well, the government would show the witness Exhibit 9B.

14         And, Ms. Slater, can you also show the witness 9C?  Can

15   you show the witness 9E?

16          THE COURT:  E, like egg?

17          MS. WILLIS:  E like egg.

18         Can you show the witness 9J?  And can you show the

19   witness 9F?

20          THE COURT:  F, like Frank?

21          MS. WILLIS:  F, like Frank.

22          THE COURT:  Okay.

23   BY MS. WILLIS:

24   Q.  Mr. Quindoza, are the exhibits that we have looked at in

25   9B, 9J, 9C, 9E, like egg, and 9F, like frank, are these all

1    summaries that you created based on the claims data in

2    Government's Exhibit 7?

3    A.  Yes, ma'am.

4         MS. WILLIS:  At this time the government would move

5    to admit 9B, 9J, 9C, 9E, and 9F?

6         THE COURT:  Same objection?

7         MR. KHOURI:  Yes, Your Honor.

8         THE COURT:  They will be admitted over objection.

9    BY MS. WILLIS:

10   Q.  Ms. Slater, could you publish for the jury Exhibit 9F?

11        Mr. Quindoza, does 9F provide a summary of the data for

12   the dates of service January 6, 2015 to May 2nd, 2018, based on

13   the claims data?

14   A.  Yes, ma'am.

15   Q.  And how many -- based on the data, how many Medicare

16   beneficiaries were treated?

17   A.  392.

18   Q.  And the number of claims?

19   A.  15,023.

20   Q.  The number of services?

21   A.  129,993.

22   Q.  The total amount billed?

23   A.  $12,727,729.03.

24        MR. KHOURI:  Your Honor, objection.

25        (Bench discussion:)

1          THE COURT:  Yes, Mr. Khouri?

2          MR. KHOURI:  This is sort of -- I hate to use the

3    term -- my pet peeve, where the witness is testifying to

4    numerical data and after the testimony it's all highlighted in

5    yellow.  It's giving the wrong impression to the jury, that the

6    evidence is more important than it is, and that somehow the

7    yellow stands for warning, warning, warning, just like a

8    traffic light.

9          THE COURT:  No, Mr. Khouri, as long as the yellow

10   doesn't stay on it.  They're going down item-by-item to show

11   what item number they're referring to, in the same way that a

12   witness can circle something on an exhibit that's up to show

13   what they're referring to, or draw arrows, or anything else.

14   It's taken down, they won't have that.  I don't know if they

15   will have -- they'll probably have the summary because they'll

16   have the summary exhibits.

17        I understand what you're saying, but I don't think the

18   jury is going to be so swayed by yellow highlighter that it's

19   somehow much more reliable with the highlighting than without.

20          MR. KHOURI:  All right.  Thank you very much.

21        (Open court:)

22          THE COURT:  Objection is overruled.

23   BY MS. WILLIS:

24   Q.  I think we went over the total amount billed.  Did you get

25   the number out?

1    A.  Yes, ma'am.

2    Q.  Okay.  And the total amount paid?

3    A.  $3,689,645.41.

4    Q.  Ms. Slater, you can take the highlighting down.

5         Now, regarding the number of claims in the summary, the

6    number of claims are 15,023, is that correct?

7    A.  Yes, ma'am.

8    Q.  And when we looked at the data, the number of claim lines

9    was about -- claim detail lines was about -- I think you

10   testified over 20,000?  I just want to --

11   A.  Just over 29,000.

12   Q.  And can you just tell us -- this summary has the claims of

13   15,000 versus the 29,000 claim detail lines.  Can you tell us

14   how this summary came up with the claims versus that underlying

15   data?

16   A.  A claim represents what a healthcare provider is billing

17   for in terms of what they provided to a patient.

18        THE COURT:  Mr. Quindoza, you just leaned back.  You

19   got further away from the microphone.

20        THE WITNESS:  I apologize.

21        THE COURT:  No, that's fine.  I'm doing it.

22   A.  I'll start again.  A claim has -- is a bill for services

23   that a healthcare provider, like a doctor, provides to a

24   patient.  A claim can have more than one service listed on it,

25   or billed for it.  So, that's why the claims data showed over

1   29,000 claim lines, but they were encompassed in only 15,023

2   claims, because many claims had more than one service.

3   BY MS. WILLIS:

4   Q.  Thank you.  Now, moving on to Government's Exhibit 9B.  Can

5   you publish that for the jury, please, Ms. Slater and

6   Mr. Bradley?  Thank you.  9B, as in boy.

7        Now, Mr. Quindoza, did you also look -- do summaries of

8   the data, the same data from January 2015 to May 2018 for CPT

9   codes 64633 to 64636?

10  A.  Yes, ma'am.

11  Q.  For code 64636, can you tell us the number of Medicare

12  beneficiaries and the data?

13  A.  248.

14  Q.  The quantity billed?

15  A.  5,516.

16  Q.  For 64633, the quantity billed?

17  A.  561.

18  Q.  The amount billed?

19  A.  $420,750.

20  Q.  And the amount paid?

21  A.  $197,424.56.

22  Q.  And for 64634 to 64636, can you go through each line and

23  give us the same information?

24  A.  Sure.  For code 64634, there were 126 beneficiaries.

25  Quantity billed was 1,865.  The amount billed was $650,650.

1    The amount paid by Medicare was 291,719.71.

2            For code 64635, 250 patients.  1,568 was the

3    quantity.  $900,850 was billed.  And Medicare paid $528,246.63.

4    Q.  What was the -- for these codes, what was the total amount

5    that Medicare paid for 64633 to 64636, based on the data,

6    reflected in the summary exhibit?

7    A.  $1,760,005.87.

8    Q.  Ms. Slater, can you pull up 9J?

9            Can you see 9J?

10   A.  Yes, ma'am.

11   Q.  For codes 76881, 76882 and 76942?

12           THE COURT:  I believe -- does a juror have a hand

13   raised?

14           THE COURTROOM DEPUTY:  Is it admitted?

15           THE COURT:  Yes.  Do you all have it?  Thank you.

16   It's been admitted.

17       Just so you know, Mr. Bradley, 9A, B, C, E, F, and J

18   have all been admitted.

19           THE COURTROOM DEPUTY:  J is the one I missed.  Sorry

20   about that.

21   BY MS. WILLIS:

22   Q.  Does this summary reflect --

23           THE COURT:  Excuse me.  Do you all have it now?

24           THE JURORS:  Yes.

25           THE COURT:  Okay.

```
 1    BY MS. WILLIS:
 2    Q.  Does this summary reflect, based on the data, ultrasound
 3    codes that were billed by Dr. Gooding between January 2015 and
 4    May 2018?
 5    A.  Yes, ma'am.
 6    Q.  You can take that down, Ms. Slater.
 7            Ms. Slater, can you publish Exhibit 9C?
 8            And is 9C, for the record, reflect -- based on Exhibit 7
 9    data?
10    A.  Yes, ma'am.
11    Q.  Ms. Slater, could you start with the top box?
12            Mr. Quindoza, for codes 64633 and 64634, what does this
13    summary tell us about the frequency of service -- services for
14    these codes?
15    A.  Let me explain this in its entirety so it makes sense.  If
16    you look at that first row, where it says "All services," that
17    represents everything that was billed for those two codes
18    between January 2015 and May 2018.  There were a total of 129
19    beneficiaries.  Total quantity billed was just over 2,400.
20            THE COURT:  As reflected in the data that you
21    reviewed?
22            THE WITNESS:  Yes, ma'am.
23    A.  And the amount billed was $1,069,600.  Medicare paid
24    $489,144.27.
25            Now, if you look at the next row, where it says, "Two
```

1    or more service dates billed in less than a six-month time

2    period," what is represented there --

3    Q.  And this is just based on the data, just to be clear.

4    A.  Just based on the data alone.

5              -- is when each -- or, one or two of those codes,

6    whether it's 64636 or 64634 --

7    Q.  Clarify, 64633 or 64634?

8    A.  I'm sorry.  Let me repeat, 64633 and 64634, if that code

9    was billed for a patient in less than a six-month period, that

10   is what is reflected in the second row.  So out of 129

11   patients, 71, or 55 percent of them had these services billed

12   in less than a six-month time period.  So, from one date to the

13   next.

14             So that equates to a total quantity billed of

15   2,032 -- 2,032, and shows the amount billed of $894,350 and

16   then Medicaid paid $408,199.12.  The last row represents the

17   percentages of what's outlined in that second row in comparison

18   to the first row.

19             So, for example, of all the 129 beneficiaries,

20   55 percent of them had those services billed in less than a

21   six-month period between each date, and that represented

22   84 percent of all services billed.  And 84 percent of all

23   services -- yeah, 84 percent of all services billed, and

24   83 percent of all services paid.

25   Q.  Thank you, Mr. Quindoza.  And all of this is, again, just

1    for the record, based on the data?

2    A.  Yes, ma'am.

3    Q.  Now, did you do the same data analysis for codes 64635 and

4    64636?

5    A.  Yes, ma'am.

6    Q.  Ms. Slater, can you show us that bottom chart?

7         Now, for 64635 and 64636, for these codes, did you also

8    do the same analysis of how many beneficiaries had service

9    dates in less than a six-month period in which either 64635 or

10   64636 was billed?

11   A.  Yes, ma'am.

12   Q.  Okay.  And what percentage did that reflect?

13   A.  73 percent of all those patients for those services had

14   those services billed, between each one, in less than a

15   six-month period.

16   Q.  And what about the quantity?

17   A.  91 percent.

18   Q.  And the billed amount?

19   A.  91 percent.

20   Q.  And the paid amount?

21   A.  92 percent.

22   Q.  Now, Mr. Quindoza, did you also do a summary of the data as

23   it related to code J7326?

24   A.  Yes.

25   Q.  Ms. Slater, could you publish Exhibit 9E?

```
1              And for the record, is 9E also based on Exhibit 7?
2       A.  Yes, ma'am.
3       Q.  And based on the data in Exhibit 7, what -- how many
4       beneficiaries were billed associated with codes J7326?
5       A.  190.
6       Q.  And the quantity?
7       A.  1,167.
8       Q.  The amount billed?
9       A.  $1,136,745.
10      Q.  And the amount paid?
11      A.  $302,800.19.
12      Q.  Thank you.
13              Ms. Slater, you can take that down.
14              Mr. Quindoza, in addition to the summaries that we just
15      looked at based on Exhibit 7, did you also do summaries of the
16      data based on the peer comparison data in Exhibits 8A through
17      8X?
18      A.  Yes, ma'am.
19      Q.  Ms. Slater, could you show just the witness Exhibits 9G,
20      9H, and 9I?
21              Mr. Quindoza --
22              THE COURT:  9G, 9H, 9I.  Okay.
23      BY MS. WILLIS:
24      Q.  Mr. Quindoza, do the exhibits in 9G, 9H, and 9I reflect
25      summaries that you prepared based on the peer comparison data
```

 1    in Exhibits 8A through 8X?

 2    A.  Yes, ma'am.

 3              MS. WILLIS:  At this time the government would move

 4    to admit Exhibits 9G, 9H, and 9I.

 5              THE COURT:  Same objection?

 6              MR. KHOURI:  Same objection, Your Honor.

 7              THE COURT:  It will be admitted over objection.

 8    BY MS. WILLIS:

 9    Q.  Ms. Slater, could you please publish 9G?

10         Mr. Quindoza, based on the peer comparison data for CPT

11    codes 64633 and 64634, for providers in D.C., Delaware,

12    Maryland and Northern Virginia, where did Dr. Gooding rank as

13    compared to his peers in the quantity of these services billed?

14    A.  Ranked No. 1.

15              MR. COOKE:  Could I have a moment, Your Honor?

16              THE COURT:  Yes.

17              MR. KHOURI:  Your Honor, could we identify the time

18    frame?

19         (Bench discussion:)

20              MR. KHOURI:  Could the witness identify the time

21    period?

22              (Open court:)

23              THE COURT:  You want a time frame?

24              MS. WILLIS:  It may help if we pull out one of the

25    underlying data exhibits.

```
 1                 THE COURT:  Sure.
 2                 MS. WILLIS:  Ms. Slater, could you pull up Exhibit 8A
 3      please?
 4                 THE COURT:  And let me check.  8A is in evidence.
 5      BY MS. WILLIS:
 6      Q.  And could you go to the source statement, I believe?
 7                 Mr. Quindoza, would the time period be in the source
 8      statement?
 9      A.  Yes, ma'am.
10      Q.  And what is the time period for the data?
11      A.  It indicates January 2015 through August 2018.
12      Q.  So January 1st, 2015 to August 31st, 2018?
13      A.  Yes, ma'am.
14      Q.  Is this the time period for the peer comparison data?
15      A.  Yes, ma'am.
16                 THE COURT:  Thank you.
17      BY MS. WILLIS:
18      Q.  Ms. Slater, could you go back to Government's Exhibit 9G?
19      A.  I'm sorry.  May I interrupt?
20                 THE WITNESS:  Your Honor, I need to use the restroom.
21                 THE COURT:  Let's take a little break.
22                 THE WITNESS:  Thank you.
23                 THE COURT:  No problem at all.  Five minutes.
24      Stretch your legs.  We're -- as I said, we're going to go until
25      4:25 today.
```

1              But, Ms. Dickman, how are you doing?  You're good.  All

2      right.

3              Why don't we make this our afternoon break and take ten

4      minutes?  A whole five more minutes.  Thank you.

5              And, as always, ladies and gentlemen, if you need a

6      personal break during the time, just raise your hand, it's not

7      a problem.

8              THE WITNESS:  Thank you, Your Honor.

9          (Recess.)

10          (Whereupon the jurors enter the courtroom.)

11              THE COURT:  All right.  You may continue, Ms. Willis.

12      BY MS. WILLIS:

13      Q.  I believe when we left off we were about to talk about

14      Government's Exhibit 9G.  And just to reorient us, did you

15      prepare Exhibit 9G based on your comparison data from January

16      2015 until August 31st, 2018?

17      A.  Yes, ma'am.

18      Q.  Okay.  And we were looking at codes 3 -- 64633 to 64634, is

19      that correct?

20      A.  Yes, ma'am.

21      Q.  And for the quantity billed, based on the peer comparison

22      data, where did Dr. Gooding rank?

23      A.  He was the highest biller for those two codes.

24      Q.  Now, can we go to the next page, Ms. Slater?

25              For the amount that he billed for that code, where did

1    he rank?

2    A.   He was the third highest, in terms of dollars billed.

3    Q.   And then, Ms. Slater, can you go to the next page?

4         Now, does this chart give us more information about the

5    quantity billed, the number of providers, and the amount?

6    A.   Yes, ma'am.

7    Q.   So, in this peer comparison data, was the total number of

8    providers that we were looking at 337?

9    A.   Yes.

10   Q.   And, again, that's just that limited region that we are

11   talking about; Delaware, D.C., Northern Virginia, and Maryland,

12   is that correct?

13   A.   Yes, ma'am.

14   Q.   Okay.  So how many providers billed 1,000 or more in

15   quantity for 64633 and 64634?

16   A.   Two.

17   Q.   And would this two, based on the data, include Dr. Gooding?

18   A.   Yes.

19   Q.   So this number, just so we're clear what the summary is

20   saying, Dr. Gooding and one other person, based on the data,

21   billed 1,000 or more?

22   A.   1,000 or more, correct.

23   Q.   And how many providers, based on the data, billed

24   $1 million or more for the services 64633 to 6463 -- and 64634?

25   A.   Five.

1    Q.  And then does this chart break down where the rest of the

2    providers in the data fall?

3    A.  Yes.

4    Q.  Ms. Slater, can you publish Exhibit 9H?

5         And is 9H -- is this the summary that you prepared based

6    on that peer comparison data from January 2015 through August

7    2018 for this region that we've been talking about, D.C.,

8    Delaware, Maryland, and Northern Virginia, for these codes

9    64635 and 64636?

10   A.  Yes, ma'am.

11   Q.  And of these providers that you looked at in the peer

12   comparison data, where did Dr. Gooding rank in quantity billed?

13   A.  The highest.

14   Q.  And, Ms. Slater, could you go to page 2?

15        Where did he rank in terms of the amount billed?

16   A.  He was the eighth highest.

17   Q.  And, Ms. Slater, can you go to page 3?

18        And does this chart tell us where -- like, the number of

19   other providers that this peer comparison data included?

20   A.  Yes, ma'am.

21   Q.  Is that 427?

22   A.  Yes.

23   Q.  And the number of providers that billed 1,000 or more of

24   these services?

25   A.  39.

1    Q.  And does that 39 include Dr. Gooding?

2    A.  Yes.

3    Q.  Just based on the data.

4    A.  Yes, ma'am.

5    Q.  And how many providers, based on the data, billed

6    $1 million or more for these services?

7    A.  36.

8    Q.  And does the rest of the chart tell us where the other

9    providers fell?

10   A.  Yes, ma'am.

11   Q.  Now, Mr. Quindoza, did you also do a peer comparison for

12   the code J7326?

13   A.  Yes.

14   Q.  Ms. Slater, can you pull up Government's Exhibit 9I.

15            THE COURT:  That's in.

16   BY MS. WILLIS:

17   Q.  So, for code J7326, based on the data, in D.C., Delaware,

18   Maryland, and Northern Virginia, where did Dr. Gooding rank in

19   the quantity of services provided under J7326?

20   A.  The highest.

21   Q.  Ms. Slater, can you go to the next page?

22            Where, based on this data, did Dr. Gooding rank based on

23   the amount billed?

24   A.  The highest.

25   Q.  Ms. Slater, can you go to page 3?

1              Does this chart, based on the data, tell us how many

2     providers you looked at for the summary?  And when I say,

3     "looked at," just were included in the data?

4     A.  Yes.

5     Q.  Is that 265?

6     A.  Yes.

7     Q.  And of that 265 number in the data, how many providers

8     billed 1,000 or more services from January 2015 to August 2018

9     in the peer comparison data?

10    A.  One.

11    Q.  And does that one reflect Dr. Gooding?

12    A.  Yes.

13    Q.  And how many providers billed $1 million or more for the

14    J7326 code, based on the data?

15    A.  One.

16    Q.  Were there any providers that billed, based on your review

17    of the data, 500 to 99?

18    A.  500 to 999?

19    Q.  500 to 999.  My apologies.

20    A.  None.

21    Q.  And were there any providers that billed $500,000 to 999 --

22    $999,999?

23    A.  No.

24    Q.  And in terms of the next highest providers in this chart,

25    did they fall within 100 to 499 in quantity billed?

1    A.  Yes.

2    Q.  And do they also, for the amount billed, fall between

3    $100,000 and $499,999?

4    A.  Yes.

5    Q.  Tricky numbers.

6            MS. WILLIS:  May I have the Court's indulgence?

7            THE COURT:  Yes.

8        (Pause.)

9            MS. WILLIS:  No further questions for this witness.

10   Thank you.

11           THE COURT:  All right.  Thank you, Ms. Willis.

12       Mr. Khouri?

13           MR. KHOURI:  Yes, Your Honor.

14                        CROSS-EXAMINATION

15   BY MR. KHOURI:

16   Q.  Good afternoon.

17   A.  Good afternoon, sir.

18   Q.  I'm Mike Khouri and I am one of Dr. Gooding's lawyers.

19       And I would like to start out by thanking you for asking

20   for that break.

21       I want to start out by asking you a few questions about

22   the data that we've been looking at.  And specifically --

23           THE COURT:  The jurors are having a hard time hearing

24   you.  If you could -- there.  Thank you.

25           MR. KHOURI:  Now you're all fuzzy.

1              THE COURT:  I'm sorry about the plexiglass.

2     BY MR. KHOURI:

3     Q.  I want to start out by asking you questions about the data

4     that we were looking at.  I think, specifically, it was Exhibit

5     7, the claims data.

6     A.  Yes, sir.

7     Q.  And the claims data starts out by Medicare providers

8     submitting their claims to Medicare, correct?

9     A.  Yes, sir.

10    Q.  And you must be familiar with what is on the claim sheet,

11    for lack of a better term, that's electronically submitted to

12    Medicare?

13    A.  Yes, sir.

14    Q.  And what's on the claim sheet starts out with personal

15    identifying information about the beneficiary, correct?

16    A.  Yes, sir.

17    Q.  And then personal -- and then name, Medicare beneficiary

18    number, the patient number, date of birth, things like that,

19    right?

20    A.  Yes, sir.

21    Q.  And then after that, there's personal identifying data

22    about the Medicare provider or the doctor, correct?

23    A.  Yes, sir.

24    Q.  The doctor's name, Medicare provider number, and other

25    similar types of identifying information, correct?

1    A.  Yes, sir.

2    Q.  And then what the doctor or the doctor's staff fills in is

3    what was done with respect to the patient, things like date of

4    service, correct?

5    A.  Yes.

6    Q.  Things like a procedure code, right?

7    A.  Yes, sir.

8    Q.  Which describes what was done to the patient, right?

9    A.  Yes.

10   Q.  And on that claim form, that is a code that consists of

11   numbers, and sometimes letters, as well, right?

12   A.  Yes, sir.

13   Q.  And in addition to that initial procedure code, the

14   provider might use a modifier, right?

15   A.  Yes, sir.

16   Q.  And that modifier tells Medicare that you got to look at

17   this claim because it changes what the code usually means if

18   it's submitted just all by itself, without the modifier?

19           MS. WILLIS:  Objection, Your Honor.

20           THE COURT:  Excuse me.

21       (Bench discussion:)

22           MS. WILLIS:  It's outside the scope.  And I would

23   just note that we were careful not to ask this witness what the

24   things meant.  I mean, if defense counsel wants to, I just want

25   to clarify that, I mean -- we're getting in inference land and

1    what these things mean.  And so we don't necessarily object to

2    him doing that, but we would ask for the same opportunity, if

3    they do that on cross-examination.

4         THE COURT:  Mr. Khouri, I went and got a copy of

5    *Abou-Khatwa* so I could have it handy and re-read it again

6    during this witness's testimony.  And the government has

7    adhered, in my opinion, very closely and strictly to the

8    guidelines set forth by the Court of Appeals in that opinion.

9    You don't -- I don't think it is -- well, so, therefore, it's

10   beyond the scope and risks opening the door to the government

11   asking all kinds of questions about other things in the data,

12   if you start asking this witness to draw inferences.

13        MR. KHOURI:  Well, I'm not asking him to draw any

14   inferences, I'm just asking him about the billing process.

15        THE COURT:  The question is:  "Question, and that

16   modifier tells Medicare that you got to look at this claim

17   because it changes what the code usually means, if its

18   submitted just by -- all by itself, without the modifier."

19        First of all, it's beyond the scope because Ms. Willis

20   did not ask this witness about what the modifiers mean to

21   Medicare.  And I'm not sure this witness could even talk about

22   what the modifier tells Medicare.  The witness was given data.

23   He's asked to organize the data and compile it and to filter

24   out the data to make certain calculations.  What the modifier

25   tells Medicare is beyond the scope of that testimony and is, in

1    my opinion, asking the witness to start making inferences.

2              MR. KHOURI:  Are you sustaining the objection, Your

3    Honor, and foreclosing this area of questioning?

4              THE COURT:  I'm going to -- if you want to go into

5    that area in cross-examination, you do so at your risk.

6         Well, I think it's beyond the scope.  But if you want to

7    rephrase and ask a question about the data and what it means,

8    then you are opening the door to the government, on redirect,

9    getting into areas that -- well, let's not even say you're

10   opening the door because this witness is not permitted to draw

11   inferences.

12        You can ask the witness about the calculations he made,

13   the data he looked at, how he arrived at the calculations and

14   charts.  But the witness is just testifying as to the

15   summaries.  And I'm not going to let you sow reversible error

16   by having this witness draw inferences and talk about what the

17   modifiers tell Medicare.  I don't think he can answer that

18   question anyway.

19             MS. WILLIS:  Just for the record, I do think -- this

20   witness has been in other courts.  We didn't offer this witness

21   as an expert.  This witness does have a broad base of

22   knowledge.  He's been with Medicare 41 years.  He could answer

23   some questions.  But I guess the government's point is, we

24   didn't run afoul because he's not an expert, we were only

25   talking about the data.  And to the extent the defense went

1    outside of that scope, it may cause us to open the door on

2    redirect.

3              THE COURT:  I don't want there to be any confusion,

4    because I've given the jury a limiting instruction.  If you

5    want to ask this witness about his analysis -- I mean, his

6    interpretation of the data and what the codes mean and what

7    Medicare -- what codes tell Medicare, you can call him as a

8    witness in your case.

9              MR. KHOURI:  Okay.  Thank you.

10         (Open court:)

11             THE COURT:  The objection is sustained.

12   BY MR. KHOURI:

13   Q.  So, the electronic sheet is then sent to Medicare, correct?

14   A.  The claims are submitted electronically to Medicare.

15   Q.  To Medicare.  And on the claim form is there anything else,

16   other than the procedure code and the modifier, if there is

17   one?

18   A.  There can be.

19   Q.  Okay.  Now, once it goes to Medicare, it is then

20   transferred to some national clearinghouse, is that true?

21   A.  Once the claim is processed, it's completed processing,

22   then all claims are archived in what is called the National --

23   National Claims History.

24   Q.  And is that where SafeGuard received the data directly

25   from?

1    A.  That's where it extracts the data from.

2    Q.  Okay.  Now, they extract the data.  Does the data go to any

3    type of fiscal intermediary before it goes to SafeGuard?  Or

4    did you get it directly from the national organization?

