```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


   UNITED STATES OF AMERICA,      .
                                  .
           Plaintiff,             .   CR No. 19-0255 (TSC)
                                  .
      v.                          .
                                  .   Washington, D.C.
   FREDERICK GOODING,             .   Friday, September 16, 2022
                                  .   2:15 p.m.
           Defendant.             .
   . . . . . . . . . . . . . . . ..


                      TRANSCRIPT OF JURY TRIAL
              BEFORE THE HONORABLE TANYA S. CHUTKAN
                   UNITED STATES DISTRICT JUDGE

     APPEARANCES:

   For the Government:         JILLIAN D. WILLIS, ESQ.
                               JIL SIMON, ESQ.
                               U.S. Department of Justice
                               1400 New York Avenue NW
                               Washington, DC 20005
                               (202) 353-0822

   For Defendant:              MICHAEL J. KHOURI, ESQ.
                               Khouri Law Firm, APC
                               2222 Martin
                               Suite 215
                               Irvine, CA 92612
                               (949) 336-2433

                               FREDERICK D. COOKE, JR., ESQ.
                               Rubin, Winston, Diercks,
                               Harris & Cooke, LLP
                               1250 Connecticut Avenue NW
                               Suite 700
                               Washington, DC 20036
                               (202) 861-0870

   Court Reporter:             BRYAN A. WAYNE, RPR, CRR
                               U.S. Courthouse, Room 4704-A
                               333 Constitution Avenue NW
                               Washington, DC 20001
                               (202) 354-3186
```

```
 1                      P R O C E E D I N G S
 2          THE COURT:  All right.  Good afternoon.
 3          THE DEPUTY CLERK:  Your Honor, we have criminal
 4   action 19-255, United States of America versus Frederick
 5   Gooding.  We have Ms. Jil Simon and Ms. Jillian Willis
 6   representing the government; and we have Mr. Frederick Cooke,
 7   Jr., representing Dr. Gooding, and all parties are present.
 8          THE COURT:  All right.  Can I see the note,
 9   Mr. Bradley?  Have you all seen it?
10          MS. WILLIS:  Yes, Your Honor.
11       (Court reviewing jury note.)
12          THE COURT:  All right.  The note was received at one
13   o'clock.  It says, "Good afternoon.  The jury has deliberated
14   thoroughly and has been unable to reach a unanimous verdict
15   on any count.  We have collectively reviewed all of the
16   evidence including comprehensive analysis of Exhibit 7 and
17   Data Visualization 8.  There are multiple jurors on both sides
18   of each count.  We do not believe that further deliberations
19   would break the deadlock on any count." Signed by the foreperson.
20       So let me just place a couple of things on the record,
21   which I probably don't have to, but the jury was excused to
22   deliberate on Monday afternoon.  I think they deliberated
23   for 15 minutes before being asked to leave early because of
24   impending bad weather.
25       They have been deliberating continuously from Tuesday,
```

1   Wednesday, Thursday, and today to one o'clock.  They have
2   sent notes usually relating to logistics, like asking for a
3   white board; some juror had neck pain and wanted a heating
4   pad.  We had one note from one juror who wanted something to
5   do with the instructions, wanted to talk with me about the
6   instructions.  I explained that the instructions were the law,
7   that they had to apply to the facts as they found it.
8       This is pretty clear, perhaps based on the presence of one
9   or more lawyers on the jury, the sentence that says, "We do
10  not believe that further deliberation would break the deadlock
11  on any count."  It looks like almost different handwriting
12  from -- looks like -- you know.
13      So what are you all asking for?  I'll hear from you first,
14  Ms. Willis.
15          MS. WILLIS:  Normally, the government would ask for
16  an anti-deadlock instruction, but we did speak with Mr. Cooke
17  before this.  It's our understanding -- and I don't want to
18  speak for him -- but our understanding that the defense thinks
19  that such an instruction would be coercive given the timing.
20  And I guess, also, I would add what we know about one juror
21  going out of town tomorrow.  I still don't think it would be
22  inappropriate, but I would defer to the Court about that.
23          THE COURT:  And Mr. Cooke.
24          MR. COOKE:  Yes, Your Honor.  I believe that the
25  anti-deadlock instruction would be coercive in this context