5    A.  We get it directly from the National Claims History.

6    Q.  Okay.  All right.  And you compiled the spreadsheets that

7    we looked at from that data, correct?

8    A.  Yes, sir.

9    Q.  Okay.  Now, I would like to direct your attention to

10   Exhibit 7.

11       And I'm going to ask the government to please pull up

12   Exhibit 7.

13       And then, if the government can, please, scroll down to

14   claims line 19,300.

15       Thank you very much.

16       Directing your attention to this claims line, sir,

17   you'll see that the procedure code is 64636.  Do you see that?

18   A.  Yes, sir.

19   Q.  And based upon your experience, that procedure code is what

20   triggers payment, correct?

21   A.  Triggers what?

22   Q.  Well, Medicare pays an amount based upon that procedure

23   code, correct?

24   A.  It may, yes.

25   Q.  Okay.  And if it chooses to pay, it pays based upon what's

1   in the schedule for that procedure code, correct?

2                MS. WILLIS:  (Stands up.)

3                THE COURT:  Sustained.  Beyond the scope.

4   BY MR. KHOURI:

5   Q.  So in the next column it says, "Destruction of lower or

6   sacral spinal facet joint nerves with imaging guidance."

7                Is there anything further description on this exhibit of

8   what "imaging guidance" means?

9   A.  Not on this exhibit.  However, the official CPT description

10  specifies either by CAT scan or by fluoroscopy.

11  Q.  And that specification is in the CPT code book published by

12  the American Medical Association, right?

13  A.  Yes, sir.

14  Q.  Now, thank you for that.

15               Now, could -- could we scroll over to the diagnosis code

16  column?

17               Do you see a diagnosis code at all?

18  A.  There are several.

19  Q.  The diagnosis code for that specific claim, 19 --

20               THE COURT:  Maybe you can refer to the actual column

21  you're talking about?  Is it --

22               THE WITNESS:  Yes, ma'am.  Ms. Slater, if you don't

23  mind, go back a little bit there --

24               THE COURT:  I'm not going to step on Mr. Khouri.  Mr.

25  Khouri, I'll let you take it from here.  I didn't know what

1    column you were talking about.

2             MR. KHOURI:  Thank you.

3    BY MR. KHOURI:

4    Q.  Do you see the diagnosis code that was submitted for this

5    claim?

6    A.  Yes.  There's more than one.

7    Q.  I'm sorry.  I can't hear you.

8    A.  There's more than one diagnosis code for this claim line.

9    Q.  And how many diagnosis codes were there?

10   A.  Let me count.  Ms. Slater, can you scroll to the right,

11   please?

12            Five.

13   Q.  And what were those diagnosis codes?

14   A.  Okay.  Again, Ms. Slater, can you scroll to the left,

15   starting with column AD?

16            There we go.  First one is neuralgia and neuritis.

17   Second one, same.  Third diagnosis says other bursitis.  Fourth

18   diagnosis -- could you scroll a little bit to the right,

19   please -- other inflammatory spondylopathies.  Fifth diagnosis,

20   unspecified internal derangement of unspecified knee.

21   Q.  Okay.  Of unspecified knee.

22            Now, when a diagnosis code is made with respect to an --

23   I may have to scroll to another line -- but with respect to an

24   injection, does it specify in the diagnosis code whether the

25   injection is to the knee or the hip or the shoulder?

```
1              THE COURT:  Ms. Willis, do you have an objection?

2              MS. WILLIS:  I do.

3              THE COURT:  Sustained.  Beyond the scope.

4    BY MR. KHOURI:

5    Q.  With respect to this particular limiting -- or, particular

6    line item, can you tell me where the injection was actually

7    given?

8    A.  Yes --

9              THE COURT:  No.  No, there's an objection.  You're

10   going to have to jump up quicker, Ms. Willis.

11             MS. WILLIS:  Objection, Your Honor.

12             THE COURT:  Sustained.  The witness is testifying

13   about summary data.  The witness has no factual knowledge.

14   I've instructed the jury, the witness has no factual knowledge

15   about the actions that are taken underlying this data.  He's

16   just testifying as an aid to the jury in describing the

17   summaries that were prepared of the data.

18             MR. KHOURI:  May I be heard, Your Honor?

19             THE COURT:  Yes.

20             MR. KHOURI:  Thank you.

21         (Bench discussion.)

22             THE COURT:  Mr. Khouri?

23             MR. KHOURI:  Yes?

24             THE COURT:  I'm letting you be heard.

25             MR. KHOURI:  So -- so, I'm cross-examining him on the
```

1  exhibit that he interpreted so I can understand the exhibit.

2        THE COURT:  He is not interpreting an exhibit.  He's

3  not allowed to interpret an exhibit.  He's allowed to talk

4  about the compilation that he created, the summaries that he

5  created from the underlying data, how he did it, and what the

6  results of certain filters and certain compilations that he

7  did.

8        You're asking -- the minute you start asking him to

9  interpret, you are violating the limiting instruction that I

10  gave the jury.  You cannot interpret the data.  I'm not going

11  to let him.  If you want to call him in your case and interpret

12  the data, you do so at your peril.

13        MR. KHOURI:  So if I ask him about the headings on

14  the exhibit?

15        THE COURT:  You can ask him about the headings.  But

16  you're not asking -- you're asking whether he knows where the

17  injection was given.

18        MR. KHOURI:  If I ask him about the definition of

19  "peers" in the charts, can I not ask --

20        THE COURT:  I'm not giving advisory opinions.  That's

21  not the question you asked and that's not the question for

22  which there's an objection.

23        MR. KHOURI:  Okay.  I'll move on.

24        (Open court.)

25        THE COURT:  Objection is sustained.

1    BY MR. KHOURI:

2    Q.  Okay.  So let's move on and go to Exhibit 9E, please.

3         Oh, I'm sorry, 9G.  I apologize.

4         So at the top of the -- here, at the top of the exhibit,

5    we see other peer comparison -- the words "peer comparison."

6    A.  Yes, sir.

7    Q.  And who is it that defines whose Dr. Gooding's peers are?

8    A.  For these summaries, every practitioner that billed those

9    two codes --

10   Q.  Okay.

11   A.  -- in those particular areas of the country, D.C.,

12   Delaware, Maryland, and Virginia -- or, Northern Virginia.

13   Q.  So any type of physician, correct?

14   A.  Yes, sir.

15   Q.  And did Medicare parcel out physicians that have a

16   substantial Medicare practice?

17   A.  What do you mean by -- I don't understand your question.

18   Q.  Well, did they compare Dr. Gooding to only physicians that

19   basically saw only Medicare patients?

20   A.  This is only based on Medicare.

21   Q.  Right.  But did they compare Dr. Gooding to physicians that

22   only saw Medicare patients in their practice?

23   A.  I couldn't tell you that because I can only -- we can only

24   look at what is billed to Medicare.  So whether these doctors

25   bill exclusively just Medicare patients, we have no idea.

1    Q.  Did your company compare Dr. Gooding to physicians that

2    treated pain by injections only, as opposed to opioids or

3    surgery?

4    A.  The only focus of this peer comparison are those two codes,

5    which is the delivery of those spinal injections.

6    Q.  Okay.  So is the answer that your company did not compare

7    Dr. Gooding's billing --

8                MS. WILLIS:  Objection, Your Honor.

9                THE COURT:  Sustained.

10   BY MR. KHOURI:

11   Q.  Did your company compare Dr. Gooding with other doctors

12   that treated pain by way of injection only?

13               MS. WILLIS:  Objection, Your Honor.

14               THE COURT:  Sustained.

15   BY MR. KHOURI:

16   Q.  So this is a compilation of treatments rendered by all

17   doctors in these four states, using that code?

18   A.  Those two codes only.

19   Q.  Okay.  And would your answer be the same with respect to

20   the other exhibits, with respect to the other similar codes?

21   A.  Yes, sir.

22               MR. KHOURI:  All right.  I have nothing further,

23   given the Court's rulings.

24               THE COURT:  Thank you.

25               Any redirect, Ms. Willis?

1              MS. WILLIS:  Nothing further, Your Honor.

2              THE COURT:  Thank you, Mr. Quindoza.  You may step

3     down.  Have a good weekend.

4              THE WITNESS:  Thank you.

5              THE COURT:  All right.  Ladies and gentlemen, maybe

6     Mr. Khouri will be happy to hear, this evening I'm going to

7     have that plexiglass -- the plexiglass in front of the two

8     podiums taken down, which will, therefore, give you a better

9     view of the witnesses and the jury, and the jury a better view

10    of you, too.  So I hope that will help, in terms of where you

11    are standing and your access to the microphone.  Just in case

12    you come in on Monday and wonder what's different in the

13    courtroom.  It's consistent with our safety protocols, given

14    how far that they are away from the jury.

15             Please come on up.

16             (Bench discussion:)

17             THE COURT:  Mr. Khouri.

18             Have you reached a stipulation?

19             MS. WILLIS:  No.  So, I don't know that the

20    parties -- well, no.  Well, no, the parties don't agree on the

21    redactions in the order and have not been able -- I think the

22    Court is going to have to rule on that.

23             THE COURT:  I'm going to excuse the jury for a

24    minute.

25             (Open court:)

1          THE COURT:  All right.  Ladies and gentlemen, there

2     are a couple legal matters I have to address before we can

3     proceed any further.  So I'm going to ask -- we're going to

4     take a short recess and I'll have you come back once we thrash

5     those out.  Thank you.

6          (Whereupon the jurors leave the courtroom.)

7          THE COURT:  Before we begin, does either side have

8     any objection to me taking the plexiglass down from the

9     podiums?  Podia -- I don't know if that's a word.

10          MR. KHOURI:  None.

11          MS. WILLIS:  No, Your Honor.

12          THE COURT:  That will be done this evening.

13          All right.  With regard to -- you all have not come up

14     with a stipulation, so you're going to move to admit -- let me

15     see the proposed redacted version.

16          Have you come up with a proposed limiting instruction?

17     Anybody?

18          MS. SIMON:  Your Honor, from the government, nothing

19     different than what we had already proposed as the limiting

20     instruction we discussed previously.

21          THE COURT:  Let me see if I have it.

22          (Pause).

23          THE COURT:  This seems rather detailed.

24          MR. COOKE:  Yes, Your Honor.

25          THE COURT:  I mean, did you have further redactions

1    that you proposed, Mr. Cooke?  I'm going to let you handle this

2    issue.

3          MR. COOKE:  I think, Your Honor, we did not have

4    further redactions because our view, on the defense side, at

5    least, was a stipulation would suffice.  The government has not

6    chosen to embrace that position, and that's fine.  I mean, I'm

7    not complaining, I'm just stating what I think is a fact.

8          So, we think this is more detail than is needed for

9    purposes for which the government intends to introduce it.

10         THE COURT:  Well, I think the government is -- given

11   that Mr. -- Dr. Gooding's intent is a crucial issue in this

12   case, I think the government is entitled to put in certain

13   facts that are -- and certain findings from this, which was --

14   which would directly address Dr. Gooding's, you know, knowledge

15   and intent about whether he was permitted to do these kinds of

16   injections without fluoroscopic guidance.

17         For example, on the front page, where it says, "Nature

18   of the case," the last statement, the last sentence in the

19   first paragraph, that states, "complaint alleged that Dr.

20   Gooding violated...by engaging in conduct constituting

21   incompetence in the practice of medicine."  I think we could

22   redact that, just the "by engaging."

23         The next paragraph seems fine to me.

24         The next paragraph, starting with "The board" seems fine

25   to me.

```
1              The next paragraph also seems fine to me.  All very
2      factual.
3              MR. COOKE:  Your Honor, I know it's an extreme risk
4      of interrupting.
5              THE COURT:  It's fine.
6              MR. COOKE:  I think that the challenge is that this
7      board action relates to medical malpractice.  This is not --
8              THE COURT:  But I'm taking that out.
9              MR. COOKE:  Well, I understand that, Your Honor.  But
10     the point of it, as was drafted by whichever lawyers drafted
11     it, it's designed to build to establishing the correctness of
12     the board's finding that Dr. Gooding engaged in medical
13     malpractice in the state of Delaware.
14             THE COURT:  But inherent in that finding -- and,
15     again, I'm willing to take out words about incompetence and
16     malpractice -- but inherent in that finding there was a finding
17     that he should not have performed these injections without
18     fluoroscopic guidance.  He's being charged with billing
19     Medicare for injections that required fluoroscopic guidance,
20     and billing them nonetheless, despite not engaging in
21     fluoroscopic guidance when he did the injections.
22             So the fact that he was sanctioned for doing that, for
23     doing these injections without fluoroscopic guidance, is
24     admissible and relevant to show that he knew he wasn't supposed
25     to do it.  Now, the fact that this was a malpractice or
```

1    incompetence allegation, I agree with you, should not go -- and

2    could the jury infer it?  They could, but we'll have a limiting

3    instruction.  But they're not to infer that, you know, he's a

4    bad person because he did this.  It's being admitted solely for

5    the issue of his intent and his knowledge.  And we'll have an

6    instruction as to that.

7         But you can't totally sanitize it without stripping it

8    of any meaning and relevance.  So, I understand your point, but

9    I think -- I'm going to do my best to take away unduly

10   inflammatory or prejudicial information.  That's why that last

11   sentence, that last phrase, "by engaging in conduct

12   constituting incompetence in the practice of medicine," that

13   must be redacted.  And, again, I'm going line-by-line.

14        Again, it heard argument -- I'm at the paragraph where

15   it says, "The parties represented."  That paragraph is also

16   appropriate.

17        Actually -- yeah, I'm -- with regard to the findings of

18   fact, I think paragraph 1 is appropriate.  Paragraph 2, can't

19   imagine why you wouldn't want that.  You've elicited it, in

20   terms of his -- the practice fields that he's board certified,

21   and that he qualified for his subspecialty certification by

22   experience and is grandfathered in and not required to test.

23   He maintains his continuing medical education.  That all seems

24   fine and appropriate.

25        I would imagine you would want No. 3 in there, that he

```
1    has never been the subject of any prior disciplinary or

2    malpractice actions, unless you want to take out "malpractice."

3    But I think that's -- that's up to you.

4              MR. COOKE:  Yes, Your Honor.  I understand.

5              THE COURT:  No. 4, the first sentence, again, is

6    factual and goes exactly to the -- is directly relevant on the

7    issues here.

8         With regard to the remaining portions of paragraph 4,

9    Ms. Willis, why is that relevant, how he does it?

10             MS. WILLIS:  Ms. Simon.

11             MS. SIMON:  Thank you, Your Honor.

12             THE COURT:  Starting with, "Dr. Gooding uses a

13   technique."

14             MS. SIMON:  We understood that in some of the cross-

15   examination Mr. Khouri was creating an inference --

16             THE COURT:  Oh, yes.  Multiple injections.  Yes.  He

17   crossed -- Mr. Khouri cross-examined a couple witnesses -- two

18   I'm thinking of, but perhaps more -- about whether they were

19   injected at more than one site during a procedure.  And, in

20   fact, I think it was -- it was a tall gentleman.  Mr. Griffith?

21   Or, Mr. Browne -- the fact that he was injected on one side and

22   then injected on another.  So, I think that is relevant.

23             MR. COOKE:  Your Honor, may I be heard?

24             THE COURT:  Yes.

25             MR. COOKE:  It's not part of what he's charged with
```

 1    in this offense.

 2            THE COURT:  It goes directly to a point which

 3    Mr. Khouri took great pains to cross-examine and elicit --

 4    which I would imagine would be on the basis that he was using

 5    some kind of guidance and was using some kind of ultrasound to

 6    move around the needle.  And he spent a fair amount of time

 7    eliciting those facts on cross-examination, so I think that --

 8    that sentence, "Dr. Gooding uses a technique of hitting

 9    multiple targets with only one insertion point" is allowable.

10    The rest of it I don't think is -- is necessary.

11            MR. COOKE:  Okay.  Your Honor, I --

12            THE COURT:  I'm not even sure, that last sentence,

13    "He has performed thousands of injections using the procedure,"

14    arguably, relevant.  But unless you want it, I would take it

15    out.  So I would stop at "multiple targets with only one

16    insertion point."  And I would redact the rest.

17        And then we have -- then we're going to page -- I think

18    that's --

19            MR. COOKE:  The page numbers gets cut off, Your

20    Honor.

21            THE COURT:  It's Bates 095813, paragraph 21.  I think

22    21 and 22, I would --

23            MR. COOKE:  Your Honor --

24            THE COURT:  I would allow redaction of paragraph 23.

25            MR. COOKE:  Your Honor, with respect to paragraphs 21

1   and 23 --

2            THE COURT:  21 and 23?

3            MR. COOKE:  21 and 22.  I'm sorry.  I would ask that

4   those be redacted because it really doesn't make any difference

5   what the sanction is based on.  The fact that he was sanctioned

6   is what the Court, I think, intends for the government to be

7   able to stand up and say, he knew better because he was

8   sanctioned for doing this.  And whether some expert agrees or

9   not is not important.

10           THE COURT:  Well, the Board's finding has to be based

11  on some evidence.  And, again, I'm trying to draw a line here.

12  And I would say 23 could be redacted because it talks about

13  incompetence, technical and dangerous and without proper skill.

14  But 21 and 22 are relevant, I believe, because Mr. Khouri has

15  cross-examined the witnesses about the fact that they're not

16  doctors, they don't know what other doctors are doing, they

17  don't -- you know, quite a bit, and raise the inference that

18  Dr. Gooding, a board certified and experienced physician, knew

19  better than the witnesses, such as Dr. Schaening-Perez and the

20  nurse about what -- you know, what's necessary in these

21  procedures.

22           So I'm going to allow 21 and 22, but not 23.  I think

23  that strikes a proper balance.

24           And 27 I will allow.  It's already been redacted.  29.

25           Now, with regard to 30, do you -- I'm willing to redact

1    to the -- end at "hospital."  And if you want to say, "and

2    voluntarily gave up his privileges due to the reasons related

3    to the nature of his practices and his wife's illnesses at the

4    time," I can redact that.  But I can leave in, "Dr. Gooding is

5    not currently credentialed at any surgery center or hospital."

6    You may want it all because I think it provides some context.

7    That's up to you.

8            MR. COOKE:  Yes, Your Honor.  I understand.

9            THE COURT:  Next page, which is Bates 095815, first

10   paragraph and sentence -- two sentences are fine.

11        The next paragraph, the next -- from, "The panel finds

12   the applicable standard of care," all the way down to the

13   "C-ARM[2]," which is appropriate.

14        The next sentence says, "Dr. Gooding's performed

15   cervical injection in an incompetent manner."  I would take

16   that out, that sentence.  And, again, "Without the fluoroscopic

17   guidance," that can stay in.

18           MS. SIMON:  Excuse me, Your Honor.  Can I briefly be

19   heard on the paragraph you just ended?

20           THE COURT:  Starting with, "Dr. Gooding's performed

21   cervical injection in an incompetent manner"?

22           MS. SIMON:  Yes.  The government would propose

23   leaving in Dr. Gooding "failed to embrace the technology

24   available to him and required by the standard of care in the

25   community."

```
 1              THE COURT:  That will be allowed.  I'm taking out "in

 2    an incompetent manner."

 3              MS. SIMON:  Understood.

 4              THE COURT:  The next sentence, beginning, "Without

 5    the fluoroscopic guidance it is impossible to know," that

 6    sentence is permissible.

 7              The next sentence is permissible.

 8              MR. COOKE:  Your Honor --

 9              THE COURT:  I'm sorry.  And the final sentence, "The

10    panel did not believe that Dr. Gooding's desire to alleviate

11    the pain of multiple injections, however well intended, is a

12    valid reason to deviate from the standard of care," that's

13    permissible.

14              MR. COOKE:  Your Honor, I guess -- not guess, my

15    objection to this is that this is a finding of the Delaware

16    Board of Medicine.  And as I mentioned to counsel for the

17    government, I do some work in this area for the District of

18    Columbia Board of Medicine.

19              THE COURT:  I know you do, Mr. Cooke.  You were

20    also -- you know, for those of you who don't know, Mr. Cooke

21    was what?  What's now called the attorney general.  He was a

22    corporation counsel for the city.  So, yeah, he knows.

23              MR. COOKE:  I oftentimes lie and say I was the

24    attorney general.  It's not really true.

25              THE COURT:  I thought Mr. Racine knew you said that.
```

1          MR. COOKE:  He knows I said that.  He's called me up

2     on that a couple of times, but that's another story.

3          But in the District of Columbia where this particular

4     procedure was performed, this result wouldn't obtain.

5          THE COURT:  Right.  And that's not the point.  Again,

6     I don't want to get -- this is not about -- and I'm going to

7     give limiting instructions -- it's not about whether he's

8     incompetent or not, this goes to his knowledge that he knew,

9     that he had been previously sanctioned for not using

10    fluoroscopy.  So, he knew that, at least previously in his

11    career, whether it was in Delaware or here, he was not -- he

12    had been sanctioned for not using it.  And the District, I

13    believe, imposed reciprocal discipline or reciprocal sanction

14    based on this.

15         MR. COOKE:  Yes, Your Honor.  And we're absolutely

16    fine with that particular disclosure because that happened.

17    And, in fact, as Mr. Khouri pointed out, I think at one point

18    in his cross-examination, that whole supervision or suspension

19    was transferred to the District Board of Medicine, with the

20    consent of Delaware, and he was -- he was supervised here for

21    the period of his suspension, and not in Delaware.

22         THE COURT:  See, the thing is -- and I understand,

23    there is a balance here, you don't want him tried by the jury

24    or convicted by the jury for what he did in Delaware.  And, the

25    problem with simply entering -- reading a stipulation or

1    reading some statement that says he was sanctioned, does not

2    let the jury know the extent to which he was aware that he

3    wasn't to do this because -- and this order does.  And so I

4    believe that the redactions that the government has proposed,

5    together with the additional redactions that I am going to

6    order, together with the limiting instruction, will guard

7    against undue prejudice against him.

8         It is somewhat prejudicial, but its relevance outweighs

9    its prejudicial effect, especially given the precautions that

10   I'm taking.

11        MR. COOKE:  Thank you, Your Honor.

12        THE COURT:  All right.  Now, the last -- this

13   paragraph here that says, "This case highlighted the fact that

14   Dr. Gooding has not kept current with the technology and

15   continued to practice in the same manner," I think that's

16   allowed.  But the next statement, "Dr. Gooding qualified for

17   his board certification by experience in the '80s, which is

18   very different."  That needs to be redacted because it does

19   comment unfairly on his -- I mean, I think it's unnecessary.

20   It's not relevant.  So that sentence, "Dr. Gooding qualified

21   for his board certification by experience," that entire

22   sentence will be redacted.

23        Going on to the next page, 095817.

24        MS. WILLIS:  We just want to make sure that we're

25   keeping up, so that we can do the appropriate redactions.  We

1    struck all the way to, "competencies are evaluated," on the

2    page ending in 5816.  Is that what the court intended?  We just

3    want to make sure we are striking everything.

4            THE COURT:  Wait.  5816.  No, I want it redacted from

5    5815 where it says, "Dr. Gooding qualified for his board

6    certification."  I want that redacted.  So all the rest of it

7    from there until "evaluated" should be redacted.

8            MS. WILLIS:  Thank you.

9            THE COURT:  And going on to 5817, the last sentence,

10   "He received his board certification through a provision that

11   does not require him to recertify."  Again, that should be

12   redacted.  I think that whole paragraph can come out.  Again,

13   it uses the words "competent" and "responsible."  I just think

14   that we don't want -- again, they've already said this.  So

15   that whole paragraph should come out.

16           And the next paragraph, "That panel concludes that the

17   state has sustained its burden of proof in establishing that

18   Dr. Gooding violated the provisions of 24 Del. C. 1731(b)(11),"

19   it should stop there.  So the rest of the sentence, "in that

20   his conduct constituted incompetence," all the rest of that

21   sentence should be redacted.

22           Next, I think paragraph 1 is fine.  Paragraph 2 is fine.

23   Paragraph 3 is fine.  It goes all to his knowledge and intent.

24           Paragraphs 4, 5, 6, and 7 as redacted are all

25   appropriate to me.

1          Now, with regard to paragraphs 8, 9, 10, I just don't

2     think that's necessary.  I think there's enough in there.  I

3     think we can take that out, because he, actually, voluntarily

4     agreed to stop performing injections during that time.  Right,

5     Mr. Cooke?

6               MR. COOKE:  Correct, Your Honor.

7               THE COURT:  And there is no allegation that he

8     performed those injections during that time.

9               MS. SIMON:  That time period is not within the scope

10     of the indictment.

11               THE COURT:  Let's take out 8, 9, and 10.

12          I don't think paragraph -- page 13 -- page 13 can come

13     out in its entirety.

14               MS. SIMON:  Your Honor, may I be heard on that one

15     point?

16               THE COURT:  Yes.

17               MS. SIMON:  At the top of page 13, a couple sentences

18     in, it says, "As a result, Dr. Gooding also requests that he

19     not be required to be trained in fluoroscopy as recommended by

20     the Panel."  The ultimate Board order, it states in the next

21     paragraph, "The state does not oppose a modification to the

22     Order to eliminate the requirement for fluoroscopy training

23     based on Dr. Gooding's representation that he will no longer

24     perform cervical or paracervical injections."

25          So it's the government's position that that, again, is

1    relevant to Dr. Gooding's knowledge --

2              THE COURT:  All right.  Then I would not -- I don't

3    think we need to -- I think, then, that paragraph beginning

4    with, "The state" captures it.  So, take out the preceding

5    paragraph, beginning with, "Dr. Gooding" and ending with

6    "period of probation."  And start with, "The state does not

7    oppose a modification to the Order to eliminate the requirement

8    for fluoroscopy training based on Dr. Gooding's representation

9    that he will no longer perform cervical or paracervical

10   injections."  That sentence can stay.