1    because it is Friday afternoon; the jurors have been going
2    at this for three whole days.  I believe they have been fairly
3    diligent.  I believe that the interest of the jurors in
4    getting home and being done with this and my client's right
5    to an impartial jury verdict conflict, and especially with a
6    juror having to --
7             THE COURT:  Travel.
8             MR. COOKE:  -- already told us she's going to go
9    to Las Vegas and they can't come back to deliberate until
10   Tuesday at the earliest, I just think it's coercive in that
11   context.
12            THE COURT:  I tell you, on a different record, I would
13   give the anti-deadlock instruction.  But I have to tell you
14   I think, based on the language of this note, that even if --
15   the only alternative I could see is, even if I gave them the
16   anti-deadlock instruction, I am almost certain that at 4:10
17   or four o'clock we'd get a note -- these jurors have been on
18   juries before, as I said, at least one or more are lawyers --
19   that they are deadlocked.
20       And given the language that there are multiple jurors on
21   both sides of each count, I think you're fair -- that they're
22   all going to be railroaded into convicting on every single
23   count or any count is not likely to happen, but I think you
24   make a valid point given how long -- the case was only a week.
25   The presentation of the evidence was complete on Friday.  We

1   started on Tuesday. So they've been deliberating almost as
2   long as the presentation of the evidence in this case, and
3   they're pretty clear.
4       So I'm going to declare a mistrial. I do think that --
5   it's not so much that I -- I think any further -- given the
6   language of the note, any further anti-deadlock instruction
7   may be coercive, but I also think it would be futile. So
8   let's bring them in.
9           MS. WILLIS: Your Honor?
10          THE COURT: Yes.
11          MS. WILLIS: Under Local Rule 24.2, I believe that
12  we would have to ask leave of court to maybe talk to the
13  jurors --
14          THE COURT: Yes.
15          MS. WILLIS: -- after they are discharged?
16  So the government is making that request.
17          THE COURT: So my rule is, usually I tell the jurors
18  that some of the attorneys would like to speak with them and
19  they are free to speak or not to speak, so that the ones who
20  want to speak should remain in the room where they've been
21  deliberating. And we'll come -- and I come in -- and I prefer
22  both sides. If one side doesn't want to speak, then they
23  don't have to, but they're available to both sides. And I
24  come as well. Is that agreeable?
25          MS. WILLIS: Yes, Your Honor. Thank you.

1           THE COURT:  Mr. Cooke?
2           MR. COOKE:  Yes, Your Honor.
3           THE COURT:  And would you like to speak with them also?
4           MR. COOKE:  If the government's going to speak with
5    them, yes, Your Honor.
6           THE COURT:  Now, I caution you not to argue your case
7    or -- it's very important to me that jurors not feel like what
8    they were doing was futile or something.
9       So you can -- they may ask you why you did certain things
10   or didn't do certain things.  I'm going to ask you to use your
11   discretion in terms of that.  But usually what I think is
12   useful -- and I always talked to jurors when I was a trial
13   lawyer, always.  Even when I lost, I wanted to hear.  I think
14   one of the things that is useful to hear is what you could
15   have done differently.
16      All right.  So let's bring them in.
17      (Jury in at 2:21 p.m.)
18          THE COURT:  Good afternoon, members of the jury.
19      All right. Haven't seen you all in a while.  Been a
20   long time.  All right.
21      You've all been working very hard.  I can tell that from
22   the notes you have been sending me.  And I have received your
23   note sent at one o'clock.
24      It says, "Good afternoon.  The jury has deliberated
25   thoroughly and has been unable to reach a unanimous verdict

1  on any count.  We have collectively reviewed all of the
2  evidence including comprehensive analysis of Exhibit 7 and
3  Data Visualization 8.  There are multiple jurors on both sides
4  of each count.  We do not believe that further deliberations
5  would break the deadlock on any count."
6       So let me just ask you, since the time you sent this note
7  and now, have you reached a verdict?
8       Everyone is shaking their heads.
9       All right.  I have discussed this with counsel.  I believe
10 you have been deliberating, briefly on Monday afternoon, then
11 Tuesday, Wednesday, and Thursday and today, which is about as
12 long as the evidence in this case took.  And so I believe that
13 you have labored valiantly to resolve this case and you have
14 not been able to come to a verdict.  So I am going to declare
15 a mistrial in this case.
16      Thank you very much for your service.  I really appreciate
17 it. It was a lot of information to process, and I appreciate
18 your hard work.
19      Now, those of you who wish to leave are absolutely free
20 to leave and do so with the thanks of the Court.  As I told
21 you, I was on a jury myself.  I found it to be an extremely
22 rewarding experience, and I hope that despite your inability
23 to reach a verdict, it has been a rewarding experience getting
24 to know each other and listening to each other.  And as I
25 said, our democracy cannot function without you all.  So I