11        Again, the following is just -- it's just more

12   description of proceedings and I don't think relevant or

13   necessary.  So that single sentence, beginning with, "The state

14   does not oppose," all the way to "paracervical injections" can

15   stay.  The following -- the rest of that paragraph should be

16   redacted, and that last paragraph should be redacted, that's

17   just argument.

18        And the next sentence, "The board has," that should be

19   redacted because it's not a finding, it's just saying the board

20   has considered the recommendation.  So I think that should also

21   come out.  And, again, it uses the word "incompetently."  And

22   it's not -- it's clear that the whole issue -- all of this is

23   about the use of fluoroscopy.  So, again, I'm trying not to,

24   you know, go overboard on this.  So that should come out.  So

25   the entirety of page 14, which is 95821, is redacted.

1          The next -- the next page, 95822, I think that first

2     paragraph can come out also, starting with "The board has broad

3     authority."

4          Again, the next paragraph, the jury doesn't need to know

5     what the board contemplated or what they considered and what

6     Mr. -- Dr. Gooding asked for.  I think that's not factual.

7     That should also come out.  And just then go to the Order.

8          Paragraph 1 is agreeable.  Paragraph 2, paragraph 3,

9     that's all factual.  4.

10         What did I -- because this was in here before, is this a

11    repeat of the order?

12            MS. SIMON:  Your Honor, this is the final order from

13    the Board.  So, to be consistent, I think we would redact what

14    is paragraph 5 here.

15            THE COURT:  Yes.  If I've redacted the

16    recommendations, then it should be consistently redacted.  Yes,

17    consistent with the redactions in the recommendation, the final

18    order should be redacted in that way.

19            MS. SIMON:  So the record is clear, Your Honor, we

20    would then redact, on page ending Bates 95824, paragraphs 5, 6,

21    7, and 8, in addition to the portion that's already redacted on

22    the top?

23            THE COURT:  Yes.  Can I keep this?  Is this -- all

24    right.  Thank you.

25            Okay.  It's 3:30.  If you want to move -- formally rest,

1    move your exhibit in, subject to redactions that they'll get --

2    I mean, how do you want to do this?  Because we have an hour.

3    Well, 40 minutes.

4            MS. WILLIS:  Okay.  I think the government's plan

5    would be to move this exhibit in as Exhibit 36, without further

6    comment, subject to redaction, and then rest.

7            THE COURT:  But I'm getting looks from defense

8    counsel because they also want a stipulation.  I don't know

9    where that leaves us with timing because I don't know what they

10   want.

11           Why don't you talk amongst each other for a second

12   about what stipulation you want.

13           MR. KHOURI:  Your Honor, for a separate matter, I

14   have a motion to make; a couple motions to make.

15           THE COURT:  So I'm going to factor that in as well.

16           (Off-the-record discussion between counsel.)

17           MR. COOKE:  Your Honor, we decided that we would --

18   the government is going to introduce, before their case closes,

19   Exhibit 10E, which is an order issued by the District of

20   Columbia Board of Medicine that terminates Dr. Gooding's

21   probationary status here in the District and restores him to

22   practice.

23           THE COURT:  So I'll put that entered by the

24   government, without opposition.

25           MR. COOKE:  Yes, Your Honor, without opposition from

```
 1              the defense.

 2                        THE COURT:  All right.

 3                        MR. COOKE:  And that should wrap up that particular

 4              issue.

 5                        THE COURT:  Okay.

 6                        MR. COOKE:  Your Honor, if counsel for the government

 7              had anything else?  But that was it for us.

 8                        MS. WILLIS:  No, I think -- and I misspoke earlier,

 9              the Board order will not be Government Exhibit 35.  We have all

10              of our exhibits premarked, and I forgot that we had -- and, you

11              know, just thinking it might come in, I already marked it.

12                   So the government will introduce 10C and then 10E on our

13              exhibit list.  I think -- do we need to do it in the presence

14              of the jury?

15                        THE COURT:  Yes.

16                        MS. WILLIS:  Okay.

17                        THE COURT:  So, it is -- it will be entered into

18              evidence, over objection, with redaction.  Okay.

19                        MR. COOKE:  And 10E without objection, Your Honor.

20                        THE COURT:  And 10E, right, without objection.  Thank

21              you.

22                   And you'll move both those exhibits into evidence and

23              then close?

24                        MS. WILLIS:  Yes, Your Honor.

25                        THE COURT:  All right.  So, ready for the jury?
```

```
 1                  (No response.)

 2              THE COURT:  I'm going to take that as a yes.

 3              And then after that, Mr. Khouri, we'll excuse the jury

 4       for the day and Mr. Khouri will make his motions.

 5                  (Off-the-record discussion.)

 6              THE COURTROOM DEPUTY:  Your Honor, jury panel.

 7                  (Whereupon the jurors enter the courtroom.)

 8              THE COURT:  Thank you.  Ladies and gentlemen, I

 9       brought you in, I'm not going to keep you long.  The last bit

10       of any side's evidence in the case is like the last few minutes

11       of a football or basketball game; there are a lot of timeouts.

12       We have to hash out a lot of legal issues and there are

13       formalities and technicalities that have to be done out of the

14       presence of the jury.

15              And so, you know, almost there.  And I apologize for all

16       the delays, but I assure you that the parties have worked

17       really hard in getting this case -- to wrap up this case and

18       getting it to you as soon as we can.  And you have done your

19       part in being so -- in paying such good attention and being so

20       punctual.

21              Ms. Simon, are you going to be moving the exhibit in?  I

22       believe, is that the close of the witnesses in your case?

23              MS. SIMON:  Yes, Your Honor.  The government is

24       closing the testimony in our case.  We would at this time move

25       to admit Government's Exhibit 10C, subject to redactions, and
```

1    Government's Exhibit 10E.

2            THE COURT:  All right.  Exhibit 10C will be admitted

3    over objection, subject to redactions.  That means it's a

4    document, there have to be redactions made.  And we all know

5    about redactions nowadays.  Meaning, taking out information

6    that is not relevant to this case.  And so once that's done,

7    you'll get that into evidence.  That's 10C.

8            And what was the other one?

9            MS. WILLIS:  Exhibit 10E.

10           THE COURT:  10E, it will be admitted.  And the

11   government has moved for its admission.  It is being admitted

12   without objection.  And you have it here?  Did you want to

13   publish it?

14           MS. WILLIS:  We do not wish to publish it at this

15   time.

16           THE COURT:  You'll get it when you get the exhibits.

17   And those having -- those exhibits, having been admitted, does

18   the government --

19           MS. WILLIS:  At this time the government rests its

20   case.

21           THE COURT:  The government has rested its case.  And

22   now I have to deal with some technical matters and some legal

23   matters that I told you I would have to deal with.  That will

24   probably take -- well, it will probably take the rest of our

25   time.  And if it doesn't, it's not worth keeping you here to

1    come back for five minutes.  So get an early start on your

2    weekend, secure in the knowledge that we are ahead of schedule.

3         And, so, we will start on Monday morning -- I don't have

4    any matters, so we will start at 9:30 on Monday.  Enjoy the

5    weekend.  At least the weather, for at least today and

6    tomorrow, promises to be very nice.  Don't give this case --

7    don't -- another thought.  Go and enjoy your regular lives and

8    I'll see you here on Monday at 9:30.  Thank you so much.

9         (Whereupon the jurors leave the courtroom.)

10             THE COURT:  All right.  Mr. Khouri, do you have a

11   motion?

12             MR. KHOURI:  Yes, Your Honor.  I have a couple.  I --

13   I never relish disagreeing with the Court.  And I take no

14   pleasure in it, either, because the Court and the court staff

15   has been so cordial to me.

16             THE COURT:  Nothing taken personally, Mr. Khouri.

17             MR. KHOURI:  Maybe it's all the years of Catholic

18   education, but I really feel guilty right now.  Kindergarten

19   through law school.

20         Anyway, my first motion is a motion for mistrial.  I

21   believe that my ability to cross-examine the last witness -- I

22   believe his name was Mr. Quindoza.

23             THE COURT:  Quindoza.  Quindoza, D-O-Z-A.

24             MR. KHOURI:  Okay.  The person from SafeGuard

25   Services.  That my ability to cross-examine him was unduly

1    restricted and violated the right to confront and cross-examine

2    witnesses at the time of trial.  And let me explain.

3            This witness was presented to interpret and summarize

4    the data in a form which, if not explicitly, implicitly

5    verifies the legitimacy of the interpretation and the

6    legitimacy of the summary.  I had intended on cross-examining

7    him -- and you've seen me cross-examine witnesses in this

8    trial, and I probably take more time than most people.

9            But, I intended on cross-examining him for about an

10   hour.  And I was -- the Court ruled that my examination of him

11   went beyond -- not beyond the scope, but I interpreted the

12   Court's ruling to be based upon the law in this circuit that

13   sets forth the standards for the testimony of such a summary

14   witness.

15           I think under any case I would be entitled to examine

16   such a witness on the legitimacy of the summary -- not of the

17   data, but of the summary -- and a legitimacy of the

18   interpretation of that data.  This witness did much more than

19   just transfer data from his company to the jury.  He told the

20   jury that my client is guilty, essentially, and raises the

21   inference that he's guilty because he billed so much than those

22   other doctors.  And I intended to probe on that.

23           The government is just not comparing -- and this happens

24   in every healthcare fraud case, and I am not, certainly,

25   pointing the finger at counsel at all -- in every healthcare

1       case they're not comparing apples and apples.  Because Dr.

2       Gooding has a very specialized practice and he treats only

3       Medicare patients, and he treats pain only with injections, as

4       opposed to opiates.  And we all know, unfortunately, about the

5       opioid epidemic in the country.

6            He does not do surgery.  He does not do something called

7       radiofrequency ablation, which is done by interventional

8       radiologists.

9            So, those charts -- of course he's the highest biller in

10      those procedure codes because all the doctors he's compared to

11      don't do the same types of treatment.

12           THE COURT:  Let me stop you, because I don't want to

13      miss something.  How would Mr. Quindoza have known that?  How

14      would he possibly have had that information?

15           MR. KHOURI:  I was, number one, prevented from laying

16      that foundation.  But, number two, he's worked for Medicare for

17      41 years.  And -- not Medicare, I'm sorry, SafeGuard for 41

18      years, and in his position he learns about those matters.  As a

19      matter of fact, I think the government told the Court that he

20      was competent to testify to those types of matters.

21           So, I don't want to belabor it, I just want to make the

22      record.

23           THE COURT:  All right.  And I heard you and you've

24      made your record.  And I will just point out a couple things.

25      One is that I permitted Mr. Quindoza to testify over your

1    objection as a summary witness, and I -- and I am guided and

2    was guided by the Court of Appeals decision in *Abou-Khatwa*

3    about how such a witness can testify.  I was particularly

4    guided because that's my case and I recall that witness's

5    testimony.  And the Court of Appeals found that the witness had

6    strayed into making improper inferences, but it was harmless

7    error.  So I was especially careful in how -- in what I allowed

8    this witness to say and how I instructed the jury to consider

9    his testimony.

10         Despite the government's representations pretrial as to

11   what they thought this witness was competent or not -- and I

12   don't know that what you're saying is true, I would have to

13   look at the government's representations -- but despite

14   whatever they said, they only put the witness on to testify

15   about the summaries -- to testify about the summaries and how

16   those summaries are compiled.  And they adhered to my ruling

17   about how that witness could testify.

18         And, so, your cross-examination -- the cross-examination

19   you sought went beyond the scope.  And to the extent that you

20   feel you should have been allowed to get into that this witness

21   was competent to talk in more detail about the material he

22   looked at, I was not going to let you do that in -- while -- as

23   a government witness because I had already instructed the jury

24   that this witness was limited in his testimony to a

25   particular -- he was there to assist the jury in evaluating the

1    data and not to interpret the data.  And what you were asking

2    the witness to do was to interpret the data.

3         But, as I told you, you are certainly free, and are free

4    to call this witness in your case-in-chief.  I mean -- excuse

5    me, in your case.  And you can do that, if you choose to, and

6    you can seek to elicit the testimony that you want, assuming

7    the witness is competent to give that testimony.

8         So I do not think that Dr. Gooding's Sixth Amendment

9    rights or rights to confrontation or any other constitutional

10   rights are being abridged here because I insisted that the

11   witness adhere to the limits of the testimony as our circuit

12   requires he does.

13             MR. KHOURI:  Thank you, Your Honor.

14             THE COURT:  So I'm going to deny your motion for the

15   mistrial.

16             MR. KHOURI:  Thank you.  And in all fairness to the

17   Court's ruling, some of that did come through the government's

18   expert, the doctor that testified.

19        So, moving on, I would like to make a motion under Rule

20   29 for a judgment of acquittal on all counts for all reasons.

21   But, I would like to be heard on a few of those.

22             THE COURT:  Yes.

23             MR. KHOURI:  The first one that I think is most

24   glaring is Count 7, Yvonne Anderson.  And she really couldn't

25   remember what type of injections she received.

1          THE COURT:  Actually, I'm going to stop you for a

2     second, Mr. Khouri.  I did not allow the government to respond

3     to your motion for a mistrial.  I'm so story.

4          MR. KHOURI:  I'm so sorry.

5          THE COURT:  Sorry.  Ms. Willis?

6          MS. WILLIS:  Your Honor, the government would oppose

7     the defendant's motion for a mistrial.

8          We would note, that as the Court ruled at the time, the

9     witness's testimony was only limited to talking about the data.

10    And the government was very clear to say, "based on the data"

11    in almost every single question, to be clear that this witness

12    was not making any inferences.

13         And I do -- the government, I believe, did indicate in

14    its initial opposition to the defendant's motion about this

15    witness -- and I hope that I flagged, during our telephone

16    conferences that, yes, this witness has been an expert before

17    and could opine.  But that is not his role in this case.  And

18    the government was extremely careful to not have him opine on

19    the data or make any inferences because we had had such a

20    lengthy discussion and proceeding and pleadings about it.

21         So with that in mind, the government was very careful

22    not to opine or have him opine on anything.  And, also, we

23    would note that the things that defense counsel has argued that

24    he would want to get in through this witness would not be

25    things he could get in the witness -- through this witness on

1    cross because he would have no personal knowledge of whether

2    the defendant did or did not prescribe opioids or gave

3    ablations or all of those other things.

4          This witness was allowed to say on cross that the peers

5    from whom he got the data are other doctors who -- or, other

6    providers who give Medicare.  It was only based on Medicare.

7          THE COURT:  And who submit those codes.

8          MS. SIMON:  And who submit those codes.  So from that

9    cross-examination, the defense is still free to argue that, you

10   know, other providers may not have Medicare and in their case

11   perhaps, given some of the other things that they were talking

12   about that were not in evidence, but nonetheless would not have

13   come in as substantive evidence through this witness.

14         So, for those reasons we think a mistrial is not

15   necessary and we would note that the Court did indicate not

16   that the defense could not question this witness on the things

17   that they wanted to, but if they wanted to, that they would

18   have to call them as one of their witnesses versus cross-

19   examination on the data.

20         THE COURT:  All right.  Mr. Khouri, your motion for

21   judgment of acquittal?

22         MR. KHOURI:  Oh.  Thank you, Your Honor.  So, on

23   Count 7, I think the government's theory is that a knee

24   injection was given after the time that -- oh, I'm sorry.  Yes.

25   After the time that Ms. Anderson left treatment with Dr.

1     Gooding.  And, Ms. Anderson couldn't provide any evidence,

2     based upon her lack of recollection, as to when a knee

3     injection was given or not given.  And then on redirect she

4     testified that she was still treating with Dr. Gooding in June

5     of 2017.

6         So, the theory that the treatment was given or billed

7     for after Ms. Anderson was no longer a patient just doesn't

8     hold true.

9         And the defense on this case, on this particular count,

10     is that she was given an injection into her hip -- which I

11     think she admitted -- and that the bill, of course, is just an

12     injection, it doesn't say where, and the diagnosis code

13     mistakenly said knee.  Of course, she had had knee problems, so

14     I think when you go to the doctor --

15         THE COURT:  Wait.  So is your argument that the

16     diagnosis code is wrong?

17         MR. KHOURI:  Yes and no.

18         THE COURT:  Was there evidence that it was wrong?

19         MR. KHOURI:  Let me --

20         THE COURT:  Okay.  I hear you.

21         MR. KHOURI:  Let me explain.  Yes on that particular

22     day, but no if somebody has a history of knee problems.  That's

23     something that is -- can be kind of a holdover.  But -- and

24     that's the reason why I brought out evidence that what triggers

25     the payment, for materiality purposes, is the procedure, not

1   the diagnosis code.  So the government is --

2          THE COURT:  Let me stop you, Mr. Khouri, because I

3   want the record to be clear.  You say here, "and the diagnosis

4   code mistakenly said 'knee.'"  Was there any evidence to that,

5   or is that your argument?

6          MR. KHOURI:  No, I'm just providing the Court with

7   information about the count.  That's something that is going to

8   come out, I think, in the defense's case.

9          But, the fact of the matter is, is no evidence was

10  presented that on June 14th, 2017 this woman did or did not

11  receive a knee injection, or any injection.  The theory of the

12  government is that this was billed for after she left being a

13  patient of Dr. Gooding's.  And she testified on redirect, "Oh,

14  I was still a patient of his after June of 2017."  So, that

15  theory doesn't work because she's still a patient, the

16  government's theory.  And she can't tell us what happened in

17  terms of getting an injection either to her knee or to her hip.

18  There's no evidence.

19         The other counts are --

20         THE COURT:  But isn't the evidence more that the

21  claim was submitted?  Isn't that what the government -- the

22  jury is being asked to decide, whether the claim was submitted?

23         MR. KHOURI:  I think the jury is being asked to

24  decide whether the claim that was submitted was false and

25  whether it was submitted with an intent to defraud and whether

1    it was material.  And the government has to prove it was false.

2    And there was no testimony from Yvonne Anderson that the claim

3    was false.  I don't think she ever said that she did not

4    receive an injection in the knee on that date.  I think what

5    she said was she can't remember anything about when she

6    received injections to the knee and when she received

7    injections to the hip.  She just can't recall.

8         Counts 10 and 11 have to do with Mr. Burch, who passed

9    away, unfortunately.  And the only testimony we heard was from

10   his former girlfriend.  And the only testimony she gave was

11   that he -- the only physical problem she was aware of was a

12   knee problem.  And, of course, maybe it's because I've had a

13   replaced knee, that pain can be referred from one part of the

14   body to another part of the body.  But that's not in evidence

15   yet.  And, she didn't -- was never in the examination room with

16   Dr. Gooding and we don't even know what day she was there.

17        So, there isn't any evidence that a reasonable juror

18   could base a verdict of guilty on with respect to Counts 10 and

19   11.  The government has to prove that the claim that's

20   submitted to Medicare is material -- well, is false, is

21   material -- and is material and submitted with intent to

22   defraud.  And there's absolutely no evidence of that.

23        I believe 5 and 6 are deficient.  Because as I recall

24   the testimony of Ms. McDuffie, she never testified, gave any

25   facts about what was happening on -- in November of 2016, in

1    October of 2016, and couldn't recall.  And, again, there's no

2    proof that the claim is false, that the falsity was material

3    and that it was -- the claim was submitted with intent to

4    defraud.

5          And then, finally, on Counts 1 and 2 with Karen Mackey,

6    I would ask the Court to dismiss those two counts.  She claims

7    that she never received an injection in her back -- I'm just

8    reviewing my notes here -- and that she had issues with her

9    knee and that she only had injections in her knee.

10         Although the witness can't remember anything in that

11   time period, she specifically denies that she ever had an MRI

12   here at the old Providence Hospital and couldn't remember it

13   and doesn't know why she can't remember it.  And, obviously,

14   she did.  She couldn't remember what she told the FBI agent at

15   the beginning of this month.  And I think she's a completely

16   unreliable witness and the Court should enter judgment in favor

17   of Dr. Gooding on those two counts as well.

18         THE COURT:  All right.  Thank you, Mr. Khouri.

19         Ms. Willis?

20         MS. WILLIS:  Viewing the evidence in the light most

21   favorable to the government, which is the standard at this

22   stage of the proceeding, the government has submitted

23   sufficient evidence to prove each and every count of the

24   indictment, 1 through 11, and a reasonable juror could find the

25   defendant guilty of all of these counts.  With the Court's

1    permission, I will just go down Counts 1 through 11.

2         Counts 1 and 2 relate to a beneficiary by the name of

3    Karen Mackey, who was billed on March 31st, 2016 -- she was not

4    billed, to be clear, Medicare was billed -- for services

5    provided to her on March 31st, 2016 and October 13th, 2016 for

6    the codes 64636, which, based on the government's evidence, is

7    destruction of the spinal facet joint nerves with imaging

8    guidance.

9         The government has put on evidence through the claims

10   data, through the defendant's own records that these claims

11   were submitted, and that these claims were either not provided

12   or not provided as billed.

13        First, we know for the code 64636, in particular, that

14   there is evidence that had Medicare known that the defendant

15   did not have a fluoroscopy machine, they would not have paid

16   the claims for 64636, for these two counts.  As such, the

17   defendant's representation that he provided these injections

18   with imaging guidance was fraudulent, false, was not accurate

19   as he reported them in the claims data.

20        And the government would also note that for each of

21   these beneficiaries, not just their testimony is what is in

22   evidence.  The government has submitted patient files in

23   evidence for each of these witnesses and testimony from people

24   that worked in the office.  We know, based on Karen Mackey's

25   sign-in sheet -- which I believe the government moved in as

1      Government's Exhibit 17A -- that for at least one of these

2      dates of service she came in and it was listed that she was

3      coming in for a knee injection, which would not be consistent

4      with this procedure.

5          And Karen Mackey herself testified that she had not had

6      these procedures, and that one of the reasons that she -- and,

7      obviously, the Court and the jury's recollection will

8      control -- but, one of the reasons that she left Dr. Gooding's

9      practice was that she was being -- that were things on her

10     bills that were not provided.

11         So it is up to the jury to credit or not credit

12     Ms. Mackey.  The government would submit that her testimony was

13     credible.  A reasonable juror could infer that these services

14     weren't provided.  But even without that testimony, the

15     evidence is sufficient, based on the codes billed, along with

16     the other evidence that we know for those counts.

17         For counts -- I don't believe that the defense has

18     specifically challenged Counts 3 and 4, but the government will

19     note Count 3 is for a patient by the initials G.B.  We heard

20     from G.B. that in 2016 he wasn't receiving knee injections.

21     So, that would support that this knee injection in J7326 didn't

22     happen.  Even if there were some injection provided on that

23     day, the patient's records reflect that the only injection

24     would be a hip injection.  We would note that the government

25     has elicited testimony from Dr. Juan Schaening-Perez that

1    J7326, those injections can only be used -- Medicare would only

2    pay if those J7326 injections were for the osteoarthritic knee.

3         The government would note that for G.B., which is 3, for

4    J7326, and for Count 7, which is Yvonne Anderson, J7326, both

5    of these procedures were submitted with a modifying code

6    indicating they were for an osteoarthritic knee.  However, the

7    underlying records, the patient files that are in evidence

8    indicate that a knee injection was not given on the dates of

9    service.  If anything, there was a hip injection, which also

10   would not be covered.  And the government would argue that one

11   could infer that Dr. Gooding fraudulently submitted these

12   claims by putting that it was for the knee, knowing it was for

13   the hip, if these injections occurred at all.

14        The government would also note that Y.A., in her

15   testimony, indicated that she could only -- that she only got

16   knee injections two, maybe three times, and that she only got

17   them, like, in one -- at one time period.  The government would

18   note that in addition to -- the claims data reflecting Y.A.'s

19   J7326 claims are in evidence, but also Exhibit 23 shows the

20   claims for this patient.  And those claims from closer to the

21   time that she left the practice also reflects knee injections

22   in a series of three.

23        And so the government would argue that a reasonable

24   juror could infer that that corroborates her testimony that she

25   did get knee injections closer to the time that she was

1    leaving -- closer to the time she left the practice, such that

2    these knee injections in 2017 didn't happen.  But if they

3    happened, or if there were any injections, based on the patient

4    record, it was a hip injection that was, based on the

5    government's evidence, misrepresented as a knee injection when

6    the claim was submitted.

7          Moving on to Count 4, for G.B., this is another 64636

8    count.  The government would make the same arguments about

9    there was no fluoroscopic guidance.  And even if, under the

10   argument that ultrasound may have counted, there was no

11   ultrasound guidance given at the time of the injections either.

12   We would note Mr. Browne, today, indicated that he did not

13   potentially recall when the ultrasound happened, but was

14   impeached, which came into substantive evidence, that he said

15   previously that, no, no, there was no ultrasound or sonogram

16   used at the same time that he was giving the injection.

17          THE COURT:  Which reminds me, are you moving into --

18   because he was impeached with sworn testimony, are you moving

19   into admission the portion of his impeaching deposition

20   transcript?  If so, you need to redact it, put the cover page

21   on and exhibit number.

22          MS. WILLIS:  Yes.  We moved it in as 35.

23          THE COURT:  That's right.  Make sure it's marked and

24   redact with a cover page on.  Okay.

25          MS. WILLIS:  Yes, we still need to redact it.

1          So, the government would submit a reasonable juror could

2     find that the defendant did not provide that service, or did

3     not provide it as billed.