1	thank you, and I know the parties extend their thanks as well.
2	    Those of you who wish to talk to the lawyers -- and I
3	will be present as well -- about the case can remain in your
4	deliberation courtroom if you wish to speak.  But you are
5	under no obligation.  You are excused with the thanks of the
6	Court.  You may discuss the case with anyone you want to; and
7	you don't have to discuss the case with anyone if you don't
8	want to.  But if you would like to talk to the lawyers briefly,
9	you may stay in the room.
10	    All right.  Thank you very much.  You are excused.
11	    (Jury out at 2:24 p.m.)
12	        THE COURT:  All right.  So what do we need to do,
13	set a status conference for a new trial date?
14	        MS. WILLIS:  Your Honor, the government would like to
15	set a new trial date, but we don't know what your calendar is
16	like, if we could get some kind of idea just for discussion.
17	        THE COURT:  Mr. Cooke, do you need to consult with
18	Mr. Khouri on that?
19	        MR. COOKE:  I will need to consult with Mr. Khouri.
20	He and I have not talked about that, dates in specific.
21	        THE COURT:  All right.  Why don't you do this:
22	Why don't you all check your calendars and so on and confer
23	with each other as to the date you can agree on.  Check with
24	Mr. Bradley and Mr. Mayo on my calendar, and if that works,
25	I will set the trial date.

```
 1                    MS. WILLIS:  Thank you, Your Honor.
 2                    MR. COOKE:  Thank you, Your Honor.
 3                    THE COURT:  So we don't have a date for Mr. Gooding to
 4       return, but Mr. Gooding has always been present for his court
 5       appearances, so I'm sure he'll be present for his.
 6                    MS. WILLIS:  Should we set a status?
 7                    THE COURT:  I think it makes sense.
 8                    MR. COOKE:  Will that be an in-person status?
 9                    THE COURT:  We can do it virtually.
10                    MR. COOKE:  That's fine.
11                    THE COURT:  Let's set a status for -- when do you
12       propose, Ms. Willis?  I don't have anything -- I guess I
13       could do November.  I just had one trial vacated in November.
14       Otherwise, we're looking at next year, and probably not till
15       March.
16                    MR. COOKE:  January, Your Honor?
17                    MS. WILLIS:  Government counsel would prefer the
18       November date.  If it's in March --
19                    THE COURT:  Are you...
20                    MS. WILLIS:  I will be out.
21                    THE COURT:  I wasn't sure.
22          (Laughter)
23          You know, you don't want to say anything.
24          Well, yes.  I have tried cases on both sides of a due
25       date, and before is better than after you're sleep deprived.
```

```
 1        November I'm available.  I'm out of the country till the 23rd.
 2        And I could do this -- we won't have very many pretrial
 3        matters.  I could do this on the 31st.
 4                MR. COOKE:  The 31st?
 5                THE COURT:  Of October.  I'm available.
 6                MS. WILLIS:  The government's available those dates.
 7                THE COURT:  For a trial?
 8                MS. WILLIS:  Yes.
 9                THE COURT:  Yeah.  You want to check with Mr. Khouri?
10                MR. COOKE:  On the 31st?
11                THE COURT:  Of October.
12                MR. COOKE:  That works for me, and for purposes of a
13        status, I don't want to slow the train down by talking to
14        Mr. Khouri.  One or both of us can do it.  I know I can do it.
15                THE COURT:  So the 31st of October is what I'm setting
16        it down for because of Ms. Willis's schedule.  She's going to
17        be out in the spring.  I'm setting down for trial on October
18        31st.  Now let's set --
19                MR. COOKE:  Trial?
20                THE COURT:  Yes, trial.  Because if I don't do it then,
21        I won't probably be able to do it till March, and Ms. Willis
22        is going to be out on leave.
23                MR. COOKE:  I think I do need to check with Mr. Khouri.
24                THE COURT:  Let's put it down for trial on that date
25        with the understanding that we may have to vacate.  I just
```

1  want to book it.  And then how about a status on the
2  6th of October?
3          MS. WILLIS:  That's fine for the government.
4          THE COURT:  Mr. Cooke?  It will be by Zoom.
5          MR. COOKE:  The 6th of October will be a Zoom?
6  Yes, Your Honor.  What time of day, I'm sorry?
7          THE COURT:  We could do it at 10 a.m.
8          MR. COOKE:  10 a.m. for a status is fine for
9  defense, Your Honor.
10         THE COURT:  Okay.  October 6, 10 a.m.
11     All right.  Thank you all.  Have a good weekend.
12 Dr. Gooding, you remain on your conditions of release with
13 which you're expected to comply and to be present for the
14 hearing -- virtual hearing on the 6th, and at this time
15 for the trial on the 20th [sic] unless I change that date.
16 I don't think that will be a problem because you've always
17 been in compliance.  All right.  Thank you all.
18      (Proceedings adjourned at 2:29 p.m.)

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.


*/s/ Bryan A. Wayne*
Bryan A. Wayne