4          For Counts 5 and 6, which would be, I think -- not I

5     think, I know -- the beneficiary A.M. is charged as having --

6     the defendant is charged with having given A.M. injections

7     under code 64635 and 64636, which are, again, these lower back

8     facet joint nerve injections with imaging guidance.  For all of

9     these patients with 64635, 64636, 64483, we know he didn't have

10    a fluoroscopy machine --

11          THE COURT:  You have to slow down.

12          MS. WILLIS:  I apologize.  For every single count

13    that lists 64635 and 64636, the government will reiterate that

14    we know that the practice did not have a fluoroscopy machine or

15    CT machine, but the defendant submitted bills as though he was

16    using those.

17          For A.M. in particular, a reasonable juror could infer

18    that no injection in the lower back happened at all.  The

19    government would note that A.M. testified that she only had

20    procedures in her shoulders.  And she pointed to her shoulders

21    for the jury of where she got injections, which would be, based

22    on the government's argument, nowhere close to her lower back.

23          I've discussed Count 7 already, I won't go over those

24    arguments.

25          For Count 8 and Count 9, we will just rest on the

1    arguments regarding the defendant not using imaging guidance at

2    the same time as giving injections, but also not having

3    fluoroscopy or CT as billed.  And for 10 and 11, S.B.  So, a

4    few things.  S.B., these counts, the codes, again, are 64636

5    and 64635, which there has been ample testimony regarding

6    fluoroscopy, and that the defendant submitted these codes

7    without a -- without having a fluoroscopy machine or a CT

8    machine.

9         Regarding those counts in general, as well, we heard

10   from Ms. Wright that she told the defendant that these codes

11   required a fluoroscopy machine and that the defendant

12   essentially -- just paraphrasing her testimony -- indicated

13   that, you know, he had a new and original method and that he

14   knew more than Medicare.

15        We also know that the defendant did not accidently bill

16   without fluoroscopy for a couple of reasons.  Not just relying

17   on past disciplinary action from the Delaware Medical Board

18   that would indicate that fluoroscopy was required for

19   injections of this type of procedure, the government would also

20   note that in April of 2017 the defendant received a letter from

21   Novitas, which was the Medicare administrative contractor,

22   indicating that fluoroscopy or CT was required and rejecting

23   the claims.  So he would be further on notice that he could not

24   bill without this fluoroscopy.  Nevertheless, the claims data

25   shows us that even after receiving this letter the defendant

1    billed for these two codes, 64635 and 64636, approximately 290

2    additional times, even after being on this explicit notice,

3    further underscoring that he was not mistaken.

4          The fact that S.B. is dead does not undercut the

5    evidence that the defendant submitted these claims in any way.

6    We have S.B.'s patient file in evidence, indicating that he was

7    a person for whom the defendant could have submitted claims.

8    We also have the testimony of a loved one of S.B. noting that

9    he never indicated that he had back problems, that he -- or,

10   that never -- yeah, I believe that the testimony would -- her

11   testimony could be inferred that she never heard of him getting

12   any shots, additional shots, other than his knee.

13         But even without that testimony, we still have that

14   these are -- these codes billed and there was no fluoroscopy

15   machine at the practice.  And, so, these codes could not have

16   been billed as they were submitted.

17         With that, the government would note -- would argue that

18   we have, at this stage, met our burden and a reasonable jury,

19   viewing the evidence in the light most favorable to the

20   government, could find the defendant guilty on all counts in

21   the indictment.

22              THE COURT:  All right.  Thank you.  I will address

23   all the arguments that have been presented.  I will give my

24   decision on the motion on Monday morning at 9:15, before the

25   jury comes.

1          I am going to docket my proposed final jury

2     instructions, probably tomorrow.  And I would like you all to

3     have any objections to those to me Monday.  I guess the end of

4     the day Monday.

5          How long do you think your case is going to take,

6     Mr. Khouri?

7               MR. KHOURI:  I think it's going to --

8               THE COURT:  Remember, we have opening statement.

9               MR. KHOURI:  I have to confer with Mr. Cooke because

10    we're not exactly sure who's doing what.

11              THE COURT:  Can you -- into the microphone, please.

12              MR. KHOURI:  I think we can be done on Monday.

13              THE COURT:  All right.  So, closing -- well, so

14    defense opening, defense case, closing arguments.  I think it

15    probably means that I won't be giving instructions until

16    Tuesday morning.  If we -- if it looks like -- because I

17    instruct after closings.  But I know that sometimes the parties

18    need to know what the final instructions are because they may

19    want to talk about the instructions in their closing arguments.

20    If necessary, we will try to do a charging conference and give

21    the jury a long break while we have a charging conference.  I

22    will try and get those to you on the weekend, so you can have a

23    chance to look at them.  And I -- I want you prepared to

24    discuss them sometime on Monday before closing argument.

25          All right.  Have a good weekend, everyone.  Thank you

1    for all your hard work in getting this case moving, and ahead

2    of schedule.  And I will see you on Monday at 9:15.

3        Again, if there are any other preliminary matters that I

4    need to discuss, please let chambers know so that I can be

5    ready to address them, maybe at nine, if we have to do it at

6    nine, because at 9:15 I want to address the motion for judgment

7    of acquittal.

8        MR. KHOURI:  The only matter, and it's really just

9    housekeeping, I still have to redact Exhibit I, defense exhibit

10   I, I believe.  It's that one report.

11       THE COURT:  Oh, yes.  Yes.

12       MR. KHOURI:  So I'll redact it over the weekend and

13   I'll let the government see a copy of what I've proposed and --

14   Monday morning.

15       And I'm taking the Court's ruling broadly, in the sense

16   that I'm getting rid of anything -- alcohol, not just --

17       THE COURT:  Yes.  Yes.

18       MR. KHOURI:  I understand what the Court wants me to

19   do and I'll take care of it.

20       THE COURT:  All right.  Thank you.  Have a good

21   weekend, everyone.

22                          *   *   *

23

24

25

866

1                CERTIFICATE OF OFFICIAL COURT REPORTER

2

3        I, JANICE DICKMAN, do hereby certify that the above and

4    foregoing constitutes a true and accurate transcript of my

5    stenographic notes and is a full, true and complete transcript

6    of the proceedings to the best of my ability.

7                        Dated this 10th day of September, 2022

8

9

10                    _____

11                    Janice E. Dickman, CRR, CMR, CCR
                      Official Court Reporter
12                    Room 6523
                      333 Constitution Avenue, N.W.
13                    Washington, D.C.  20001

14

15

16

17

18

19

20

21

22

23

24

25

1                                    INDEX

2        WITNESS:

3            Stephen Quindoza
                    Direct Examination (Cont.) By Ms. Willis..........778
4                    Cross-Examination By Mr. Khouri...................813

5

6        EXHIBITS RECEIVED:

7            Exhibits 8A through 8X................................789
             Exhibit 9A...........................................795
8            Exhibits 9B, 9C, 9E, 9F, 9J..........................797
             Exhibits 9G, 9H, 9I..................................806
9            Exhibit 10C..........................................845
             Exhibit 10E..........................................845
10

11       GOVERNMENT RESTS.........................................845

12                                *    *    *

13

14

15

16

17

18

19

20

21

22

23

24

25

868

## $

**$1,069,600** [1] - 802:23
**$1,136,745** [1] - 805:9
**$1,760,005.87** [1] - 801:7
**$100,000** [1] - 813:3
**$12,727,729.03** [1] - 797:23
**$197,424.56** [1] - 800:21
**$3,689,645.41** [1] - 799:3
**$302,800.19** [1] - 805:11
**$408,199.12** [1] - 803:16
**$420,750** [1] - 800:19
**$489,144.27** [1] - 802:24
**$499,999** [1] - 813:3
**$500,000** [1] - 812:21
**$528,246.63** [1] - 801:3
**$650,650** [1] - 800:25
**$894,350** [1] - 803:15
**$900,850** [1] - 801:3
**$999,999** [1] - 812:22

## '

**'80s** [1] - 837:17
**'knee** [1] - 854:4

## 0

**095813** [1] - 832:21
**095815** [1] - 834:9
**095817** [1] - 837:23

## 1

**1** [15] - 790:8, 793:14, 795:12, 796:5, 806:14, 809:24, 811:6, 812:13, 830:18, 838:22, 841:8, 856:5, 856:24, 857:1, 857:2
**1,000** [5] - 809:14, 809:21, 809:22, 810:23, 812:8
**1,167** [1] - 805:7
**1,568** [1] - 801:2
**1,865** [1] - 800:25
**10** [6] - 782:5, 839:1, 839:11, 855:8, 855:18, 862:3
**10-11-2016** [3] - 782:5, 783:6, 783:15

**10-13-2016** [1] - 779:6
**100** [1] - 812:25
**10C** [4] - 843:12, 844:25, 845:2, 845:7
**10C............................
..............845** [1] -
867:9
**10E** [7] - 842:19, 843:12, 843:19, 843:20, 845:1, 845:9, 845:10
**10E............................
..............845** [1] -
867:9
**10th** [1] - 866:7
**11** [5] - 855:8, 855:19, 856:24, 857:1, 862:3
**12,568** [1] - 784:7
**1250** [1] - 777:19
**1255377180** [1] -
796:1
**126** [1] - 800:24
**129** [3] - 802:18, 803:10, 803:19
**129,993** [1] - 797:21
**13** [3] - 839:12, 839:17
**13th** [1] - 857:5
**14** [1] - 840:25
**1400** [1] - 777:14
**14th** [1] - 854:10
**15,000** [1] - 799:13
**15,023** [3] - 797:19, 799:6, 800:1
**16** [1] - 785:17
**17,469** [1] - 786:10
**17,502** [1] - 786:20
**1731(b)(11** [1] - 838:18
**17A** [1] - 858:1
**18,912** [1] - 782:2
**18908** [1] - 783:16
**18913** [1] - 783:4
**19** [1] - 820:19
**19,133** [4] - 779:15, 779:16, 779:18, 780:4
**19,300** [2] - 779:2, 819:14
**19-cr-255** [1] - 777:3
**190** [1] - 805:5
**1:30** [1] - 777:7
**1st** [1] - 807:12

## 2

**2** [7] - 796:5, 810:14, 830:18, 838:22, 841:8, 856:5, 857:2
**2,032** [2] - 803:15
**2,400** [1] - 802:19
**2-16-2016** [1] - 784:24, 785:9

**2-24-2016** [1] - 786:13
**2-27-2018** [1] - 786:1
**20,000** [1] - 799:10
**20001** [2] - 777:24, 866:13
**20005** [1] - 777:14
**20036** [1] - 777:20
**2012** [2] - 790:6, 796:6
**2015** [9] - 797:12, 800:8, 802:3, 802:18, 807:11, 807:12, 808:16, 810:6, 812:8
**2016** [7] - 785:17, 855:25, 856:1, 857:3, 857:5, 858:20
**2017** [7] - 787:5, 787:22, 853:5, 854:10, 854:14, 860:2, 862:20
**2018** [12] - 787:5, 787:22, 787:23, 797:12, 800:8, 802:4, 802:18, 807:11, 807:12, 808:16, 810:7, 812:8
**202** [2] - 777:15, 777:20
**202-354-3267** [1] - 777:24
**2022** [2] - 777:6, 866:7
**21** [7] - 832:21, 832:22, 832:25, 833:2, 833:3, 833:14, 833:22
**215** [1] - 777:17
**22** [4] - 832:22, 833:3, 833:14, 833:22
**22,371** [1] - 784:21
**22,492** [1] - 786:3
**2222** [1] - 777:17
**23** [6] - 832:24, 833:1, 833:2, 833:12, 833:22, 859:19
**24** [1] - 838:18
**248** [1] - 800:13
**250** [1] - 801:2
**265** [2] - 812:5, 812:7
**27** [1] - 833:24
**29** [2] - 833:24, 850:20
**29,000** [3] - 799:11, 799:13, 800:1
**290** [1] - 863:1
**291,719.71** [1] - 801:1
**296** [1] - 788:6
**2A** [3] - 790:24, 793:14, 795:13
**2nd** [1] - 797:12

## 3

**3** [9] - 808:18, 810:17, 811:25, 830:25,

838:23, 841:8, 858:18, 858:19, 859:3
**30** [1] - 833:25
**31st** [4] - 807:12, 808:16, 857:3, 857:5
**333** [2] - 777:23, 866:12
**336-2433** [1] - 777:18
**337** [1] - 809:8
**35** [2] - 843:9, 860:22
**353-0822** [1] - 777:15
**36** [2] - 811:7, 842:5
**39** [2] - 810:25, 811:1
**392** [1] - 797:17
**3:30** [1] - 841:25

## 4

**4** [7] - 777:5, 831:5, 831:8, 838:24, 841:9, 858:18, 860:7
**40** [1] - 842:3
**41** [3] - 817:22, 848:17
**427** [1] - 810:21
**499** [1] - 812:25
**4:25** [1] - 807:25

## 5

**5** [5] - 838:24, 841:14, 841:20, 855:23, 861:4
**5,516** [1] - 800:15
**500** [3] - 812:17, 812:18, 812:19
**55** [2] - 803:11, 803:20
**561** [1] - 800:17
**5815** [1] - 838:5
**5816** [2] - 838:2, 838:4
**5817** [1] - 838:9
**59** [2] - 783:24, 785:23

## 6

**6** [5] - 797:12, 838:24, 841:20, 855:23, 861:4
**6-14-2017** [1] - 784:4
**64483** [2] - 786:1, 861:9
**6463** [1] - 809:24
**64633** [10] - 800:9, 800:16, 801:5, 802:12, 803:7, 803:8, 806:11, 808:18, 809:15, 809:24
**64634** [10] - 800:22, 800:24, 802:12, 803:6, 803:7, 803:8, 806:11, 808:18, 809:15, 809:24
**64635** [14] - 782:5, 786:23, 787:5, 787:18, 801:2, 804:3, 804:7,

804:9, 810:9, 861:7,
861:9, 861:13, 862:5,
863:1
**64636** [26] - 779:7,
779:24, 783:6, 784:24,
786:12, 787:5, 787:18,
800:9, 800:11, 800:22,
801:5, 803:6, 804:4,
804:7, 804:10, 810:9,
819:17, 857:6, 857:13,
857:16, 860:7, 861:7,
861:9, 861:13, 862:4,
863:1
**6523** [2] - 777:23,
866:12

**7**

**7** [22] - 778:7, 778:14,
778:17, 780:1, 789:18,
790:2, 793:23, 796:10,
797:2, 802:8, 805:1,
805:3, 805:15, 814:5,
819:10, 819:12,
838:24, 841:21,
850:24, 852:23, 859:4,
861:23
**7-13-2016** [1] - 786:22
**700** [1] - 777:19
**71** [1] - 803:11
**73** [1] - 804:13
**7326** [1] - 779:21
**76881** [1] - 801:11
**76882** [1] - 801:11
**76942** [1] - 801:11

**8**

**8** [5] - 790:6, 839:1,
839:11, 841:21, 861:25
**83** [1] - 803:24
**84** [3] - 803:22, 803:23
**855** [3] - 790:6,
790:19, 790:22
**861-0870** [1] - 777:20
**8A** [12] - 788:23,
789:5, 789:11, 789:16,
789:18, 790:3, 790:4,
805:16, 806:1, 807:2,
807:4, 867:7
**8X** [10] - 788:23,
789:5, 789:11, 789:16,
789:18, 790:3, 793:23,
794:7, 805:17, 806:1
**8X.............................**
**...789** [1] - 867:7

**9**

**9** [4] - 777:6, 839:1,

839:11, 861:25
**902(11** [1] - 794:7
**91** [2] - 804:17, 804:19
**92** [1] - 804:21
**92612** [1] - 777:17
**949** [1] - 777:18
**95821** [1] - 840:25
**95822** [1] - 841:1
**95824** [1] - 841:20
**99** [1] - 812:17
**999** [3] - 812:18,
812:19, 812:21
**9:15** [3] - 863:24,
865:2, 865:6
**9:30** [2] - 846:4, 846:8
**9A** [6] - 791:9, 791:13,
793:11, 795:12,
795:16, 801:17
**9A..............................
...............795** [1] - 867:7
**9B** [6] - 796:13,
796:25, 797:5, 800:4,
800:6, 867:8
**9C** [6] - 796:14,
796:25, 797:5, 802:7,
802:8, 867:8
**9E** [7] - 796:15,
796:25, 797:5, 804:25,
805:1, 824:2, 867:8
**9F** [6] - 796:19,
796:25, 797:5, 797:10,
797:11, 867:8
**9G** [10] - 805:19,
805:22, 805:24, 806:4,
806:9, 807:18, 808:14,
808:15, 824:3, 867:8
**9H** [7] - 805:20,
805:22, 805:24, 806:4,
810:4, 810:5, 867:8
**9I** [5] - 805:20, 805:22,
805:24, 806:4, 811:14
**9I..............................
....806** [1] - 867:8
**9J** [5] - 796:18,
796:25, 797:5, 801:8,
801:9
**9J..............................
797** [1] - 867:8

**A**

**A.M** [7] - 781:25,
782:4, 783:18, 861:5,
861:6, 861:17, 861:19
**ability** [3] - 846:21,
846:25, 866:6
**ablation** [1] - 848:7
**ablations** [1] - 852:3
**able** [2] - 826:21,
833:7

**Abou** [2] - 816:5,
849:2
**Abou-Khatwa** [2] -
816:5, 849:2
**abridged** [1] - 850:10
**absolutely** [2] -
836:15, 855:22
**abuse** [2] - 794:14,
794:15
**access** [3] - 789:7,
794:15, 826:11
**accesses** [2] - 788:12,
788:14
**accidently** [1] - 862:15
**accurate** [4] - 789:6,
792:21, 857:18, 866:4
**acquittal** [3] - 850:20,
852:21, 865:7
**action** [2] - 829:7,
862:17
**Action** [1] - 777:3
**actions** [2] - 822:15,
831:2
**actual** [1] - 820:20
**AD** [1] - 821:15
**addition** [4] - 805:14,
815:13, 841:21, 859:18
**additional** [2] - 837:5,
863:2, 863:12
**address** [5] - 827:2,
828:14, 863:22, 865:5,
865:6
**adhere** [1] - 850:11
**adhered** [2] - 816:7,
849:16
**administering** [1] -
794:14
**administrative** [1] -
862:21
**admissibility** [1] -
793:13
**admissible** [3] -
793:20, 794:23, 829:24
**admission** [2] -
845:11, 860:19
**admit** [7] - 789:11,
791:13, 795:16, 797:5,
806:4, 827:14, 844:25
**admitted** [22] - 778:8,
778:9, 790:9, 790:14,
790:25, 791:20,
793:12, 793:18,
793:21, 795:17, 797:8,
801:14, 801:16,
801:18, 806:7, 830:4,
845:2, 845:10, 845:11,
845:17, 853:11
**advisory** [1] - 823:20
**afoul** [1] - 817:24
**AFTERNOON** [1] -

778:1
**afternoon** [3] - 808:3,
813:16, 813:17
**AG** [3] - 780:6, 780:7,
780:10
**agent** [1] - 856:14
**ago** [1] - 789:4
**agree** [3] - 795:1,
826:20, 830:1
**agreeable** [1] - 841:8
**agreed** [1] - 839:4
**agrees** [1] - 833:8
**AH** [1] - 780:10
**ahead** [2] - 846:2,
865:1
**aid** [2] - 781:6, 822:16
**alcohol** [1] - 865:16
**allegation** [2] - 830:1,
839:7
**alleged** [1] - 828:19
**alleviate** [1] - 835:10
**allow** [5] - 778:20,
832:24, 833:22,
833:24, 851:2
**allowable** [1] - 832:9
**allowed** [7] - 823:3,
835:1, 837:16, 849:7,
849:20, 852:4
**almost** [2] - 844:15,
851:11
**alone** [1] - 803:4
**Amendment** [1] -
850:8
**America** [1] - 777:3
**American** [1] - 820:12
**amount** [27] - 785:5,
785:6, 786:7, 786:8,
786:17, 786:18,
797:22, 798:24, 799:2,
800:18, 800:20,
800:25, 801:1, 801:4,
802:23, 803:15,
804:18, 804:20, 805:8,
805:10, 808:25, 809:5,
810:15, 811:23, 813:2,
819:22, 832:6
**amounts** [1] - 787:1
**ample** [1] - 862:5
**analysis** [3] - 804:3,
804:8, 818:5
**Anderson** [6] - 850:24,
852:25, 853:1, 853:7,
855:2, 859:4
**answer** [5] - 785:15,
817:17, 817:22, 825:6,
825:19
**Anyway** [1] - 846:20
**anyway** [1] - 817:18
**APC** [1] - 777:16
**apologies** [1] - 812:19

870

**apologize** [5] - 794:17, 799:20, 824:3, 844:15, 861:12
**Appeals** [3] - 816:8, 849:2, 849:5
**appear** [3] - 778:23, 787:17, 787:21
**apples** [2] - 848:1
**applicable** [1] - 834:12
**application** [1] - 791:6
**applications** [1] - 790:23
**appreciate** [1] - 787:12
**approach** [1] - 788:25
**appropriate** [4] - 830:16, 830:18, 830:24, 834:13, 837:25, 838:25
**April** [1] - 862:20
**archived** [1] - 818:22
**area** [3] - 817:3, 817:5, 835:17
**areas** [2] - 817:9, 824:11
**arguably** [1] - 832:14
**argue** [4] - 852:9, 859:10, 859:23, 863:17
**argued** [2] - 794:24, 851:23
**argument** [9] - 793:8, 793:19, 830:14, 840:17, 853:15, 854:5, 860:10, 861:22, 864:24
**arguments** [7] - 793:24, 860:8, 861:24, 862:1, 863:23, 864:14, 864:19
**arm** [1] - 783:15
**ARM2** [1] - 834:13
**arrived** [1] - 817:13
**arrows** [1] - 798:13
**assist** [1] - 849:25
**associated** [6] - 779:6, 784:11, 785:20, 795:24, 796:2, 805:4
**Associates** [2] - 789:23, 796:3
**Association** [1] - 820:12
**assuming** [1] - 850:6
**assure** [1] - 844:16
**attention** [3] - 819:9, 819:16, 844:19
**attorney** [2] - 835:21, 835:24
**August** [5] - 807:11, 807:12, 808:16, 810:6, 812:8
**authenticated** [1] -

794:18
**authenticity** [2] - 793:1, 793:7
**authority** [1] - 841:3
**available** [1] - 834:24
**Avenue** [4] - 777:14, 777:19, 777:23, 866:12
**aware** [2] - 837:2, 855:11

## B

**bad** [1] - 830:4
**balance** [2] - 833:23, 836:23
**base** [3] - 790:21, 817:21, 855:18
**based** [76] - 779:5, 779:20, 781:16, 782:3, 782:8, 783:4, 783:8, 783:14, 784:18, 784:19, 784:22, 786:11, 786:17, 787:10, 787:25, 790:10, 790:16, 791:10, 791:17, 792:2, 792:3, 792:22, 793:5, 793:12, 795:12, 795:22, 796:9, 797:1, 797:12, 797:15, 801:5, 802:2, 802:8, 803:3, 803:4, 804:1, 805:1, 805:3, 805:15, 805:16, 805:25, 806:10, 808:15, 808:21, 809:17, 809:20, 809:23, 810:5, 811:3, 811:5, 811:17, 811:22, 812:1, 812:14, 812:16, 819:19, 819:22, 819:25, 824:20, 833:5, 833:10, 836:14, 839:23, 840:8, 847:12, 851:10, 852:6, 853:2, 857:6, 857:24, 858:15, 860:3, 860:4, 861:21
**Based** [1] - 782:16
**basis** [1] - 832:4
**basketball** [1] - 844:11
**Bates** [3] - 832:21, 834:9, 841:20
**BEFORE** [1] - 777:9
**begin** [1] - 827:7
**beginning** [5] - 835:4, 840:3, 840:5, 840:13, 856:15
**behind** [1] - 778:3
**belabor** [1] - 848:21
**Bench** [1] - 826:16
**bench** [7] - 780:16,

782:13, 791:24, 797:25, 806:19, 815:21, 822:21
**beneficiaries** [8] - 797:16, 800:12, 800:24, 802:19, 803:19, 804:8, 805:4, 857:21
**beneficiary** [14] - 779:24, 782:4, 783:5, 783:25, 784:3, 784:21, 784:23, 785:25, 786:11, 814:15, 814:17, 857:2, 861:5
**best** [2] - 830:9, 866:6
**better** [5] - 814:11, 826:8, 826:9, 833:7, 833:19
**between** [9] - 787:5, 787:22, 788:21, 802:3, 802:18, 803:21, 804:14, 813:2, 842:16
**beyond** [9] - 816:10, 816:19, 816:25, 817:6, 820:3, 822:3, 847:11, 849:19
**bill** [6] - 780:21, 799:22, 824:25, 853:11, 862:15, 862:24
**billed** [76] - 779:10, 779:12, 780:14, 780:22, 780:25, 781:16, 782:8, 782:22, 783:1, 783:9, 784:18, 784:19, 785:5, 786:7, 786:17, 787:1, 797:22, 798:24, 799:25, 800:14, 800:16, 800:18, 800:25, 801:3, 802:3, 802:17, 802:19, 802:23, 803:1, 803:9, 803:11, 803:14, 803:15, 803:20, 803:22, 803:23, 804:10, 804:14, 804:18, 805:4, 805:8, 806:13, 808:21, 808:25, 809:2, 809:5, 809:14, 809:21, 809:23, 810:12, 810:15, 810:23, 811:5, 811:23, 812:8, 812:13, 812:16, 812:21, 812:25, 813:2, 824:8, 824:24, 847:21, 853:6, 854:12, 857:3, 857:4, 857:12, 858:15, 861:3, 862:3, 863:1, 863:14, 863:16
**biller** [2] - 808:23,

848:9
**billing** [5] - 799:16, 816:14, 825:7, 829:18, 829:20
**bills** [2] - 858:10, 861:15
**birth** [1] - 814:18
**bit** [6] - 780:2, 786:5, 820:23, 821:18, 833:17, 844:9
**board** [12] - 828:24, 829:7, 830:20, 833:18, 837:17, 837:21, 838:5, 838:10, 840:18, 840:19, 841:2, 841:5
**Board** [8] - 835:16, 835:18, 836:19, 839:20, 841:13, 842:20, 843:9, 862:17
**Board's** [1] - 833:10
**board's** [1] - 829:12
**body** [2] - 855:14
**book** [1] - 820:11
**bottom** [1] - 804:6
**box** [1] - 802:11
**boy** [1] - 800:6
**Bradley** [2] - 800:6, 801:17
**break** [6] - 807:21, 808:3, 808:6, 810:1, 813:20, 864:21
**briefly** [1] - 834:18
**broad** [2] - 817:21, 841:2
**broadly** [1] - 865:15
**brought** [2] - 844:9, 853:24
**browne** [2] - 831:21, 860:12
**build** [1] - 829:11
**Burch** [1] - 855:8
**burden** [2] - 838:17, 863:18
**bursitis** [1] - 821:17
**business** [8] - 788:13, 788:17, 789:8, 793:25, 794:2, 794:10, 794:11, 794:22
**BY** [32] - 778:13, 781:14, 781:24, 782:20, 787:16, 788:8, 789:15, 790:18, 791:1, 791:16, 795:11, 795:21, 796:23, 797:9, 798:23, 800:3, 801:21, 802:1, 805:23, 806:8, 807:5, 807:17, 811:16, 813:15, 814:2, 818:12, 820:4, 821:3, 822:4, 824:1, 825:10, 825:15

871

# C

**C-ARM2** [1] - 834:13
**CA** [1] - 777:17
**calculations** [3] - 816:24, 817:12, 817:13
**cannot** [1] - 823:10
**captures** [1] - 840:4
**care** [4] - 834:12, 834:24, 835:12, 865:19
**Care** [1] - 789:22
**career** [1] - 836:11
**careful** [4] - 815:23, 849:7, 851:18, 851:21
**case** [31] - 792:7, 794:3, 818:8, 823:11, 826:11, 828:12, 828:18, 837:13, 842:18, 844:10, 844:17, 844:22, 844:24, 845:6, 845:20, 845:21, 846:6, 847:15, 847:24, 848:1, 849:4, 850:4, 850:5, 851:17, 852:10, 853:9, 854:8, 864:5, 864:14, 865:1
**case-in-chief** [1] - 850:4
**CAT** [1] - 820:10
**Catholic** [1] - 846:17
**CCR** [1] - 866:11
**CD** [1] - 789:4
**center** [1] - 834:5
**certain** [6] - 778:21, 816:24, 823:6, 828:12, 828:13
**certainly** [3] - 781:3, 847:24, 850:3
**CERTIFICATE** [1] - 866:1
**certification** [5] - 830:21, 837:17, 837:21, 838:6, 838:10
**certified** [2] - 830:20, 833:18
**certify** [1] - 866:3
**cervical** [4] - 834:15, 834:21, 839:24, 840:9
**challenge** [1] - 829:6
**challenged** [1] - 858:18
**chambers** [1] - 865:4
**chance** [2] - 792:25, 864:23
**changes** [2] - 815:17, 816:17
**charged** [4] - 829:18, 831:25, 861:5, 861:6
**charging** [2] - 864:20, 864:21

**chart** [7] - 804:6, 809:4, 810:1, 810:18, 811:8, 812:1, 812:24
**charts** [3] - 817:14, 823:19, 848:9
**check** [1] - 807:4
**chief** [1] - 850:4
**choose** [1] - 850:5
**chooses** [1] - 819:25
**chosen** [1] - 828:6
**CHUTKAN** [1] - 777:9
**circle** [1] - 798:12
**Circuit** [2] - 794:3, 794:4
**circuit** [2] - 847:12, 850:11
**city** [1] - 835:22
**claim** [58] - 779:6, 779:10, 779:15, 779:16, 779:20, 779:23, 780:1, 780:4, 780:14, 782:1, 782:3, 782:8, 782:16, 782:22, 783:1, 783:5, 783:9, 783:15, 783:16, 783:20, 783:25, 784:4, 784:11, 784:18, 784:22, 785:25, 786:3, 786:10, 786:20, 786:22, 799:8, 799:9, 799:13, 799:16, 799:22, 799:24, 800:1, 814:10, 814:14, 815:10, 815:17, 816:16, 818:15, 818:21, 820:19, 821:5, 821:8, 854:21, 854:22, 854:24, 855:2, 855:19, 856:2, 856:3, 860:6
**Claims** [2] - 818:23, 819:5
**claims** [49] - 778:15, 778:17, 779:5, 779:20, 780:25, 781:16, 786:7, 787:4, 788:11, 788:14, 789:6, 789:17, 794:5, 794:9, 794:16, 796:9, 797:1, 797:13, 797:18, 799:5, 799:6, 799:12, 799:14, 799:25, 800:2, 814:5, 814:7, 814:8, 818:14, 818:22, 819:14, 819:16, 856:6, 857:9, 857:10, 857:11, 857:16, 857:19, 859:12, 859:18, 859:19, 859:20, 862:23, 862:24, 863:5, 863:7
**clarification** [2] -

781:15, 782:21
**Clarify** [1] - 803:7
**clarify** [4] - 780:24, 781:4, 781:11, 815:25
**clear** [10] - 793:5, 803:3, 809:19, 840:22, 841:19, 851:10, 851:11, 854:3, 857:4
**clearer** [1] - 782:14
**clearinghouse** [1] - 818:20
**click** [3] - 788:3, 788:4, 788:5
**client** [1] - 847:20
**close** [3] - 843:23, 844:22, 861:22
**closely** [1] - 816:7
**closer** [3] - 859:20, 859:25, 860:1
**closes** [1] - 842:18
**closing** [5] - 844:24, 864:13, 864:14, 864:19, 864:24
**closings** [1] - 864:17
**CMR** [1] - 866:11
**code** [52] - 779:7, 779:21, 779:24, 780:3, 780:6, 780:10, 782:4, 783:6, 784:5, 784:11, 784:14, 784:24, 785:11, 785:16, 786:1, 786:12, 786:22, 800:11, 800:24, 801:2, 803:8, 804:23, 808:25, 811:12, 811:17, 812:14, 815:6, 815:10, 815:13, 815:17, 816:17, 818:16, 819:17, 819:19, 819:23, 820:1, 820:11, 820:15, 820:17, 820:19, 821:4, 821:8, 821:22, 821:24, 825:17, 853:12, 853:16, 854:1, 854:4, 857:13, 859:5, 861:7
**codes** [37] - 787:4, 787:18, 788:1, 800:9, 801:4, 801:11, 802:3, 802:12, 802:14, 802:17, 803:5, 804:3, 804:7, 805:4, 806:11, 808:18, 808:23, 810:8, 818:6, 818:7, 821:9, 821:13, 824:9, 825:4, 825:18, 825:20, 848:10, 852:7, 852:8, 857:6, 858:15, 862:4, 862:6, 862:10, 863:1, 863:14, 863:15

**Columbia** [3] - 835:18, 836:3, 842:20
**COLUMBIA** [1] - 777:1
**column** [8] - 787:19, 787:22, 788:4, 820:5, 820:16, 820:20, 821:1, 821:15
**columns** [2] - 778:21, 778:24, 788:3
**coming** [1] - 858:3
**comment** [2] - 837:19, 842:6
**community** [1] - 834:25
**company** [4] - 825:1, 825:6, 825:11, 847:19
**compare** [5] - 824:18, 824:21, 825:1, 825:6, 825:11
**compared** [2] - 806:13, 848:10
**comparing** [2] - 847:23, 848:1
**comparison** [16] - 803:17, 805:16, 805:25, 806:10, 807:14, 808:15, 808:21, 809:7, 810:6, 810:12, 810:19, 811:11, 812:9, 824:5, 824:4
**comparisons** [3] - 788:18, 788:20
**competencies** [1] - 838:1
**competent** [5] - 838:13, 848:20, 849:11, 849:21, 850:7
**compilation** [2] - 823:4, 825:16
**compilations** [1] - 823:6
**compile** [1] - 816:23
**compiled** [2] - 819:6, 849:16
**complaining** [1] - 828:7
**complaint** [1] - 828:19
**complete** [1] - 866:5
**completed** [1] - 818:21
**completely** [1] - 856:15
**concludes** [1] - 838:16
**conduct** [3] - 828:20, 830:11, 838:20
**confer** [1] - 864:9
**conference** [5] - 780:16, 792:6, 792:24,

864:20, 864:21
**conferences** [1] - 851:16
**confirmed** [2] - 794:4, 794:20
**confront** [1] - 847:1
**confrontation** [1] - 850:9
**confusion** [1] - 818:3
**Connecticut** [1] - 777:19
**consent** [1] - 836:20
**consider** [1] - 849:8
**considered** [2] - 840:20, 841:5
**consistent** [4] - 826:13, 841:13, 841:17, 858:3
**consistently** [1] - 841:16
**consists** [1] - 815:10
**constituted** [1] - 838:20
**constitutes** [1] - 866:4
**constituting** [2] - 828:20, 830:12
**Constitution** [2] - 777:23, 866:12
**constitutional** [1] - 850:9
**Cont** [2] - 778:11, 867:3
**contemplated** [1] - 841:5
**context** [1] - 834:6
**continue** [1] - 808:11
**continued** [1] - 837:15
**continuing** [1] - 830:23
**contractor** [3] - 794:12, 794:13, 862:21
**control** [1] - 858:8
**conversation** [1] - 779:3
**convicted** [1] - 836:24
**COOKE** [31] - 777:18, 780:18, 781:8, 791:21, 806:15, 827:24, 828:3, 829:3, 829:6, 829:9, 831:4, 831:23, 831:25, 832:11, 832:19, 832:23, 832:25, 833:3, 834:8, 835:8, 835:14, 835:23, 836:1, 836:15, 837:11, 839:6, 842:17, 842:25, 843:3, 843:6, 843:19
**Cooke** [7] - 777:19, 780:17, 828:1, 835:19, 835:20, 839:5, 864:9

**copies** [2] - 789:6, 794:21
**copy** [2] - 816:4, 865:13
**cordial** [1] - 846:15
**corporation** [1] - 835:22
**correct** [22] - 778:15, 779:7, 782:23, 783:1, 788:15, 794:21, 799:6, 808:19, 809:12, 809:22, 814:8, 814:15, 814:22, 814:25, 815:4, 818:13, 819:7, 819:20, 819:23, 820:1, 824:13, 839:6
**correctness** [1] - 829:11
**corroborates** [1] - 859:24
**counsel** [9] - 794:8, 815:24, 835:16, 835:22, 842:8, 842:16, 843:6, 847:25, 851:23
**count** [7] - 788:3, 821:10, 853:9, 854:7, 856:23, 860:8, 861:12
**Count** [8] - 850:24, 852:23, 858:19, 859:4, 860:7, 861:23, 861:25
**counted** [1] - 860:10
**country** [3] - 788:15, 824:11, 848:5
**counts** [12] - 850:20, 854:19, 855:8, 856:6, 856:17, 856:25, 857:16, 858:16, 858:17, 862:4, 862:9, 863:20
**Counts** [6] - 855:18, 856:5, 857:1, 857:2, 858:18, 861:4
**couple** [8] - 827:2, 831:17, 836:2, 839:17, 842:14, 846:12, 848:24, 862:16
**course** [9] - 788:13, 788:17, 789:7, 794:1, 794:10, 848:9, 853:11, 853:13, 855:12
**Court** [20] - 777:22, 777:22, 792:17, 816:8, 826:22, 833:6, 846:13, 846:14, 847:10, 848:19, 849:2, 849:5, 851:8, 852:15, 854:6, 856:6, 856:16, 858:7, 865:18, 866:11
**COURT** [172] - 777:1, 778:2, 778:10, 780:17,

781:1, 781:11, 781:19, 781:23, 782:11, 782:14, 787:14, 788:7, 789:1, 789:12, 789:14, 790:13, 790:17, 791:14, 791:20, 791:22, 791:25, 792:5, 792:12, 792:18, 792:23, 793:4, 793:10, 795:1, 795:4, 795:7, 795:9, 795:17, 795:20, 796:16, 796:20, 796:22, 797:6, 797:8, 798:1, 798:9, 798:22, 799:18, 799:21, 801:12, 801:15, 801:23, 801:25, 802:20, 805:22, 806:5, 806:7, 806:16, 806:23, 807:1, 807:4, 807:16, 807:21, 807:23, 808:11, 811:15, 813:7, 813:11, 813:23, 814:1, 815:20, 816:4, 816:15, 817:4, 818:3, 818:11, 820:3, 820:20, 820:24, 822:1, 822:3, 822:9, 822:12, 822:19, 822:22, 822:24, 823:2, 823:15, 823:20, 823:25, 825:9, 825:14, 825:24, 826:2, 826:5, 826:17, 826:23, 827:1, 827:7, 827:12, 827:21, 827:23, 827:25, 828:10, 829:5, 829:8, 829:14, 831:5, 831:12, 831:16, 831:24, 832:2, 832:12, 832:21, 832:24, 833:2, 833:10, 834:9, 834:20, 835:1, 835:4, 835:9, 835:19, 835:25, 836:5, 836:22, 837:12, 838:4, 838:9, 839:7, 839:11, 839:16, 840:2, 841:15, 841:23, 842:7, 842:15, 842:23, 843:2, 843:5, 843:15, 843:17, 843:20, 843:25, 844:2, 844:8, 845:2, 845:10, 845:16, 845:21, 846:10, 846:16, 846:23, 848:12, 848:23, 850:14, 850:22, 851:1, 851:5, 852:7, 852:20, 853:15, 853:18, 853:20, 854:2, 854:20, 856:18, 860:17, 860:23, 861:11, 863:22, 864:8, 864:11,

864:13, 865:11, 865:17, 865:20, 866:1
**court** [11] - 781:13, 782:19, 794:20, 795:3, 798:21, 806:22, 818:10, 823:24, 826:25, 838:2, 846:14
**court's** [1] - 787:13
**Court's** [6] - 813:6, 825:23, 847:12, 850:17, 856:25, 865:15
**Courthouse** [1] - 777:23
**courtroom** [5] - 808:10, 826:13, 827:6, 844:7, 846:9
**COURTROOM** [4] - 778:8, 801:14, 801:19, 844:6
**courts** [1] - 817:20
**cover** [2] - 860:20, 860:24
**covered** [1] - 859:10
**CP** [1] - 784:24
**CPT** [15] - 779:6, 779:21, 779:24, 782:4, 783:6, 784:5, 786:1, 786:12, 786:22, 787:4, 787:18, 800:8, 806:10, 820:9, 820:11
**CRC** [1] - 777:22
**create** [1] - 789:25
**created** [3] - 797:1, 823:4, 823:5
**creating** [1] - 831:15
**credentialed** [1] - 834:5
**credible** [1] - 858:13
**credit** [2] - 858:11
**criminal** [1] - 792:14
**Criminal** [1] - 777:3
**CROSS** [1] - 813:14
**cross** [23] - 781:1, 781:5, 816:3, 817:5, 822:25, 831:14, 831:17, 832:3, 832:7, 833:15, 836:18, 846:21, 846:25, 847:1, 847:6, 847:7, 847:9, 849:18, 852:1, 852:4, 852:9, 852:18
**Cross** [1] - 867:4
**cross-examination** [7] - 816:3, 817:5, 832:7, 836:18, 849:18, 852:9
**CROSS-EXAMINATION** [1] - 813:14
**Cross-Examination** [1] - 867:4

**cross-examine** [6] - 781:1, 832:3, 846:21, 846:25, 847:1, 847:7
**cross-examined** [2] - 831:17, 833:15
**cross-examining** [3] - 822:25, 847:6, 847:9
**crossed** [1] - 831:17
**CRR** [2] - 777:22, 866:11
**crucial** [1] - 828:11
**CT** [4] - 861:15, 862:3, 862:7, 862:22
**current** [1] - 837:14
**cut** [1] - 832:19

# D

**D-O-Z-A** [1] - 846:23
**D.C** [6] - 806:11, 809:11, 810:7, 811:17, 824:11, 866:13
**dangerous** [1] - 833:13
**data** [145] - 778:15, 778:17, 779:6, 779:20, 780:25, 781:17, 781:21, 781:22, 782:3, 782:8, 782:15, 782:16, 782:25, 783:4, 783:8, 783:14, 784:18, 784:19, 784:22, 785:1, 785:3, 785:5, 785:11, 786:7, 786:11, 786:17, 787:1, 787:3, 787:7, 787:10, 787:23, 788:12, 788:14, 788:20, 789:5, 789:6, 789:17, 790:2, 790:5, 792:3, 792:8, 793:25, 794:1, 794:5, 794:9, 794:16, 794:18, 794:19, 794:23, 796:9, 797:1, 797:11, 797:13, 797:15, 798:4, 799:8, 799:15, 799:25, 800:8, 800:12, 801:5, 802:2, 802:9, 802:20, 803:3, 803:4, 804:1, 804:3, 804:22, 805:3, 805:16, 805:25, 806:10, 806:25, 807:10, 807:14, 808:15, 808:22, 809:7, 809:17, 809:20, 809:23, 810:2, 810:6, 810:12, 810:19, 811:3, 811:5, 811:17, 811:22, 812:1, 812:3, 812:7, 812:9, 812:14, 812:17, 813:22, 814:3,

814:5, 814:7, 814:21, 816:11, 816:22, 816:23, 816:24, 817:7, 817:13, 817:25, 818:6, 818:24, 819:1, 819:2, 819:7, 822:13, 822:15, 822:17, 823:5, 823:10, 823:12, 847:4, 847:17, 847:18, 847:19, 850:1, 850:2, 851:9, 851:10, 851:19, 852:5, 852:19, 857:10, 857:19, 859:18, 862:24
**date** [17] - 779:23, 783:3, 783:14, 784:4, 784:23, 785:9, 785:10, 785:17, 786:12, 786:21, 787:21, 803:12, 803:21, 814:18, 815:3, 855:4
**Dated** [1] - 866:7
**dates** [6] - 787:22, 797:12, 803:1, 804:9, 858:2, 859:8
**DAY** [1] - 777:5
**days** [1] - 789:4
**DC** [4] - 777:6, 777:14, 777:20, 777:24
**dead** [1] - 863:4
**deal** [2] - 845:22, 845:23
**decide** [2] - 854:22, 854:24
**decided** [1] - 842:17
**decision** [2] - 849:2, 863:24
**Defendant** [2] - 777:7, 777:16
**defendant** [16] - 852:2, 856:25, 857:14, 861:2, 861:6, 861:15, 862:1, 862:6, 862:10, 862:11, 862:15, 862:20, 862:25, 863:5, 863:7, 863:20
**defendant's** [4] - 851:7, 851:14, 857:10, 857:17
**defense** [14] - 794:8, 815:24, 817:25, 828:4, 842:7, 843:1, 851:23, 852:9, 852:16, 853:9, 858:17, 864:14, 865:9
**defense's** [1] - 854:8
**deficient** [1] - 855:23
**defines** [1] - 824:7
**definition** [1] - 823:18
**defraud** [3] - 854:25, 855:22, 856:4
**Del** [1] - 838:18

**Delaware** [12] - 806:11, 809:11, 810:8, 811:17, 824:12, 829:13, 835:15, 836:11, 836:20, 836:21, 836:24, 862:17
**delays** [1] - 844:16
**delivery** [1] - 825:5
**denies** [1] - 856:11
**deny** [1] - 850:14
**Department** [1] - 777:13
**deposition** [1] - 860:19
**DEPUTY** [4] - 778:8, 801:14, 801:19, 844:6
**derangement** [1] - 821:20
**describes** [1] - 815:8
**describing** [1] - 822:16
**description** [5] - 780:11, 784:14, 820:7, 820:9, 840:12
**designed** [1] - 829:11
**desire** [1] - 851:10
**despite** [3] - 829:20, 849:10, 849:13
**Destruction** [1] - 820:5
**destruction** [1] - 857:7
**detail** [6] - 786:3, 786:10, 799:9, 799:13, 828:8, 849:21
**detailed** [1] - 827:23
**deviate** [1] - 835:12
**diagnosis** [21] - 780:3, 780:6, 780:10, 784:11, 784:14, 820:15, 820:17, 820:19, 821:4, 821:8, 821:9, 821:13, 821:17, 821:18, 821:19, 821:22, 821:24, 853:12, 853:16, 854:1, 854:3
**DICKMAN** [1] - 866:3
**Dickman** [3] - 777:22, 808:1, 866:11
**Diercks** [1] - 777:19
**difference** [1] - 833:4
**different** [4] - 788:21, 826:12, 827:19, 837:18
**direct** [1] - 819:9
**Direct** [1] - 867:3
**DIRECT** [1] - 778:11
**directing** [1] - 819:16
**directly** [6] - 818:24, 819:4, 819:5, 828:14, 831:6, 832:2
**disagreeing** [1] -

846:13
**disciplinary** [2] - 831:1, 862:17
**discipline** [1] - 836:13
**disclosure** [1] - 836:16
**discovery** [1] - 794:7
**discuss** [2] - 864:24, 865:4
**discussed** [2] - 827:20, 861:23
**discussion** [10] - 782:13, 791:24, 797:25, 806:19, 815:21, 822:21, 826:16, 842:16, 844:5, 851:20
**dismiss** [1] - 856:6
**DISTRICT** [3] - 777:1, 777:1, 777:10
**District** [6] - 835:17, 836:3, 836:12, 836:19, 842:19, 842:21
**docket** [1] - 864:1
**doctor** [5] - 799:23, 814:22, 815:2, 850:18, 853:14
**doctor's** [2] - 814:24, 815:2
**doctors** [8] - 824:24, 825:11, 825:17, 833:16, 847:22, 848:10, 852:5
**document** [1] - 845:4
**documents** [5] - 789:21, 790:2, 791:10, 791:17, 796:7
**dollars** [1] - 809:2
**done** [8] - 815:3, 815:8, 827:12, 844:13, 844:18, 845:6, 848:7, 864:12
**door** [4] - 816:10, 817:8, 817:10, 818:1
**down** [16] - 779:15, 783:4, 791:7, 798:10, 798:14, 799:4, 802:6, 805:13, 810:1, 819:13, 826:3, 826:8, 827:8, 834:12, 857:1, 861:11
**Dr** [53] - 795:24, 802:3, 806:12, 808:22, 809:17, 809:20, 810:12, 811:1, 811:18, 811:22, 812:11, 813:18, 824:7, 824:18, 824:21, 825:1, 825:7, 825:11, 828:11, 828:14, 828:19, 829:12, 831:12, 832:8,

833:18, 833:19, 834:4,
834:14, 834:20,
834:23, 835:10,
837:14, 837:16,
837:20, 838:5, 838:18,
839:18, 839:23, 840:1,
840:5, 840:8, 841:6,
842:20, 848:1, 850:8,
852:25, 853:4, 854:13,
855:16, 856:17, 858:8,
858:25, 859:11
**drafted** [2] - 829:10
**draw** [6] - 798:13,
816:12, 816:13,
817:10, 817:16, 833:11
**due** [1] - 834:2
**during** [7] - 787:25,
808:6, 816:6, 831:19,
839:4, 839:8, 851:15
**duties** [1] - 794:12

## E

**early** [1] - 846:1
**ease** [1] - 778:23
**education** [2] -
830:23, 846:18
**effect** [1] - 837:9
**EFT** [4] - 790:12,
790:21, 790:23, 791:6
**egg** [3] - 796:16,
796:17, 796:25
**eighth** [1] - 810:16
**either** [7] - 804:9,
820:10, 827:7, 846:14,
854:17, 857:11, 860:11
**electronic** [1] - 818:13
**electronically** [2] -
814:11, 818:14
**elicit** [3] - 781:4,
832:3, 850:6
**elicited** [2] - 830:19,
858:25
**eliciting** [1] - 832:7
**eliminate** [1] - 839:22,
840:7
**embrace** [2] - 828:6,
834:23
**employee** [1] - 794:8
**encompassed** [1] -
800:1
**end** [2] - 834:1, 864:3
**ended** [1] - 834:19
**ending** [3] - 838:2,
840:5, 841:20
**ends** [1] - 787:23
**engaged** [1] - 829:12
**engaging** [4] - 828:20,
828:22, 829:20, 830:11
**enjoy** [2] - 846:4,

846:7
**enrollment** [6] -
789:21, 790:2, 790:5,
795:23, 796:7
**ensure** [1] - 789:6
**enter** [3] - 808:10,
844:7, 856:16
**entered** [2] - 842:23,
843:17
**entering** [1] - 836:25
**entire** [1] - 837:21
**entirety** [3] - 802:15,
839:13, 840:25
**entitled** [2] - 828:12,
847:15
**epidemic** [1] - 848:5
**equates** [1] - 803:14
**error** [2] - 817:15,
849:7
**especially** [2] - 837:9,
849:7
**ESQ** [4] - 777:12,
777:13, 777:16, 777:18
**essentially** [2] -
847:20, 862:12
**establishing** [1] -
829:11, 838:17
**evaluated** [2] - 838:1,
838:7
**evaluating** [1] -
849:25
**evening** [2] - 826:6,
827:12
**evidence** [39] - 781:2,
790:9, 792:24, 793:13,
798:6, 807:4, 833:11,
843:18, 843:22,
844:10, 845:7, 852:12,
852:13, 853:1, 853:18,
853:24, 854:4, 854:9,
854:18, 854:20,
855:14, 855:17,
855:22, 856:20,
856:23, 857:6, 857:9,
857:14, 857:22,
857:23, 858:15,
858:16, 859:7, 859:19,
860:5, 860:14, 863:5,
863:6, 863:19
**exact** [1] - 794:17
**exactly** [2] - 831:6,
864:10
**EXAMINATION** [2] -
778:11, 813:14
**examination** [12] -
781:5, 816:3, 817:5,
831:15, 832:7, 836:18,
847:10, 849:18, 852:9,
852:19, 855:15
**Examination** [2] -

867:3, 867:4
**examine** [7] - 781:1,
832:3, 846:21, 846:25,
847:1, 847:7, 847:15
**examined** [2] - 831:17,
833:15
**examining** [3] -
822:25, 847:6, 847:9
**example** [3] - 788:3,
803:19, 828:17
**Excel** [4] - 778:17,
778:20, 788:7, 788:9
**exclusively** [1] -
824:25
**Excuse** [1] - 834:18
**excuse** [5] - 801:23,
815:20, 826:23, 844:3,
850:4
**Exhibit** [44] - 778:7,
778:14, 778:17,
789:18, 790:2, 790:3,
790:8, 790:24, 791:8,
793:11, 795:12,
796:10, 796:13, 797:2,
797:10, 800:4, 802:7,
802:8, 804:25, 805:1,
805:3, 805:15, 807:2,
807:18, 808:14,
808:15, 810:4, 811:14,
814:4, 819:10, 819:12,
824:2, 842:5, 842:19,
843:9, 844:25, 845:1,
845:9, 858:1, 859:19,
865:9, 867:7, 867:9,
867:9
**exhibit** [19] - 791:8,
793:17, 798:12, 801:6,
820:7, 820:9, 823:1,
823:2, 823:3, 823:14,
824:4, 842:1, 842:5,
843:13, 844:21, 845:2,
860:21, 865:9
**EXHIBITS** [1] - 867:6
**Exhibits** [15] - 788:23,
789:5, 789:11, 789:18,
793:14, 793:23, 794:6,
795:12, 796:5, 805:16,
805:19, 806:1, 806:4,
867:8, 867:8
**exhibits** [15] - 792:22,
793:12, 793:17,
793:22, 794:25,
796:24, 798:16,
805:24, 806:25,
825:20, 843:10,
843:22, 845:16,
845:17, 867:7
**experience** [4] -
819:19, 830:22,
837:17, 837:21

**experienced** [1] -
833:18
**expert** [5] - 817:21,
817:24, 833:8, 850:18,
851:16
**explain** [3] - 802:15,
847:2, 853:21
**explicit** [1] - 863:2
**explicitly** [1] - 847:4
**expressly** [1] - 792:18
**extent** [3] - 817:25,
837:2, 849:19
**extract** [1] - 819:2
**extracts** [1] - 819:1
**extreme** [1] - 829:3
**extremely** [1] - 851:18

## F

**facet** [3] - 820:6,
857:7, 861:8
**fact** [16] - 782:17,
792:15, 792:19, 828:7,
829:22, 829:25,
830:18, 831:20,
831:21, 833:5, 833:15,
836:17, 837:13,
848:19, 854:9, 863:4
**factor** [1] - 842:15
**facts** [3] - 828:13,
832:7, 855:25
**factual** [6] - 822:13,
822:14, 829:2, 831:6,
841:6, 841:9
**failed** [1] - 834:23
**fair** [1] - 832:6
**fairness** [1] - 850:16
**fall** [3] - 810:2, 812:25,
813:2
**false** [6] - 854:24,
855:1, 855:3, 855:20,
856:2, 857:18
**falsity** [1] - 856:2
**familiar** [1] - 814:10
**far** [1] - 826:14
**fashion** [1] - 781:3
**favor** [1] - 856:16
**favorable** [2] - 856:21,
863:19
**FBI** [1] - 856:14
**February** [1] - 785:17
**fell** [1] - 811:9
**few** [4] - 813:21,
844:10, 850:21, 862:4
**fields** [1] - 830:20
**fifth** [1] - 821:19
**file** [1] - 863:6
**files** [2] - 857:22,
859:7
**fills** [1] - 815:2

875

**filter** [2] - 778:20, 816:23
**filtered** [3] - 778:24, 787:18, 787:21
**filters** [2] - 787:7, 823:6
**final** [5] - 835:9, 841:12, 841:17, 864:1, 864:18
**finally** [1] - 856:5
**findings** [2] - 828:13, 830:17
**fine** [12] - 799:21, 828:6, 828:23, 828:24, 829:1, 829:5, 830:24, 834:10, 836:16, 838:22, 838:23
**finger** [1] - 847:25
**Firm** [1] - 777:16
**first** [11] - 802:16, 803:18, 816:19, 821:16, 828:19, 831:5, 834:9, 841:1, 846:20, 850:23, 857:13
**fiscal** [1] - 819:3
**five** [5] - 807:23, 808:4, 809:25, 821:12, 846:1
**flagged** [1] - 851:15
**fluoroscopic** [8] - 828:16, 829:18, 829:19, 829:21, 829:23, 834:16, 835:5, 860:9
**fluoroscopy** [18] - 820:10, 836:10, 839:19, 839:22, 840:8, 840:23, 857:15, 861:10, 861:14, 862:3, 862:6, 862:7, 862:11, 862:16, 862:18, 862:22, 862:24, 863:14
**focus** [1] - 825:4
**following** [2] - 840:11, 840:15
**football** [1] - 844:11
**FOR** [1] - 777:1
**foreclosing** [1] - 817:3
**foregoing** [1] - 866:4
**forgot** [1] - 843:10
**form** [7] - 780:21, 780:22, 781:10, 792:3, 815:10, 818:15, 847:4
**formalities** [1] - 844:13
**formally** [1] - 841:25
**format** [2] - 778:18, 778:20
**former** [1] - 855:10
**forms** [1] - 795:23

**forth** [2] - 816:8, 847:13
**foundation** [8] - 780:20, 789:13, 790:15, 791:15, 792:2, 793:6, 795:1, 848:16
**four** [3] - 778:3, 789:4, 825:17
**fourth** [1] - 821:17
**Fourth** [2] - 794:3, 794:4
**frame** [2] - 806:18, 806:23
**Frank** [2] - 796:20, 796:21
**frank** [1] - 796:25
**fraud** [3] - 794:13, 794:15, 847:24
**fraudulent** [1] - 857:18
**fraudulently** [1] - 859:11
**Frederick** [5] - 777:6, 789:22, 795:24, 795:25, 796:6
**FREDERICK** [1] - 777:18
**Fredrick** [1] - 796:2
**free** [3] - 850:3, 852:9
**frequency** [1] - 802:13
**front** [2] - 826:7, 828:17
**full** [1] - 866:5
**fuzzy** [1] - 813:25

## G

**G.B** [7] - 779:14, 779:15, 779:21, 858:19, 858:20, 859:3, 860:7
**game** [1] - 844:11
**general** [4] - 788:12, 835:21, 835:24, 862:9
**generate** [1] - 788:18
**gentleman** [1] - 831:20
**gentlemen** [4] - 808:5, 826:5, 827:1, 844:8
**girlfriend** [1] - 855:10
**given** [17] - 816:22, 818:4, 822:7, 823:17, 825:23, 826:13, 828:10, 837:9, 852:11, 852:24, 853:3, 853:6, 853:10, 859:8, 860:11, 861:6
**glaring** [1] - 850:24
**Gooding** [43] - 777:6, 789:22, 790:6, 795:24, 795:25, 796:3, 796:6,

802:3, 806:12, 808:22, 809:17, 809:20, 810:12, 811:1, 811:18, 811:22, 812:11, 824:18, 824:21, 825:1, 825:11, 828:20, 829:12, 831:12, 832:8, 833:18, 834:4, 834:23, 837:14, 837:16, 837:20, 838:5, 838:18, 839:18, 840:5, 841:6, 848:2, 853:1, 853:4, 855:16, 856:17, 859:17
**Gooding's** [15] - 813:18, 824:7, 825:7, 828:11, 828:14, 834:14, 834:20, 835:10, 839:23, 840:1, 840:8, 842:20, 850:8, 854:13, 858:8
**government** [68] - 789:10, 791:12, 793:23, 794:6, 795:15, 796:12, 796:13, 797:4, 806:3, 816:6, 816:10, 817:8, 819:11, 819:13, 827:18, 828:5, 828:9, 828:10, 828:12, 833:6, 834:22, 835:17, 837:4, 842:18, 842:24, 843:6, 843:12, 844:23, 845:11, 845:18, 845:19, 845:21, 847:23, 848:19, 849:23, 851:2, 851:6, 851:10, 851:13, 851:18, 851:21, 854:1, 854:12, 854:21, 855:1, 855:19, 856:21, 856:22, 857:9, 857:20, 857:22, 857:25, 858:12, 858:18, 858:24, 859:3, 859:10, 859:14, 859:17, 859:23, 860:8, 861:1, 861:13, 861:19, 862:19, 863:17, 863:20, 865:13
**GOVERNMENT** [1] - 867:11
**Government** [1] - 843:9
**government's** [13] - 794:2, 794:24, 817:23, 839:25, 842:4, 849:10, 849:13, 850:17, 852:23, 854:16, 857:6, 860:5, 861:22
**Government's** [8] - 797:2, 800:4, 807:18,

808:14, 811:14, 844:25, 845:1, 858:1
**grandfathered** [1] - 830:22
**great** [1] - 832:3
**Griffith** [1] - 831:20
**guard** [1] - 837:6
**guess** [5] - 793:23, 817:23, 835:14, 864:3
**guidance** [16] - 820:6, 820:8, 828:16, 829:18, 829:19, 829:21, 829:23, 832:5, 834:17, 835:5, 857:8, 857:18, 860:9, 860:11, 861:8, 862:1
**guided** [3] - 849:1, 849:2, 849:4
**guidelines** [1] - 816:8
**guilty** [6] - 846:18, 847:20, 847:21, 855:18, 856:25, 863:20

## H

**hand** [2] - 801:12, 808:6
**handle** [1] - 828:1
**handy** [1] - 816:5
**happy** [1] - 826:6
**hard** [3] - 813:23, 844:17, 865:1
**harmless** [1] - 849:6
**Harris** [1] - 777:19
**hash** [1] - 844:12
**hate** [1] - 798:2
**headings** [2] - 823:13, 823:15
**healthcare** [4] - 799:16, 799:23, 847:24, 847:25
**hear** [3] - 821:7, 826:6, 853:20
**heard** [12] - 822:18, 822:24, 830:14, 831:23, 834:19, 839:14, 848:23, 850:21, 855:9, 858:19, 862:9, 863:11
**hearing** [1] - 813:23
**HELD** [1] - 777:9
**help** [3] - 787:7, 806:24, 826:10
**helpful** [1] - 793:9
**hereby** [1] - 866:3
**herself** [1] - 858:5
**hide** [1] - 778:20
**highest** [8] - 808:23, 809:2, 810:13, 810:16, 811:20, 811:24,

876

812:24, 848:9
**highlight** [1] - 788:2
**highlighted** [2] -
798:4, 837:13
**highlighter** [1] -
798:18
**highlighting** [2] -
798:19, 799:4
**hip** [8] - 821:25,
853:10, 854:17, 855:7,
858:24, 859:9, 859:13,
860:4
**history** [1] - 853:22
**History** [2] - 818:23,
819:5
**hitting** [1] - 832:8
**hold** [1] - 853:8
**holdover** [1] - 853:23
**Honor** [56] - 778:6,
780:18, 781:8, 788:24,
791:15, 792:11, 797:7,
797:24, 806:6, 806:15,
806:17, 807:20, 808:8,
813:13, 815:19, 817:3,
822:11, 822:18, 825:8,
825:13, 826:1, 827:11,
827:18, 827:24, 828:3,
829:3, 829:9, 831:4,
831:11, 831:23,
832:11, 832:20,
832:23, 832:25, 834:8,
834:18, 835:8, 835:14,
836:15, 837:11, 839:6,
839:14, 841:12,
841:19, 842:13,
842:17, 842:25, 843:6,
843:19, 843:24, 844:6,
844:23, 846:12,
850:13, 851:6, 852:22
**HONORABLE** [1] -
777:9
**hope** [3] - 778:2,
826:10, 851:15
**Hospital** [1] - 856:12
**hospital** [2] - 834:1,
834:5
**hour** [2] - 842:2,
847:10
**housekeeping** [1] -
865:9

**I**

**idea** [2] - 792:3,
824:25
**identify** [2] - 806:17,
806:20
**identifying** [3] -
814:15, 814:21, 814:25
**illnesses** [1] - 834:3

**imagine** [3] - 830:19,
830:25, 832:4
**imaging** [6] - 820:6,
820:8, 857:7, 857:18,
861:8, 862:1
**impeached** [2] -
860:14, 860:18
**impeaching** [1] -
860:19
**implicitly** [1] - 847:4
**implies** [1] - 782:17
**important** [2] - 798:6,
833:9
**imposed** [1] - 836:13
**impossible** [1] - 835:5
**impression** [1] - 798:5
**improper** [1] - 849:6
**improving** [1] - 778:3
**IN** [1] - 777:1
**include** [3] - 783:20,
809:17, 811:1
**included** [2] - 810:19,
812:3
**incompetence** [6] -
828:21, 829:15, 830:1,
830:12, 833:13, 838:20
**incompetent** [4] -
834:15, 834:21, 835:2,
836:8
**incompetently** [1] -
840:21
**INDEX** [1] - 867:1
**indicate** [6] - 780:25,
782:15, 851:13,
852:15, 859:8, 862:18
**indicated** [6] - 779:5,
793:16, 859:15,
860:12, 862:12, 863:9
**indicates** [1] - 807:11
**indicating** [4] - 792:1,
859:6, 862:22, 863:6
**indictment** [3] -
839:10, 856:24, 863:21
**individual** [5] - 779:1,
779:13, 779:21,
781:25, 786:21
**individuals** [1] -
778:24
**indulgence** [2] -
787:13, 813:6
**infer** [6] - 830:2,
830:3, 858:13, 859:11,
859:24, 861:17
**inference** [4] - 815:25,
831:15, 833:17, 847:21
**inferences** [8] -
816:12, 816:14, 817:1,
817:11, 817:16, 849:6,
851:12, 851:19
**inferred** [1] - 863:11

**inflammatory** [2] -
821:19, 830:10
**information** [10] -
793:20, 796:5, 800:23,
809:4, 814:15, 814:25,
830:10, 845:5, 848:14,
854:7
**inherent** [2] - 829:14,
829:16
**initial** [2] - 815:13,
851:14
**initials** [12] - 779:2,
779:13, 779:21,
781:25, 782:4, 784:1,
784:21, 784:23, 786:1,
786:12, 786:21, 858:19
**injected** [3] - 831:19,
831:21, 831:22
**injection** [27] - 821:24,
821:25, 822:6, 823:17,
825:12, 834:15,
834:21, 852:24, 853:3,
853:10, 853:12,
854:11, 854:17, 855:4,
856:7, 858:3, 858:21,
858:22, 858:23,
858:24, 859:8, 859:9,
860:4, 860:5, 860:16,
861:18
**injections** [36] - 825:2,
825:5, 828:16, 829:17,
829:19, 829:21,
829:23, 831:16,
832:13, 835:11, 839:4,
839:8, 839:24, 840:10,
840:14, 848:3, 850:25,
855:6, 855:7, 856:9,
857:17, 858:20, 859:1,
859:2, 859:13, 859:16,
859:21, 859:25, 860:2,
860:3, 860:11, 861:6,
861:8, 861:21, 862:2,
862:19
**insertion** [2] - 832:9,
832:16
**insisted** [1] - 850:10
**instead** [1] - 782:16
**instruct** [1] - 864:17
**instructed** [3] -
822:14, 849:8, 849:23
**instruction** [7] - 818:4,
823:9, 827:16, 827:20,
830:3, 830:6, 837:6
**instructions** [5] -
836:7, 864:2, 864:15,
864:18, 864:19
**intended** [5] - 835:11,
838:2, 847:6, 847:9,
847:22
**intends** [2] - 828:9,

833:6
**intent** [7] - 828:11,
828:15, 830:5, 838:23,
854:25, 855:21, 856:3
**intermediary** [1] -
819:3
**internal** [1] - 821:20
**interpret** [7] - 823:3,
823:9, 823:10, 823:11,
847:3, 850:1, 850:2
**interpretation** [3] -
818:6, 847:5, 847:18
**interpreted** [2] -
823:1, 847:11
**interpreting** [2] -
781:7, 823:2
**interrupt** [1] - 807:19
**interrupting** [1] -
829:4
**interventional** [1] -
848:7
**introduce** [3] - 828:9,
842:18, 843:12
**Irvine** [1] - 777:17
**issue** [6] - 793:13,
828:2, 828:11, 830:5,
840:22, 843:4
**issued** [1] - 842:19
**issues** [3] - 831:7,
844:12, 856:8
**item** [4] - 798:10,
798:11, 822:6
**item-by-item** [1] -
798:10
**itself** [3] - 788:5,
815:18, 816:18

**J**

**J.G** [5] - 784:21,
784:23, 785:9, 785:24,
786:1
**J7326** [15] - 780:1,
780:4, 784:5, 804:23,
805:4, 811:12, 811:17,
811:19, 812:14,
858:21, 859:1, 859:2,
859:4, 859:19
**JANICE** [1] - 866:3
**Janice** [2] - 777:22,
866:11
**January** [9] - 797:12,
800:8, 802:3, 802:18,
807:11, 807:12,
808:15, 810:6, 812:8
**JIL** [1] - 777:13
**JILLIAN** [1] - 777:12
**joint** [3] - 820:6, 857:7,
861:8
**JR** [1] - 777:18

**Juan** [1] - 858:25
**JUDGE** [2] - 777:9,
777:10
**judgment** [4] - 850:20,
852:21, 856:16, 865:6
**jump** [1] - 822:10
**June** [3] - 853:4,
854:10, 854:14
**juror** [7] - 801:12,
855:17, 856:24,
858:13, 859:24, 861:1,
861:17
**jurors** [5] - 808:10,
813:23, 827:6, 844:7,
846:9
**JURORS** [1] - 801:24
**JURY** [2] - 777:4,
777:8
**jury** [38] - 781:5,
790:14, 793:15,
797:10, 798:5, 798:18,
800:5, 818:4, 822:14,
822:16, 823:10, 826:9,
826:14, 826:23, 830:2,
836:23, 836:24, 837:2,
841:4, 843:14, 843:25,
844:3, 844:6, 844:14,
847:19, 847:20, 849:8,
849:23, 849:25,
854:22, 854:23,
858:11, 861:21,
863:18, 863:25, 864:1,
864:21
**jury's** [1] - 858:7
**Justice** [1] - 777:13

## K

**K.M** [2] - 779:2, 779:6
**Karen** [4] - 856:5,
857:3, 857:24, 858:5
**keep** [3] - 785:4,
841:23, 844:9
**keeping** [2] - 837:25,
845:25
**kept** [1] - 837:14
**Khatwa** [2] - 816:5,
849:2
**KHOURI** [62] - 777:16,
789:13, 791:15, 792:1,
792:11, 792:14,
792:21, 793:3, 793:6,
795:18, 797:7, 797:24,
798:2, 798:20, 806:6,
806:17, 806:20,
813:13, 813:15,
813:25, 814:2, 816:13,
817:2, 818:9, 818:12,
820:4, 821:2, 821:3,
822:4, 822:18, 822:20,

822:23, 822:25,
823:13, 823:18,
823:23, 824:1, 825:10,
825:15, 825:22,
827:10, 842:13,
846:12, 846:17,
846:24, 848:15,
850:13, 850:16,
850:23, 851:4, 852:22,
853:17, 853:19,
853:21, 854:6, 854:23,
864:7, 864:9, 864:12,
865:8, 865:12, 865:18
**Khouri** [26] - 777:16,
792:5, 798:1, 798:9,
813:12, 813:18, 816:4,
820:24, 820:25,
822:22, 826:6, 826:17,
831:15, 831:17, 832:3,
833:14, 836:17, 844:3,
844:4, 846:10, 846:16,
851:2, 852:20, 854:2,
856:18, 864:6
**Khouri....................
813** [1] - 867:4
**kind** [3] - 832:5,
853:23
**Kindergarten** [1] -
846:18
**kinds** [2] - 816:11,
828:15
**knee** [31] - 780:9,
784:15, 821:20,
821:21, 821:25,
852:23, 853:2, 853:13,
853:22, 854:11,
854:17, 855:4, 855:6,
855:12, 855:13, 856:9,
858:3, 858:20, 858:21,
859:2, 859:6, 859:8,
859:12, 859:16,
859:21, 859:25, 860:2,
860:5, 863:12
**knowing** [1] - 859:12
**knowledge** [12] -
781:20, 782:23,
817:22, 822:13,
822:14, 828:14, 830:5,
836:8, 838:23, 840:1,
846:2, 852:1
**known** [2] - 848:13,
857:14
**knows** [4] - 780:20,
823:16, 835:22, 836:1

## L

**lack** [4] - 789:13,
793:6, 814:11, 853:2
**lacking** [1] - 792:2

**ladies** [4] - 808:5,
826:5, 827:1, 844:8
**laid** [1] - 795:1
**land** [1] - 815:25
**last** [12] - 803:16,
828:18, 830:10,
830:11, 832:12,
837:12, 838:9, 840:16,
844:9, 844:10, 846:21
**Law** [1] - 777:16
**law** [2] - 846:19,
847:12
**lawyer** [1] - 791:22
**lawyers** [2] - 813:18,
829:10
**laying** [1] - 848:15
**leaned** [1] - 799:18
**learns** [1] - 848:18
**least** [5] - 828:5,
836:10, 846:5, 858:1
**leave** [3] - 827:6,
834:4, 846:9
**leaves** [1] - 842:9
**leaving** [2] - 834:23,
860:1
**left** [12] - 779:14,
783:13, 785:3, 785:8,
785:24, 808:13,
821:14, 852:25,
854:12, 858:8, 859:21,
860:1
**leg** [1] - 783:15
**legal** [3] - 827:2,
844:12, 845:22
**legitimacy** [4] - 847:5,
847:6, 847:16, 847:17
**legs** [1] - 807:24
**lengthy** [1] - 851:20
**less** [6] - 803:1, 803:9,
803:12, 803:20, 804:9,
804:14
**letter** [3] - 788:5,
862:20, 862:25
**letters** [1] - 815:11
**letting** [1] - 822:24
**lie** [1] - 835:23
**light** [3] - 798:8,
856:20, 863:19
**limited** [3] - 809:10,
849:24, 851:9
**limiting** [8] - 818:4,
822:5, 823:9, 827:16,
827:19, 830:2, 836:7,
837:6
**limits** [1] - 850:11
**line** [23] - 779:2,
779:15, 779:16,
779:18, 780:1, 782:1,
783:4, 783:16, 784:7,
784:21, 786:3, 786:10,

786:20, 800:22,
819:14, 819:16, 821:8,
821:23, 822:6, 830:13,
833:11
**line-by-line** [1] -
830:13
**lines** [4] - 799:8,
799:9, 799:13, 800:1
**list** [1] - 843:13
**listed** [2] - 799:24,
858:2
**lists** [1] - 861:13
**lives** [1] - 846:7
**LLP** [1] - 777:19
**look** [10] - 790:12,
792:19, 800:7, 802:16,
802:25, 815:16,
816:16, 824:24,
849:13, 864:23
**looked** [13] - 791:18,
793:16, 793:17,
796:10, 796:24, 799:8,
805:15, 810:11, 812:2,
812:3, 817:13, 819:7,
849:22
**looking** [8] - 784:4,
784:7, 789:17, 794:19,
808:18, 809:8, 813:22,
814:4
**looks** [2] - 842:7,
864:16
**loved** [1] - 863:8
**lower** [4] - 820:5,
861:7, 861:18, 861:22
**lunch** [1] - 778:2

## M

**ma'am** [55] - 778:16,
778:25, 779:4, 779:12,
779:19, 781:18,
781:22, 782:10,
783:14, 784:8, 784:25,
785:7, 785:12, 786:9,
786:14, 787:6, 787:20,
787:24, 788:16, 789:9,
789:24, 790:11,
790:20, 791:11, 795:6,
795:8, 795:14, 796:8,
797:3, 797:14, 799:1,
799:7, 800:10, 801:10,
802:5, 802:10, 802:22,
804:2, 804:5, 804:11,
805:2, 805:18, 806:2,
807:9, 807:13, 807:15,
808:17, 808:20, 809:6,
809:13, 810:10,
810:20, 811:4, 811:10,
820:22
**machine** [8] - 857:15,

861:10, 861:14, 861:15, 862:7, 862:8, 862:11, 863:15
**Mackey** [4] - 856:5, 857:3, 858:5, 858:12
**Mackey's** [1] - 857:24
**maintains** [1] - 830:23
**malpractice** [6] - 829:7, 829:13, 829:16, 829:25, 831:2
**manner** [4] - 834:15, 834:21, 835:2, 837:15
**March** [2] - 857:3, 857:5
**marked** [2] - 843:11, 860:23
**Martin** [1] - 777:17
**Maryland** [5] - 806:12, 809:11, 810:8, 811:18, 824:12
**material** [6] - 849:21, 855:1, 855:20, 855:21, 856:2
**materiality** [1] - 853:25
**matter** [5] - 792:15, 842:13, 848:19, 854:9, 865:8
**matters** [7] - 827:2, 845:22, 845:23, 846:4, 848:18, 848:20, 865:3
**McDuffie** [1] - 855:24
**MD** [2] - 795:25, 796:3
**mean** [15] - 781:4, 785:15, 790:13, 815:24, 815:25, 816:1, 816:20, 818:5, 818:6, 824:17, 827:25, 828:6, 837:19, 842:2, 850:4
**meaning** [2] - 830:8, 845:5
**means** [6] - 815:17, 816:17, 817:7, 820:8, 845:3, 864:15
**meant** [1] - 815:24
**Medicaid** [1] - 803:16
**Medical** [4] - 789:22, 820:12, 862:17
**medical** [3] - 829:7, 829:12, 830:23
**Medicare** [53] - 779:11, 779:12, 790:1, 790:5, 793:15, 794:12, 794:13, 797:15, 800:11, 801:1, 801:3, 801:5, 802:23, 814:7, 814:8, 814:12, 814:17, 814:22, 814:24, 815:16, 816:16, 816:21, 816:22,

816:25, 817:17, 817:22, 818:7, 818:13, 818:14, 818:15, 818:19, 819:22, 824:15, 824:16, 824:19, 824:20, 824:22, 824:24, 824:25, 829:19, 848:3, 848:16, 848:17, 852:6, 852:10, 855:20, 857:4, 857:14, 859:1, 862:14, 862:21
**medicine** [2] - 828:21, 830:12
**Medicine** [4] - 835:16, 835:18, 836:19, 842:20
**mentioned** [2] - 788:13, 835:16
**met** [1] - 863:18
**method** [1] - 862:13
**MICHAEL** [1] - 777:16
**microphone** [3] - 799:19, 826:11, 864:11
**might** [2] - 815:14, 843:11
**Mike** [1] - 813:18
**million** [3] - 809:24, 811:6, 812:13
**mind** [3] - 788:2, 820:23, 851:21
**minute** [2] - 823:8, 826:24
**minutes** [7] - 778:3, 807:23, 808:4, 842:3, 844:10, 846:1
**misrepresented** [1] - 860:5
**miss** [1] - 848:13
**missed** [1] - 801:19
**misspoke** [1] - 843:8
**mistaken** [1] - 863:3
**mistakenly** [2] - 853:13, 854:4
**mistrial** [5] - 846:20, 850:15, 851:3, 851:7, 852:14
**modification** [2] - 839:21, 840:7
**modifier** [13] - 783:20, 783:22, 783:24, 785:20, 785:22, 815:14, 815:16, 815:18, 816:16, 816:18, 816:22, 816:24, 818:16
**modifiers** [2] - 816:20, 817:17
**modifying** [1] - 859:5
**moment** [1] - 806:15
**Monday** [11] - 826:12,

846:3, 846:4, 846:8, 863:24, 864:3, 864:4, 864:12, 864:24, 865:2, 865:14
**month** [7] - 803:1, 803:9, 803:12, 803:21, 804:9, 804:15, 856:15
**morning** [4] - 846:3, 863:24, 864:16, 865:14
**most** [4] - 847:8, 850:23, 856:20, 863:19
**motion** [12] - 842:14, 846:11, 846:20, 850:14, 850:19, 851:3, 851:7, 851:14, 852:20, 863:24, 865:6
**motions** [2] - 842:14, 844:4
**move** [15] - 789:10, 791:12, 795:15, 796:13, 797:4, 806:3, 823:23, 824:2, 827:14, 832:6, 841:25, 842:1, 842:5, 843:22, 844:24
**moved** [3] - 845:11, 857:25, 860:22
**moving** [8] - 783:25, 800:4, 844:21, 850:19, 860:7, 860:17, 860:18, 865:1
**MR** [90] - 780:18, 781:8, 789:13, 791:15, 791:21, 792:1, 792:11, 792:14, 792:21, 793:3, 793:6, 795:18, 797:7, 797:24, 798:2, 798:20, 806:6, 806:15, 806:17, 806:20, 813:13, 813:15, 813:25, 814:2, 816:13, 817:2, 818:9, 818:12, 820:4, 821:2, 821:3, 822:4, 822:18, 822:20, 822:23, 822:25, 823:13, 823:18, 823:23, 824:1, 825:10, 825:15, 825:22, 827:10, 827:24, 828:3, 829:3, 829:6, 829:9, 831:4, 831:23, 832:11, 832:19, 832:23, 832:25, 833:3, 834:8, 835:8, 835:14, 835:23, 836:1, 836:15, 837:11, 839:6, 842:13, 842:17, 842:25, 843:3, 843:6, 843:19, 846:12, 846:17, 846:24, 848:15, 850:13, 850:16, 850:23, 851:4,

852:22, 853:17, 853:19, 853:21, 854:6, 854:23, 864:7, 864:9, 864:12, 865:8, 865:12, 865:18
**MRI** [1] - 856:11
**MS** [86] - 778:6, 778:9, 778:13, 780:24, 781:14, 781:24, 782:18, 782:20, 787:12, 787:16, 788:8, 788:24, 789:2, 789:10, 789:15, 790:15, 790:18, 791:1, 791:12, 791:16, 793:8, 793:11, 795:11, 795:15, 795:19, 795:21, 796:12, 796:17, 796:21, 796:23, 797:4, 797:9, 798:23, 800:3, 801:21, 802:1, 805:23, 806:3, 806:8, 806:24, 807:2, 807:5, 807:17, 808:12, 811:16, 813:6, 813:9, 815:19, 815:22, 817:19, 820:2, 822:2, 822:11, 825:8, 825:13, 826:1, 826:19, 827:11, 827:18, 831:10, 831:11, 831:14, 834:18, 834:22, 835:3, 837:24, 838:8, 839:9, 839:14, 839:17, 841:12, 841:19, 842:4, 843:8, 843:16, 843:24, 844:23, 845:9, 845:14, 845:19, 851:6, 852:8, 856:20, 860:22, 860:25, 861:12
**multiple** [4] - 831:16, 832:9, 832:15, 835:11
**must** [2] - 814:10, 830:13

## N

**N.W** [1] - 866:12
**name** [4] - 814:17, 814:24, 846:22, 857:2
**national** [2] - 818:20, 819:4
**National** [3] - 818:22, 818:23, 819:5
**nature** [1] - 834:3
**Nature** [1] - 828:17
**necessarily** [1] - 816:1
**necessary** [6] - 832:10, 833:20, 839:2, 840:13, 852:15, 864:20
**need** [9] - 807:20,

879

808:5, 840:3, 841:4,
843:13, 860:20,
860:25, 864:18, 865:4
**needed** [1] - 828:8
**needle** [1] - 832:6
**needs** [1] - 837:18
**nerve** [1] - 861:8
**nerves** [2] - 820:6,
857:7
**neuralgia** [1] - 821:16
**neuritis** [1] - 821:16
**never** [8] - 831:1,
846:13, 855:15,
855:24, 856:7, 863:9,
863:10, 863:11
**nevertheless** [1] -
862:24
**New** [1] - 777:14
**new** [1] - 862:13
**next** [26] - 783:3,
802:25, 803:13,
808:24, 809:3, 811:21,
812:24, 820:5, 828:23,
828:24, 829:1, 834:9,
834:11, 834:14, 835:4,
835:7, 837:16, 837:23,
838:16, 838:22,
839:20, 840:18, 841:1,
841:4
**nice** [1] - 846:6
**nine** [2] - 865:5, 865:6
**none** [2] - 812:20,
827:10
**nonetheless** [2] -
829:20, 852:12
**Northern** [5] - 806:12,
809:11, 810:8, 811:18,
824:12
**note** [16] - 793:24,
794:6, 815:23, 851:8,
851:23, 852:15,
857:20, 858:19,
858:24, 859:3, 859:14,
859:18, 860:12,
861:19, 862:20, 863:17
**notes** [2] - 856:8,
866:5
**nothing** [3] - 825:22,
827:18, 846:16
**Nothing** [1] - 826:1
**notice** [2] - 862:23,
863:2
**noting** [1] - 863:8
**November** [1] - 855:25
**Novitas** [2] - 793:15,
862:21
**nowadays** [1] - 845:5
**nowhere** [1] - 861:22
**NPI** [3] - 795:24,
796:2, 796:6

**number** [22] - 795:24,
796:2, 797:18, 797:20,
798:11, 798:25, 799:5,
799:6, 799:8, 800:11,
809:5, 809:7, 809:19,
810:18, 810:23, 812:7,
814:18, 814:24,
848:15, 848:16, 860:21
**numbers** [4] - 796:6,
813:5, 815:11, 832:19
**numerical** [1] - 798:4
**nurse** [1] - 833:20
**NW** [3] - 777:14,
777:19, 777:23

## O

**object** [5] - 792:18,
792:20, 792:22,
792:25, 816:1
**objected** [2] - 792:8,
792:9
**objection** [36] -
789:12, 791:14,
791:15, 792:8, 792:10,
792:15, 793:4, 793:21,
795:2, 795:4, 795:17,
797:6, 797:8, 797:24,
798:22, 806:5, 806:6,
806:7, 815:19, 817:2,
818:11, 822:1, 822:9,
822:11, 823:22,
823:25, 825:8, 825:13,
827:8, 835:15, 843:18,
843:19, 843:20, 845:3,
845:12, 849:1
**objections** [2] -
792:17, 864:3
**obtain** [1] - 836:4
**obtained** [1] - 794:16
**obviously** [2] - 856:13,
858:7
**occurred** [1] - 859:13
**October** [2] - 856:1,
857:5
**OF** [3] - 777:1, 777:8,
866:1
**off-the-record** [1] -
842:16
**Off-the-record** [1] -
844:5
**offense** [1] - 832:1
**offer** [1] - 817:20
**office** [1] - 857:24
**official** [1] - 820:9
**Official** [2] - 777:22,
866:11
**OFFICIAL** [1] - 866:1
**often** [1] - 788:9
**oftentimes** [1] -

835:23
**old** [1] - 856:12
**once** [4] - 818:19,
818:21, 827:4, 845:6
**one** [42] - 785:15,
785:16, 785:19, 791:4,
791:22, 799:24, 800:2,
801:19, 803:5, 803:12,
804:14, 806:24,
809:20, 812:10,
812:11, 812:15,
813:18, 818:17, 821:6,
821:8, 821:16, 821:17,
831:19, 831:21, 832:9,
832:15, 836:17,
839:14, 845:8, 848:15,
848:25, 850:23,
852:18, 855:13, 858:1,
858:6, 858:8, 859:10,
859:17, 863:8, 865:10
**Open** [2] - 798:21,
806:22
**open** [7] - 781:13,
782:19, 795:3, 818:1,
818:10, 823:24, 826:25
**opening** [5] - 816:10,
817:8, 817:10, 864:8,
864:14
**opiates** [1] - 848:4
**opine** [4] - 851:17,
851:18, 851:22
**opinion** [4] - 792:16,
816:7, 816:8, 817:1
**opinions** [1] - 823:20
**opioid** [1] - 848:5
**opioids** [2] - 825:2,
852:2
**opportunity** [2] -
792:23, 816:2
**oppose** [4] - 839:21,
840:7, 840:14, 851:6
**opposed** [3] - 781:9,
825:2, 848:4
**opposition** [3] -
842:24, 842:25, 851:14
**order** [10] - 792:16,
826:21, 837:3, 837:6,
839:20, 841:11,
841:12, 841:18,
842:19, 843:9
**Order** [3] - 839:22,
840:7, 841:7
**organization** [1] -
819:4
**organize** [1] - 816:23
**original** [1] - 862:13
**osteoarthritic** [2] -
859:2, 859:6
**osteoarthritis** [2] -
780:9, 784:15

**outlined** [1] - 803:17
**outside** [2] - 815:22,
818:1
**outweighs** [1] - 837:8
**overboard** [1] - 840:24
**overruled** [4] - 789:14,
795:2, 795:4, 798:22
**own** [1] - 857:10

## P

**p.m** [1] - 777:7
**page** [20] - 808:24,
809:3, 810:14, 810:17,
811:21, 811:25,
828:17, 832:17,
832:19, 834:9, 837:23,
838:2, 839:12, 839:17,
840:25, 841:1, 841:20,
860:20, 860:24
**pages** [1] - 791:3
**paid** [33] - 779:11,
779:12, 780:14,
780:21, 780:22,
780:23, 780:25, 781:3,
781:9, 781:10, 781:16,
781:20, 782:9, 782:16,
782:22, 783:1, 783:11,
784:19, 785:5, 786:8,
786:18, 787:1, 799:2,
800:20, 801:1, 801:3,
801:5, 802:23, 803:16,
803:24, 804:20,
805:10, 857:15
**pain** [5] - 825:2,
825:12, 835:11, 848:3,
855:13
**pains** [1] - 832:3
**panel** [4] - 834:11,
835:10, 838:16, 844:6
**Panel** [1] - 839:20
**paracervical** [3] -
839:24, 840:9, 840:14
**paragraph** [33] -
828:19, 828:23,
828:24, 829:1, 830:14,
830:15, 830:18, 831:8,
832:21, 832:24,
834:10, 834:11,
834:19, 837:13,
838:12, 838:15,
838:16, 838:22,
838:23, 839:12,
839:21, 840:3, 840:5,
840:15, 840:16, 841:2,
841:4, 841:8, 841:14
**paragraphs** [4] -
832:25, 838:24, 839:1,
841:20
**paraphrasing** [1] -

880

862:12
  **parcel** [1] - 824:15
  **part** [5] - 794:12,
831:25, 844:19,
855:13, 855:14
  **particular** [12] -
778:24, 822:5, 824:11,
836:3, 836:16, 843:3,
849:25, 853:9, 853:21,
857:13, 861:17
  **particularly** [1] - 849:3
  **parties** [5] - 826:20,
830:15, 844:16, 846:17
  **passed** [1] - 855:8
  **past** [1] - 862:17
  **patience** [1] - 787:12
  **patient** [17] - 783:18,
799:17, 799:24, 803:9,
814:18, 815:3, 815:8,
853:7, 854:13, 854:14,
854:15, 857:22,
858:19, 859:7, 859:20,
860:3, 863:6
  **patient's** [1] - 858:23
  **patients** [8] - 801:2,
803:11, 804:13,
824:19, 824:22,
824:25, 848:3, 861:9
  **pause** [3] - 787:11,
787:15, 813:8
  **pause)** [1] - 827:22
  **pay** [2] - 819:25, 859:2
  **paying** [1] - 844:19
  **payment** [2] - 819:20,
853:25
  **pays** [2] - 819:22,
819:25
  **peer** [16] - 788:18,
788:20, 805:16,
805:25, 806:10,
807:14, 808:21, 809:7,
810:6, 810:11, 810:19,
811:11, 812:9, 824:5,
825:4
  **peers** [4] - 806:13,
823:19, 824:7, 852:4
  **peeve** [1] - 798:3
  **people** [2] - 847:8,
857:23
  **per** [1] - 791:22
  **percent** [10] - 803:11,
803:20, 803:22,
803:23, 803:24,
804:13, 804:17,
804:19, 804:21
  **percentage** [1] -
804:12
  **percentages** [1] -
803:17
  **Perez** [2] - 833:19,

858:25
  **perform** [2] - 839:24,
840:9
  **performed** [6] -
829:17, 832:13,
834:14, 834:20, 836:4,
839:8
  **performing** [1] - 839:4
  **perhaps** [2] - 831:18,
852:11
  **peril** [1] - 823:12
  **period** [16] - 788:1,
803:2, 803:9, 803:12,
803:21, 804:9, 804:15,
806:21, 807:7, 807:10,
807:14, 836:21, 839:9,
840:6, 856:11, 859:17
  **permissible** [3] -
835:6, 835:7, 835:13
  **permission** [2] -
795:19, 857:1
  **permitted** [3] - 817:10,
828:15, 848:25
  **person** [4] - 809:20,
830:4, 846:24, 863:7
  **personal** [7] - 781:20,
782:23, 808:6, 814:14,
814:17, 814:21, 852:1
  **personally** [1] -
846:16
  **pet** [1] - 798:3
  **phone** [1] - 782:12
  **Phone** [1] - 791:21
  **phrase** [1] - 830:11
  **physical** [1] - 855:11
  **physician** [2] - 824:13,
833:18
  **physicians** [7] -
824:15, 824:18,
824:21, 825:1
  **place** [1] - 794:17
  **Plaintiff** [2] - 777:4,
777:12
  **plan** [1] - 842:4
  **pleading** [1] - 794:3
  **pleadings** [5] - 792:7,
792:19, 793:25,
794:25, 851:20
  **pleasure** [1] - 846:14
  **plexiglass** [4] - 814:1,
826:7, 827:8
  **podia** [1] - 827:9
  **podiums** [2] - 826:8,
827:9
  **point** [11] - 781:8,
817:23, 829:10, 830:8,
832:2, 832:9, 832:16,
836:5, 836:17, 839:15,
848:24
  **pointed** [2] - 836:17,

861:20
  **pointing** [1] - 847:25
  **portion** [2] - 841:21,
860:19
  **portions** [1] - 831:8
  **position** [3] - 828:6,
839:25, 848:18
  **possibly** [1] - 848:14
  **potentially** [1] -
860:13
  **practice** [13] - 824:16,
824:22, 828:21,
830:12, 830:20,
837:15, 842:22, 848:2,
858:9, 859:21, 860:1,
861:14, 863:15
  **practices** [1] - 834:3
  **practitioner** [1] -
824:8
  **practitioners** [1] -
788:14
  **precautions** [1] -
837:9
  **preceding** [1] - 840:4
  **prejudice** [1] - 837:7
  **prejudicial** [2] -
830:10, 837:8, 837:9
  **preliminary** [1] - 865:3
  **premarked** [1] -
843:10
  **prepare** [7] - 789:19,
790:5, 791:10, 791:17,
795:12, 796:9, 808:15
  **prepared** [4] - 805:25,
810:5, 822:17, 864:23
  **preparing** [1] - 792:2
  **prescribe** [1] - 852:2
  **presence** [2] - 843:13,
844:14
  **presented** [3] - 847:3,
854:10, 863:23
  **preserve** [1] - 792:15
  **pretrial** [3] - 792:6,
792:24, 849:10
  **prevented** [1] - 848:15
  **previously** [5] -
794:24, 827:20, 836:9,
836:10, 860:15
  **privileges** [1] - 834:2
  **probation** [1] - 840:6
  **probationary** [1] -
842:21
  **probe** [1] - 847:22
  **problem** [5] - 807:23,
808:7, 836:25, 855:11,
855:12
  **problems** [3] - 853:13,
853:22, 863:9
  **procedure** [14] -
815:6, 815:13, 818:16,

819:17, 819:19,
819:22, 820:1, 831:19,
832:13, 836:4, 848:10,
853:25, 858:4, 862:19
  **procedures** [4] -
833:21, 858:6, 859:5,
861:20
  **proceed** [1] - 827:3
  **proceeding** [2] -
851:20, 856:22
  **proceedings** [2] -
840:12, 866:6
  **process** [1] - 816:14
  **processed** [1] -
818:21
  **processing** [1] -
818:21
  **promises** [1] - 846:6
  **prompt** [1] - 778:4
  **proof** [2] - 838:17,
856:2
  **proper** [3] - 788:3,
833:13, 833:23
  **propose** [1] - 834:22
  **proposed** [7] - 827:15,
827:16, 827:19, 828:1,
837:4, 864:1, 865:13
  **protocols** [1] - 826:13
  **prove** [1] - 855:1,
855:19, 856:23
  **provide** [4] - 797:11,
853:1, 861:2, 861:3
  **provided** [10] - 794:7,
799:17, 811:19, 857:5,
857:11, 857:12,
857:17, 858:10,
858:14, 858:22
  **Providence** [1] -
856:12
  **provider** [5] - 799:16,
799:23, 814:22,
814:24, 815:14
  **providers** [21] -
788:21, 806:11, 809:5,
809:8, 809:14, 809:23,
810:2, 810:11, 810:19,
810:23, 811:5, 811:9,
812:2, 812:7, 812:13,
812:16, 812:21,
812:24, 814:7, 852:6,
852:10
  **provides** [2] - 799:23,
834:6
  **providing** [1] - 854:6
  **provision** [1] - 838:10
  **provisions** [1] -
838:18
  **publish** [10] - 789:16,
795:19, 797:10, 800:5,
802:7, 804:25, 806:9,

810:4, 845:13, 845:14
**published** [1] - 820:11
**publishing** [1] - 778:7
**pull** [6] - 790:17, 801:8, 806:24, 807:2, 811:14, 819:11
**pulled** [1] - 790:25
**punctual** [1] - 844:20
**purpose** [1] - 781:6
**purposes** [2] - 828:9, 853:25
**put** [5] - 828:12, 842:23, 849:14, 857:9, 860:20
**putting** [1] - 859:12

## Q

**qualified** [4] - 830:21, 837:16, 837:20, 838:5
**quantity** [15] - 800:14, 800:16, 800:25, 801:3, 802:19, 803:14, 804:16, 805:6, 806:13, 808:21, 809:5, 809:15, 810:12, 811:19, 812:25
**questioning** [1] - 817:3
**questions** [5] - 813:9, 813:21, 814:3, 816:11, 817:23
**quicker** [1] - 822:10
**QUINDOZA** [1] - 778:12
**Quindoza** [31] - 778:14, 779:10, 779:18, 781:15, 782:21, 787:4, 787:17, 788:9, 788:11, 789:17, 795:22, 796:24, 797:11, 799:18, 800:7, 802:12, 803:25, 804:22, 805:14, 805:21, 805:24, 806:10, 807:7, 811:11, 826:2, 846:22, 846:23, 848:13, 848:25, 867:3
**quite** [1] - 833:17

## R

**Racine** [1] - 835:25
**radiofrequency** [1] - 848:7
**radiologists** [1] - 848:8
**raise** [2] - 808:6, 833:17
**raised** [1] - 801:13
**raises** [1] - 847:20

**rank** [7] - 806:12, 808:22, 809:1, 810:12, 810:15, 811:18, 811:22
**ranked** [1] - 806:14
**rather** [1] - 827:23
**re** [1] - 816:5
**re-read** [1] - 816:5
**reached** [1] - 826:18
**read** [1] - 816:5
**reading** [2] - 836:25, 837:1
**ready** [2] - 843:25, 865:5
**really** [6] - 833:4, 835:24, 844:17, 846:18, 850:24, 865:8
**reason** [3] - 792:1, 835:12, 853:24
**reasonable** [7] - 855:17, 856:24, 858:13, 859:23, 861:1, 861:17, 863:18
**reasons** [6] - 834:2, 850:20, 852:14, 858:6, 858:8, 862:16
**receive** [2] - 854:11, 855:4
**received** [7] - 818:24, 838:10, 850:25, 855:6, 856:7, 862:20
**RECEIVED** [1] - 867:6
**receiving** [2] - 858:20, 862:25
**recertify** [1] - 838:11
**recess** [2] - 808:9, 827:4
**reciprocal** [2] - 836:13
**recognizes** [1] - 794:19
**recollection** [2] - 853:2, 858:7
**recommendation** [2] - 840:20, 841:17
**recommendations** [1] - 841:16
**recommended** [1] - 839:19
**record** [14] - 784:7, 793:5, 794:11, 802:8, 804:1, 805:1, 817:19, 841:19, 842:16, 844:5, 848:22, 848:24, 854:3, 860:4
**records** [9] - 781:2, 781:7, 793:1, 793:7, 793:14, 794:22, 857:10, 858:23, 859:7
**redact** [11] - 828:22, 832:16, 833:25, 834:4, 841:13, 841:20,

860:20, 860:24, 860:25, 865:9, 865:12
**redacted** [21] - 827:15, 830:13, 833:4, 833:12, 833:24, 837:18, 837:22, 838:4, 838:6, 838:7, 838:12, 838:21, 838:24, 840:16, 840:19, 840:25, 841:15, 841:16, 841:18, 841:21
**redaction** [3] - 832:24, 842:6, 843:18
**redactions** [12] - 826:21, 827:25, 828:4, 837:4, 837:5, 837:25, 841:17, 842:1, 844:25, 845:3, 845:4, 845:5
**redirect** [5] - 817:8, 818:2, 825:25, 853:3, 854:13
**refer** [1] - 820:20
**referred** [1] - 855:13
**referring** [3] - 785:10, 798:11, 798:13
**refilter** [1] - 787:3
**reflect** [12] - 785:1, 785:3, 785:5, 786:7, 787:1, 801:22, 802:2, 802:8, 804:12, 805:24, 812:11, 858:23
**reflected** [5] - 785:10, 786:18, 801:6, 802:20, 803:10
**reflecting** [2] - 788:20, 859:18
**reflects** [1] - 859:21
**regard** [5] - 827:13, 830:17, 831:8, 833:25, 839:1
**regarding** [6] - 793:22, 794:25, 799:5, 862:1, 862:5, 862:9
**regards** [1] - 793:11
**region** [2] - 809:10, 810:7
**regular** [5] - 788:12, 788:17, 789:7, 794:10, 846:7
**regularly** [4] - 788:14, 794:1, 794:9, 794:15
**reiterate** [1] - 861:13
**rejecting** [1] - 862:22
**relate** [1] - 857:2
**related** [3] - 789:21, 804:23, 834:2
**relates** [1] - 796:6, 829:7
**relevance** [2] - 830:8, 837:8

**relevant** [11] - 778:24, 829:24, 831:6, 831:9, 831:22, 832:14, 833:14, 837:20, 840:1, 840:12, 845:6
**reliability** [2] - 793:1, 793:7
**reliable** [2] - 792:4, 798:19
**relish** [1] - 846:13
**relying** [2] - 793:24, 862:16
**remaining** [1] - 831:8
**Remember** [1] - 864:8
**remember** [10] - 779:2, 794:17, 795:5, 795:7, 850:25, 855:5, 856:10, 856:12, 856:13, 856:14
**reminds** [1] - 860:17
**rendered** [1] - 825:16
**reorient** [1] - 808:14
**repeat** [2] - 803:8, 841:11
**rephrase** [1] - 817:7
**replaced** [1] - 855:13
**report** [1] - 865:10
**reported** [1] - 857:19
**Reporter** [3] - 777:22, 777:22, 866:11
**REPORTER** [1] - 866:1
**representation** [3] - 839:23, 840:8, 857:17
**representations** [2] - 849:10, 849:13
**represented** [3] - 803:2, 803:21, 830:15
**represents** [3] - 799:16, 802:17, 803:16
**requests** [1] - 839:18
**require** [1] - 838:11
**required** [7] - 829:19, 830:22, 834:24, 839:19, 862:11, 862:18, 862:22
**requirement** [2] - 839:22, 840:7
**requires** [1] - 850:12
**research** [2] - 794:13
**respect** [8] - 815:3, 821:22, 821:23, 822:5, 825:19, 825:20, 832:25, 855:18
**respond** [1] - 851:2
**response** [1] - 844:1
**responsible** [1] - 838:13
**rest** [12] - 810:1, 811:8, 832:10, 832:16,

838:6, 838:19, 838:20, 840:15, 841:25, 842:6, 845:24, 861:25
**rested** [1] - 845:21
**restores** [1] - 842:21
**restricted** [1] - 847:1
**restroom** [1] - 807:20
**rests** [1] - 845:19
**RESTS**......................
..................**845** [1] -
867:11
**result** [2] - 836:4, 839:18
**results** [1] - 823:6
**reversible** [1] - 817:15
**review** [7] - 782:3, 789:5, 789:21, 790:6, 790:21, 795:22, 812:16
**reviewed** [6] - 788:23, 789:4, 790:1, 790:19, 790:23, 802:21
**reviewing** [1] - 856:8
**rid** [1] - 865:16
**rights** [3] - 850:9, 850:10
**risk** [2] - 817:5, 829:3
**risks** [1] - 816:10
**RMR** [1] - 777:22
**role** [2] - 794:14, 851:17
**room** [1] - 855:15
**Room** [2] - 777:23, 866:12
**row** [6] - 802:16, 802:25, 803:10, 803:16, 803:17, 803:18
**Rubin** [1] - 777:19
**rule** [1] - 826:22
**Rule** [1] - 850:19
**ruled** [2] - 847:10, 851:8
**ruling** [4] - 847:12, 849:16, 850:17, 865:15
**rulings** [1] - 825:23
**run** [1] - 817:24

---

# S

**S.B** [6] - 786:12, 786:21, 862:3, 862:4, 863:4, 863:8
**S.B.'s** [1] - 863:6
**sacral** [1] - 820:6
**SafeGuard** [13] - 788:12, 788:13, 788:17, 789:7, 794:2, 794:4, 794:8, 794:9, 794:21, 818:24, 819:3, 846:24, 848:17
**safety** [1] - 826:13

**sanction** [2] - 833:5, 836:13
**sanctioned** [6] - 829:22, 833:5, 833:8, 836:9, 836:12, 837:1
**sanitize** [1] - 830:7
**saw** [2] - 824:19, 824:22
**scan** [1] - 820:10
**Schaening** [2] - 833:19, 858:25
**Schaening-Perez** [2] - 833:19, 858:25
**schedule** [3] - 820:1, 846:2, 865:2
**school** [1] - 846:19
**scope** [11] - 815:22, 816:10, 816:19, 816:25, 817:6, 818:1, 820:3, 822:3, 839:9, 847:11, 849:19
**scroll** [23] - 779:9, 779:14, 779:16, 780:2, 780:13, 782:1, 782:7, 783:13, 783:23, 784:9, 784:16, 785:1, 786:5, 786:15, 786:25, 791:2, 819:13, 820:15, 821:10, 821:14, 821:18, 821:23
**second** [5] - 803:10, 803:17, 821:17, 842:11, 851:2
**secure** [1] - 846:2
**see** [17] - 779:18, 780:3, 783:23, 785:16, 791:3, 801:9, 819:17, 820:17, 821:4, 824:5, 827:15, 827:21, 836:22, 846:8, 865:2, 865:13
**seek** [1] - 850:6
**sense** [2] - 802:15, 865:15
**sent** [1] - 818:13
**sentence** [20] - 828:18, 830:11, 831:5, 832:8, 832:12, 834:10, 834:14, 834:16, 835:4, 835:6, 835:7, 835:9, 837:20, 837:22, 838:9, 838:19, 838:21, 840:10, 840:13, 840:18
**sentences** [2] - 834:10, 839:17
**separate** [1] - 842:13
**September** [2] - 777:6, 866:7
**series** [1] - 859:22
**service** [18] - 783:14,

784:4, 784:23, 785:10, 786:12, 786:22, 787:21, 787:22, 797:12, 799:24, 800:2, 802:13, 803:1, 804:8, 815:4, 858:2, 859:9, 861:2
**Services** [8] - 788:12, 788:14, 788:18, 789:7, 794:8, 794:9, 794:21, 846:25
**services** [23] - 782:5, 783:6, 794:15, 797:20, 799:22, 802:13, 802:16, 803:11, 803:20, 803:22, 803:23, 803:24, 804:13, 804:14, 806:13, 809:24, 810:24, 811:6, 811:19, 812:8, 857:4, 858:13
**Services'** [2] - 794:2, 794:4
**SESSION** [1] - 778:1
**set** [1] - 816:8
**sets** [1] - 847:13
**several** [1] - 820:18
**sheet** [4] - 814:10, 814:14, 818:13, 857:25
**short** [1] - 827:4
**shots** [2] - 863:12
**shoulder** [1] - 821:25
**shoulders** [2] - 861:20
**show** [16] - 780:20, 782:15, 783:8, 790:8, 790:24, 791:8, 796:13, 796:14, 796:15, 796:18, 798:10, 798:12, 804:6, 805:19, 829:24
**showed** [1] - 799:25
**showing** [1] - 789:3
**shows** [7] - 781:21, 781:22, 782:25, 803:15, 859:19, 862:25
**side** [3] - 827:7, 828:4, 831:21
**side's** [1] - 844:10
**sign** [1] - 857:25
**sign-in** [1] - 857:25
**similar** [2] - 814:25, 825:20
**SIMON** [14] - 777:13, 827:18, 831:11, 831:14, 834:18, 834:22, 835:3, 839:9, 839:14, 839:17, 841:12, 841:19, 844:23, 852:8
**Simon** [2] - 831:10,

844:21
**simply** [1] - 836:25
**single** [3] - 840:13, 851:11, 861:12
**site** [1] - 831:19
**six** [6] - 803:1, 803:9, 803:12, 803:21, 804:9, 804:15
**six-month** [6] - 803:1, 803:9, 803:12, 803:21, 804:9, 804:15
**Sixth** [1] - 850:8
**skill** [1] - 833:13
**slater** [1] - 805:13
**Slater** [48] - 779:9, 779:14, 779:16, 780:1, 780:13, 782:1, 782:7, 783:13, 784:9, 784:16, 785:2, 785:8, 785:24, 786:5, 786:15, 786:20, 786:25, 787:3, 787:7, 788:2, 790:24, 791:2, 791:7, 796:14, 797:10, 799:4, 800:5, 801:8, 802:6, 802:7, 802:11, 804:6, 804:25, 805:19, 806:9, 807:2, 807:18, 808:24, 809:3, 810:4, 810:14, 810:17, 811:14, 811:21, 811:25, 820:22, 821:10, 821:14
**slow** [1] - 861:11
**slower** [1] - 791:2
**solely** [1] - 830:4
**sometime** [1] - 864:24
**sometimes** [2] - 815:11, 864:17
**somewhat** [1] - 837:8
**sonogram** [1] - 860:15
**soon** [1] - 844:18
**sorry** [18] - 781:19, 785:14, 785:15, 791:4, 794:14, 795:25, 801:19, 803:8, 807:19, 814:1, 821:7, 824:3, 833:3, 835:9, 848:17, 851:4, 851:5, 852:24
**sort** [1] - 798:2
**sought** [1] - 849:19
**source** [2] - 807:6, 807:7
**sow** [1] - 817:15
**specialized** [1] - 848:2
**specific** [1] - 820:19
**specifically** [4] - 813:22, 814:4, 856:11, 858:18
**specification** [1] - 820:11

**specifies** [1] - 820:10

**specify** [1] - 821:24

**spent** [1] - 832:6

**spinal** [3] - 820:6, 825:5, 857:7

**spondylopathies** [1] - 821:19

**spreadsheet** [2] - 778:23, 787:17

**spreadsheets** [1] - 819:6

**staff** [2] - 815:2, 846:14

**stage** [2] - 856:22, 863:18

**stand** [1] - 833:7

**standard** [4] - 834:12, 834:24, 835:12, 856:21

**standards** [1] - 847:13

**standing** [1] - 826:11

**stands** [2] - 798:7, 820:2

**start** [12] - 799:22, 802:11, 813:19, 813:21, 814:3, 816:12, 817:1, 823:8, 840:6, 846:1, 846:3, 846:4

**starting** [6] - 780:1, 821:15, 828:24, 831:12, 834:20, 841:2

**starts** [2] - 814:7, 814:14

**state** [6] - 829:13, 838:17, 839:21, 840:4, 840:6, 840:13

**statement** [6] - 807:6, 807:8, 828:18, 837:1, 837:16, 864:8

**states** [3] - 825:17, 828:19, 839:20

**STATES** [2] - 777:1, 777:10

**States** [2] - 777:3, 777:23

**stating** [1] - 828:7

**status** [1] - 842:21

**stay** [4] - 798:10, 834:17, 840:10, 840:15

**staying** [1] - 785:24

**stenographic** [1] - 866:5

**step** [2] - 820:24, 826:2

**stephen** [1] - 867:3

**STEPHEN** [1] - 778:12

**still** [7] - 852:9, 853:4, 854:14, 854:15, 860:25, 863:13, 865:9

**stipulation** [6] - 826:18, 827:14, 828:5,

836:25, 842:8, 842:12

**stop** [14] - 779:9, 779:17, 780:2, 784:10, 784:17, 786:6, 786:16, 791:5, 832:15, 838:19, 839:4, 848:12, 851:1, 854:2

**stored** [2] - 794:16

**story** [2] - 836:2, 851:3

**strayed** [1] - 849:6

**stretch** [1] - 807:24

**strictly** [1] - 816:7

**strikes** [1] - 833:23

**striking** [1] - 838:3

**stripping** [1] - 830:7

**struck** [1] - 838:1

**subject** [6] - 792:24, 831:1, 842:1, 842:6, 844:25, 845:3

**submission** [1] - 784:12

**submit** [4] - 852:7, 852:8, 858:12, 861:1

**submitted** [41] - 779:20, 779:23, 780:3, 782:4, 783:6, 784:5, 784:22, 785:11, 785:16, 785:25, 786:11, 786:22, 787:4, 788:1, 792:6, 792:7, 792:17, 794:3, 814:11, 815:18, 816:18, 818:14, 821:4, 854:21, 854:22, 854:24, 854:25, 855:20, 855:21, 856:3, 856:22, 857:11, 857:22, 859:5, 859:11, 860:6, 861:15, 862:6, 863:5, 863:7, 863:16

**submitting** [1] - 814:8

**subspecialty** [1] - 830:21

**substantial** [1] - 824:16

**substantive** [1] - 852:13, 860:14

**suffice** [1] - 828:5

**sufficient** [2] - 856:23, 858:15

**Suite** [2] - 777:17, 777:19

**summaries** [17] - 789:19, 789:25, 792:2, 792:9, 796:9, 797:1, 800:7, 805:14, 805:15, 805:25, 817:15, 822:17, 823:4, 824:8, 849:15, 849:16

**summarize** [1] - 847:3

**summary** [36] - 781:3, 790:10, 790:16, 791:10, 792:9, 792:22, 792:24, 793:11, 793:12, 793:18, 793:19, 793:22, 794:25, 795:12, 795:23, 796:5, 797:11, 798:15, 798:16, 799:5, 799:12, 799:14, 801:6, 801:22, 802:2, 802:13, 804:22, 809:19, 810:5, 812:2, 822:13, 847:6, 847:13, 847:16, 847:17, 849:1

**supervised** [1] - 836:20

**supervision** [1] - 836:18

**support** [1] - 858:21

**supposed** [1] - 829:24

**surgery** [3] - 825:3, 834:5, 848:6

**suspension** [2] - 836:18, 836:21

**sustained** [4] - 818:11, 820:3, 822:3, 822:12, 823:25, 825:9, 825:14, 838:17

**sustaining** [1] - 817:2

**swayed** [1] - 798:18

**switch** [1] - 778:6

**sworn** [1] - 860:18

**system** [1] - 794:20

**T**

**talks** [1] - 833:12

**tall** [1] - 831:20

**TANYA** [1] - 777:9

**targets** [2] - 832:9, 832:15

**technical** [2] - 833:13, 845:22

**technicalities** [1] - 844:13

**technique** [2] - 831:13, 832:8

**technology** [2] - 834:23, 837:14

**telephone** [1] - 851:15

**ten** [1] - 808:3

**term** [2] - 798:3, 814:11

**terminates** [1] - 842:20

**terms** [7] - 799:17, 809:2, 810:15, 812:24, 826:10, 830:20, 854:17

**test** [1] - 830:22

**testified** [8] - 794:11, 799:10, 850:18, 853:4, 854:13, 855:24, 858:5, 861:19

**testify** [8] - 780:19, 794:5, 848:20, 848:25, 849:3, 849:14, 849:15, 849:17

**testifying** [7] - 780:19, 781:2, 798:3, 817:14, 822:12, 822:16

**testimony** [32] - 781:6, 792:9, 798:4, 816:6, 816:25, 844:24, 847:13, 849:5, 849:9, 849:24, 850:6, 850:7, 850:11, 851:9, 855:2, 855:9, 855:10, 855:24, 857:21, 857:23, 858:12, 858:14, 858:25, 859:15, 859:24, 860:18, 862:5, 862:12, 863:8, 863:10, 863:11, 863:13

**thanking** [1] - 813:19

**THE** [188] - 777:1, 777:1, 777:9, 778:2, 778:8, 778:10, 780:17, 781:1, 781:11, 781:19, 781:22, 781:23, 782:11, 782:14, 787:14, 788:7, 789:1, 789:12, 789:14, 790:13, 790:17, 791:14, 791:20, 791:22, 791:25, 792:5, 792:12, 792:18, 792:23, 793:4, 793:10, 795:1, 795:4, 795:6, 795:7, 795:8, 795:9, 795:17, 795:20, 796:16, 796:20, 796:22, 797:6, 797:8, 798:1, 798:9, 798:22, 799:18, 799:20, 799:21, 801:12, 801:14, 801:15, 801:19, 801:23, 801:24, 801:25, 802:20, 802:22, 805:22, 806:5, 806:7, 806:16, 806:23, 807:1, 807:4, 807:16, 807:20, 807:21, 807:22, 807:23, 808:8, 808:11, 811:15, 813:7, 813:11, 813:23, 814:1, 815:20, 816:4, 816:15, 817:4, 818:3, 818:11, 820:3, 820:20, 820:22,

820:24, 822:1, 822:3,
822:9, 822:12, 822:19,
822:22, 822:24, 823:2,
823:15, 823:20,
823:25, 825:9, 825:14,
825:24, 826:2, 826:4,
826:5, 826:17, 826:23,
827:1, 827:7, 827:12,
827:21, 827:23,
827:25, 828:10, 829:5,
829:8, 829:14, 831:5,
831:12, 831:16,
831:24, 832:2, 832:12,
832:21, 832:24, 833:2,
833:10, 834:9, 834:20,
835:1, 835:4, 835:9,
835:19, 835:25, 836:5,
836:22, 837:12, 838:4,
838:9, 839:7, 839:11,
839:16, 840:2, 841:15,
841:23, 842:7, 842:15,
842:23, 843:2, 843:5,
843:15, 843:17,
843:20, 843:25, 844:2,
844:6, 844:8, 845:2,
845:10, 845:16,
845:21, 846:10,
846:16, 846:23,
848:12, 848:23,
850:14, 850:22, 851:1,
851:5, 852:7, 852:20,
853:15, 853:18,
853:20, 854:2, 854:20,
856:18, 860:17,
860:23, 861:11,
863:22, 864:8, 864:11,
864:13, 865:11,
865:17, 865:20
  **theory** [5] - 852:23,
853:6, 854:11, 854:15,
854:16
  **therefore** [2] - 816:9,
826:8
  **they've** [1] - 838:14
  **thinking** [2] - 831:18,
843:11
  **third** [2] - 809:2,
821:17
  **thousands** [1] -
832:13
  **thrash** [1] - 827:4
  **three** [2] - 859:16,
859:22
  **throughout** [1] -
788:15
  **timeouts** [1] - 844:11
  **timing** [1] - 842:9
  **today** [4] - 794:20,
807:25, 846:5, 860:12
  **together** [2] - 837:5,

837:6
  **tomorrow** [2] - 846:6,
864:2
  **took** [1] - 832:3
  **top** [7] - 784:3, 788:5,
802:11, 824:4, 839:17,
841:22
  **total** [8] - 797:22,
798:24, 799:2, 801:4,
802:18, 802:19,
803:14, 809:7
  **totally** [1] - 830:7
  **traffic** [1] - 798:8
  **trained** [1] - 839:19
  **training** [2] - 839:22,
840:8
  **transcript** [3] - 860:20,
866:4, 866:5
  **TRANSCRIPT** [1] -
777:8
  **transfer** [1] - 847:19
  **transferred** [2] -
818:20, 836:19
  **treated** [3] - 797:16,
825:2, 825:12
  **treating** [1] - 853:4
  **treatment** [3] - 848:11,
852:25, 853:6
  **treatments** [1] -
825:16
  **treats** [2] - 848:2,
848:3
  **trial** [5] - 792:14,
792:16, 792:17, 847:2,
847:8
  **TRIAL** [2] - 777:4,
777:8
  **tricky** [1] - 813:5
  **tried** [1] - 836:23
  **triggers** [3] - 819:20,
819:21, 853:24
  **true** [9] - 789:6, 793:3,
794:21, 818:20,
835:24, 849:12, 853:8,
866:4, 866:5
  **try** [2] - 864:20, 864:22
  **trying** [2] - 833:11,
840:23
  **Tuesday** [1] - 864:16
  **two** [17] - 802:17,
803:5, 808:23, 809:16,
809:17, 824:9, 825:4,
825:18, 826:7, 831:17,
834:10, 848:16, 856:6,
856:17, 857:16,
859:16, 863:1
  **Two** [1] - 802:25
  **type** [4] - 819:3,
824:13, 850:25, 862:19
  **types** [3] - 814:25,

848:11, 848:20

**U**

  **U.S** [1] - 777:13
  **ultimate** [1] - 839:20
  **ultrasound** [9] -
783:15, 785:11,
785:16, 802:2, 832:5,
860:10, 860:11,
860:13, 860:15
  **unaware** [1] - 792:16
  **under** [6] - 786:22,
811:19, 847:15,
850:19, 860:9, 861:7
  **underlying** [12] -
789:21, 793:1, 793:14,
793:19, 793:20,
795:23, 799:14,
806:25, 822:15, 823:5,
859:7
  **underscoring** [1] -
863:3
  **understood** [2] -
831:14, 835:3
  **undue** [1] - 837:7
  **unduly** [2] - 830:9,
846:25
  **unfairly** [1] - 837:19
  **unfortunately** [2] -
848:4, 855:9
  **UNITED** [2] - 777:1,
777:10
  **United** [2] - 777:3,
777:23
  **unless** [2] - 831:2,
832:14
  **unnecessary** [1] -
837:19
  **unreliable** [1] - 856:16
  **unspecified** [3] -
821:20, 821:21
  **up** [26] - 779:15,
790:13, 790:17,
790:25, 791:4, 792:25,
798:12, 799:14, 801:8,
807:2, 811:14, 819:11,
820:2, 822:10, 826:15,
827:13, 827:16, 831:3,
833:7, 834:2, 834:7,
836:1, 837:25, 843:3,
844:17, 858:11
  **uses** [4] - 831:12,
832:8, 838:13, 840:21

**V**

  **valid** [1] - 835:12
  **verdict** [1] - 855:18

  **verifies** [1] - 847:5
  **version** [1] - 827:15
  **versus** [3] - 799:13,
799:14, 852:18
  **view** [3] - 826:9, 828:4
  **viewing** [2] - 856:20,
863:19
  **violated** [1] - 838:18,
847:1
  **violated...by** [1] -
828:20
  **violating** [1] - 823:9
  **Virginia** [6] - 806:12,
809:11, 810:8, 811:18,
824:12
  **voluntarily** [2] - 834:2,
839:3
  **vs** [1] - 777:5

**W**

  **wait** [2] - 838:4,
853:15
  **waive** [1] - 792:15
  **waived** [1] - 792:13
  **wants** [2] - 815:24,
865:18
  **warning** [3] - 798:7
  **Washington** [5] -
777:6, 777:14, 777:20,
777:24, 866:13
  **waste** [2] - 794:14,
794:15
  **weather** [1] - 846:5
  **weekend** [7] - 826:3,
846:2, 846:5, 864:22,
864:25, 865:12, 865:21
  **whichever** [1] - 829:10
  **whole** [5] - 808:4,
836:18, 838:12,
838:15, 840:22
  **wife's** [1] - 834:3
  **willing** [2] - 829:15,
833:25
  **WILLIS** [74] - 777:12,
778:6, 778:9, 778:13,
780:24, 781:14,
781:24, 782:18,
782:20, 787:12,
787:16, 788:8, 788:24,
789:2, 789:10, 789:15,
790:15, 790:18, 791:1,
791:12, 791:16, 793:8,
793:11, 795:11,
795:15, 795:19,
795:21, 796:12,
796:17, 796:21,
796:23, 797:4, 797:9,
798:23, 800:3, 801:21,
802:1, 805:23, 806:3,

806:8, 806:24, 807:2,
807:5, 807:17, 808:12,
811:16, 813:6, 813:9,
815:19, 815:22,
817:19, 820:2, 822:2,
822:11, 825:8, 825:13,
826:1, 826:19, 827:11,
831:10, 837:24, 838:8,
842:4, 843:8, 843:16,
843:24, 845:9, 845:14,
845:19, 851:6, 856:20,
860:22, 860:25, 861:12
   **Willis** [14] - 778:5,
781:11, 782:11,
793:10, 795:10,
808:11, 813:11,
816:19, 822:1, 822:10,
825:25, 831:9, 851:5,
856:19
   **Willis..........778** [1] -
867:3
   **Winston** [1] - 777:19
   **wish** [1] - 845:14
   **witness** [70] - 780:18,
788:25, 790:8, 790:24,
791:8, 791:9, 791:23,
793:15, 793:16, 794:5,
794:11, 796:13,
796:14, 796:15,
796:18, 796:19, 798:3,
798:12, 805:19,
806:20, 813:9, 815:23,
816:12, 816:20,
816:21, 816:22, 817:1,
817:10, 817:12,
817:14, 817:16,
817:20, 817:21, 818:5,
818:8, 822:12, 822:13,
822:14, 846:21, 847:3,
847:14, 847:16,
847:18, 849:1, 849:3,
849:5, 849:8, 849:11,
849:14, 849:17,
849:20, 849:23,
849:24, 850:2, 850:4,
850:7, 850:11, 851:11,
851:15, 851:16,
851:24, 851:25, 852:4,
852:13, 852:16,
856:10, 856:16, 867:2
   **WITNESS** [10] -
781:22, 795:6, 795:8,
799:20, 802:22,
807:20, 807:22, 808:8,
820:22, 826:4
   **witness's** [4] - 781:6,
816:6, 849:4, 851:9
   **witnesses** [9] - 826:9,
831:17, 833:15,
833:19, 844:22, 847:2,

847:7, 852:18, 857:23
   **woman** [1] - 854:10
   **wonder** [1] - 826:12
   **word** [2] - 827:9,
840:21
   **words** [5] - 781:9,
781:19, 824:5, 829:15,
838:13
   **worth** [1] - 845:25
   **Wow** [1] - 788:7
   **wrap** [2] - 843:3,
844:17
   **Wright** [1] - 862:10

# Y

   **Y.A** [3] - 784:1, 784:3,
859:14
   **Y.A.'s** [1] - 859:18
   **years** [4] - 817:22,
846:17, 848:17, 848:18
   **yellow** [4] - 798:5,
798:7, 798:9, 798:18
   **York** [1] - 777:14
   **Yvonne** [3] - 850:24,
855:2, 859:4