UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>FREDERICK GOODING,<br><br>Defendant. | Case No.   19-cr-255<br><br>The Honorable Tanya S. Chutkan |

### GOVERNMENT'S MOTION FOR CLARIFICATION

The United States of America, by and through its undersigned counsel, hereby respectfully requests this Court to clarify its Order regarding the admissibility of evidence of the defendant's prior discipline by the Board of Medical Licensure and Discipline of the State of Delaware ("Delaware Medical Board") and relevant restrictions imposed by the District of Columbia. The government requests this clarification after a meet and confer with defense counsel on December 20, 2022, demonstrated that the parties do not share the same understanding about the effect of the Court's November 15, 2022, Minute Order "den[ying] as moot" defendant's Motion in Limine [DE 42] regarding admissibility of the 404(b) evidence.

The Court correctly ruled at trial — and no party disputes — that the defendant "opened the door" to the 404(b) evidence regarding the defendant's prior sanction by the Delaware Medical Board for failing to use fluoroscopy to guide cervical-spine facet joint injections. For the reasons set out below, the door remains "open," and the government should be permitted to use this evidence[1] in its case-in-chief without precondition that the "door" be re-opened.

---

[1] Specifically, the government proposes using the previously admitted, redacted version of GX 10C.

I.  **PROCEDURAL HISTORY**

On July 30, 2019, defendant Frederick Gooding was charged by Indictment with eleven counts of health care fraud, in violation of 18 U.S.C. § 1347. DE 1. Specifically, the Indictment alleges that the defendant defrauded Medicare, in part, by submitting false and fraudulent claims purporting that spinal injections had been provided with the aide and benefit of fluoroscopic guidance. However, in truth and fact, the defendant knew that he was not providing such injections with fluoroscopic guidance, as required by Medicare. Indeed, the defendant did not have a fluoroscopy machine at his practice. The defendant also submitted and caused to be submitted to Medicare claims for injections and aspirations that were not medically necessary, not provided, or both. To disguise his scheme, the defendant falsified medical documents, such as Procedure Reports, to make it appear as though he had performed the purported procedures. Medicare paid the defendant on these false and fraudulent claims.

On August 8, 2022, during a pretrial conference, this court heard arguments regarding the parties' motions in limine, including those regarding the defendant's prior discipline by the Delaware Medical Board. This court stated that it would hold these motions in abeyance pending whether the defendant disputed a contested element of knowledge. This court also noted the belief that the door would almost certainly be opened.

On August 24, 2022, this court entered a Minute Order regarding, in part, defendant's [DE 42] motion in limine to exclude evidence or argument regarding the defendant's prior disciplinary actions and the portion of the government's [DE 45] omnibus motion in limine regarding the same.[2] Disposition of these motions was "held in abeyance pending whether

---

[2] In the portion of the government's omnibus motion in limine [DE 45] regarding the defendant's prior discipline by the Delaware Medical Board, the government argued that this evidence is "inextricably intertwined" with the charged offenses because the discipline concerned the same procedure charged in the scheme — fluoroscopy-guided paravertebral spinal facet joint injections in the cervical spine (CPT Code 64633). *See* DE 1 at ¶ 14. The government

Defendant disputes a contested element of knowledge, such as his knowledge of what fluoroscopic imaging was or the requirements for using that imaging in certain proceedings."

Trial on this Indictment began on September 6, 2022.  On September 9, 2022, this Court ruled on the motions it had previously held in abeyance, concluding that the government could admit evidence of the Delaware Medical Board's sanctions of the defendant as well as the D.C. medical board's restrictions.  This was based on a finding that "defense counsel disputes Dr. Gooding's knowledge of whether fluoroscopic imaging was required for certain injections, and that had ultrasound had not been permitted, a medical board would have taken action . . . that's the inference that's been raised, and so I am going to allow the government to introduce the evidence." Trial Tr. 662 at 19-24.  This Court also ruled on proposed redactions and admitted into evidence a redacted version of the Delaware Medical Board's Order.  Trial Tr. 826–45; GX 10C.

The trial concluded on September 12, 2022, and on September 16, 2022, after the jury was unable to reach a unanimous verdict on any count, the Court declared a mistrial.  Re-trial on this Indictment is scheduled to begin on March 6, 2023.

On November 15, 2022, this Court entered a Minute Order stating, in relevant part, "The court previously ruled on all pre-trial motions in this case.  Therefore, Defendant's [42] Motion in Limine is hereby DENIED as moot.  For reasons explained at the pretrial conferences on August 8, 2022, and August 31, 2022, the court held the motion in abeyance, unless and until, Defendant 'opened the door' at trial.  Following the court's ruling at trial, the motion is now moot."

---

also argued that, as an alternative, this evidence should be admitted under Rule 404(b) for non-propensity purpose to prove the defendant's:  (a) knowledge that the fluoroscopy-guided paravertebral spinal facet joint injections were to be performed using fluoroscopic guidance; (b) the defendant's wrongful intent when he performed such procedures without fluoroscopic guidance, billing Medicare as though the procedures had been performed with such guidance; and (c) the absence of mistake in so doing.  The government recognizes the Court's prior ruling but reasserts these arguments in this Motion to ensure they are adequately preserved.

3

II.     **RELEVANT FACTS**

On or about December 2, 2010, the defendant was sanctioned by the Delaware Medical Board for incompetence in the practice of medicine because the defendant, among other things, performed cervical-spine facet joint injections without the use of fluoroscopic guidance (medical-imaging equipment that provides a physician with real-time x-ray images to assist in guiding a needle used for an injection). The Delaware Medical Board made the additional finding that "performing multiple injections from one puncture site makes it difficult to know specifically where the injection is going [and] [t]he Panel did not believe Dr. Gooding's desire to alleviate the pain of multiple injections for the patient, however well intended, is a valid reason to deviate from the standard of care." GX 10C at 8.

The Delaware Medical Board, among other sanctions, suspended the medical license of the defendant for a period of six months and placed his medical license on a period of probation for approximately two years. The Delaware Medical Board also prohibited the defendant from performing cervical and para-cervical injections. Initially, the Delaware Medical Board's Order required the defendant to take training in fluoroscopy as a condition of reinstating his suspended license. However, the defendant stated he would no longer perform cervical or paracervical injections and requested that he not be required to be trained in fluoroscopy. Based on that representation and request, the Delaware Medical Board modified its Order "to eliminate the requirement for fluoroscopy training based on Dr. Gooding's representation that he will no longer perform cervical or paracervical injections." *Id.* at 13.

In or around 2012, the defendant applied to renew his license to practice medicine in the District of Columbia. On or about July 13, 2012, the Board of Medicine for the District of Columbia ("D.C. Medical Board") reinstated the medical license of the defendant, but with

restrictions. The D.C. Medical Board, based on the findings of the Delaware Medical Board, similarly prohibited the defendant from performing cervical and para-cervical injections. On or about February 6, 2014, the D.C. Medical Board removed its restrictions on the defendant's medical license.

### III. APPLICABLE LAW

"Rule 404(b) is a rule of inclusion rather than exclusion. Although the first sentence of Rule 404(b) is framed restrictively, the rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance — for the purpose of proving that a person's actions conformed to his character." *United States v. Bowie*, 232 F.3d 923, 929-30 (D.C. Cir. 2000) (internal quotations omitted). "A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the defendant's character or propensity? If yes, the evidence is admissible unless excluded under other rules of evidence such as Rule 403." *Id.* at 930. In other words, evidence is permissible under Rule 404(b) if it "is relevant in that it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence,' . . . [or] the fact of consequence to which the evidence is directed relates to a matter in issue other than the defendant's character or propensity to commit crime." *Id.* (quoting Fed. R. Evid. 401).

"[A] defendant's testimony at a former trial is admissible in evidence against him in later proceedings." *Harrison v. United States*, 392 US 219, 222 (1968). "[A] defendant in a criminal case who takes the stand in his own behalf and testifies without asserting his privilege against self-incrimination thereby waives the privilege as to the testimony given so that it may be used against him in a subsequent trial of the same case." *Edmonds v. United States*, 273 F.2d 108, 112-13 (D.C.

5

Cir. 1959). Even where the "defendant does not take the stand at the second trial," the government is "not prevent[ed] from us[ing] his testimony given at the former trial if it would otherwise be admissible." *Id.*; *accord United States v. Grunewald*, 164 F. Supp. 644, 646 (S.D.N.Y. 1958) (holding that "prior trial testimony of [the defendant] is properly admissible, assuming it otherwise satisfied the standards of relevancy and materiality").

IV. **ARGUMENT**

A. <u>The Court's Prior Ruling that the 404(b) Evidence was Admissible is Correct, Undisputed, and Applies to the Re-Trial</u>

The Court previously ruled that a redacted version of the Delaware Medical Board Order was admissible under Rule 404(b) for a non-propensity purpose to prove the defendant's: (a) knowledge that cervical-spine injections, similar to those charged in the Indictment, were to be performed using fluoroscopic guidance; (b) the defendant's wrongful intent when he later performed such procedures without fluoroscopic guidance; and (c) the absence of mistake when he later performed such procedures without fluoroscopic guidance, billing Medicare as though the procedures had been performed using such guidance.

Specifically, this Court held: "it's clear to me that defense counsel disputes Dr. Gooding's knowledge of whether fluoroscopic imaging was required for certain injections, and that had ultrasound not been permitted, a medical board would have taken action." Trial Tr. 662 at 19-22. Even defense counsel acknowledged that the door had been opened and the 404(b) evidence was admissible. *See id.* 663 at 4-7 ("I actually in all candor agree with the Court. I asked those questions for a specific purpose knowing and intentionally, to develop a defense — actually, multiple defenses — to be utilized in closing argument.").

In its November 15, 2022, Minute Order, the Court "DENIED as moot" the defendant's motion seeking to exclude the Delaware Medical Board Order and related 404(b) evidence. The

government's understanding of this Order is that because the defendant "opened the door" at trial to the 404(b) evidence, the Delaware Medical Board's Order may now be used in the government's case-in-chief at the re-trial.

In addition to this being the natural reading of the Court's November 15, 2022, Minute Order, it is also the correct result because the Delaware Medical Board Order is directly relevant to the defendant's knowledge that fluoroscopy was required for the spinal injections at issue, his intent when he billed Medicare for fluoroscopy-guided spinal injections without, in fact, using a fluoroscopy machine, and his lack of mistake in so doing.

> B. <u>Defendant's Prior Testimony is Directly Relevant to His Knowledge, Intent, and Lack of Mistake in Billing Medicare for Fluoroscopy-Guided Spinal Injections and is Admissible at the Re-Trial in the Government's Case in Chief</u>

Additionally, a number of statements that the defendant made during his prior testimony are admissible in the re-trial, even if the defendant does not testify again. *See Edmonds*, 273 F.2d at 113 (holding that the "trial court did not err in permitting portions of [the defendant's] testimony at the first trial to be used against him at the second, even though he did not take the stand at the second trial" because "[a]dmissions made under such circumstances may be proved in the same manner and for the same reasons that admissions made out of court may be proven"). The government intends, in its case-in-chief, to admit certain non-hearsay statements made by the defendant during his prior testimony that relate to the defendant's knowledge, intent, and lack of mistake in billing for fluoroscopy-guided spinal injections, many of which explicitly refer to the Delaware Medical Board findings and sanctions.

Under Federal Rule of Evidence 801(d)(2)(A), statements made by the defendant, offered by the government against him, are not hearsay and are admissible. This rule applies in equal force when the defendant's statements were made at a prior trial and the government offers them against him in a re-trial of the same charges. *See, e.g.*, *Edmonds*, 273 F.2d at 113; *United States v.*

7

*Hanrahan*, 508 F.3d 962, 967, n.2 (10th Cir. 2007) (affirming conviction and analyzing admission of the defendant's prior trial testimony as "not hearsay because . . . it was an admission by a party-opponent"). The following is a non-exhaustive list of examples of the defendant's admissible, non-hearsay statements that concern his knowledge, intent, or lack of mistake:

- On direct examination, the defendant was asked: "And did the Delaware medical board tell you that the imaging they wanted you to use was fluoroscopy?" To which he answered, "Yes." Trial Tr. 910 at 4-6.

- On direct examination, the defendant was asked: "And even in 2012 here in Washington, were you allowed to perform spinal injections in any area without imaging?" To which he answered, "Yes." Trial Tr. 911 at 8-10.

- On direct examination, the defendant stated: "We never tried to misrepresent that we were using fluoroscopy and CT. So we were trying to find the correct pathway for what we thought was a good treatment modality for my patient population." Trial Tr. 923 at 12-15.

- On direct examination, the defendant stated: "I was always trying to alert Medicare to the fact that I was an ultrasound guy. So there was never any representation that we were trying to do fluoro or CT." Trial Tr. 926 at 22-24.

- On direct examination, the defendant stated: "Because an injection means that you're delivering medicine by way of a syringe and a needle into at tissue. There's no requirement that you pull the needle completely out; and in fact, it's recommended, that with this technique that you are saving the patient from obviously the pain of multiple injections." Trial Tr. at 941-42.

- On cross-examination, the defendant was asked: "You knew based on your testimony that Medicare required CT or fluoroscopy for spinal injections after 2015. Correct?" To which he answered, "Yes." Trial Tr. 960 at 8-10.

- On cross-examination, referring to the 2017 audit letter from Medicare, the defendant was asked: "And you knew their reasoning for telling you that they couldn't pay the claims that they looked at. Correct?" To which he answered, "Yes. . . . I didn't think that was appropriate for my patient population." Trial Tr. 960-61.

- On re-direct, the defendant was asked about whether he could use the hospital's fluoroscopy machine, to which he responded: "I could send patients there if I wanted to . . . [but] because I didn't have competency in it, I would not use it." Trial Tr. 982 at 5-13.

The following is a non-exhaustive list of examples of the defendant's admissible, non-hearsay statements that refer to the Delaware Medical Board findings and sanctions:

- On direct examination the defendant stated: "especially because of the directive given by Delaware, I really poured my attention into specifically these visualization techniques . . . . I decided that ultrasound was most appropriate for my practice and my patient population . . . I don't only do spinal injections." Trial Tr. 913 at 1-9. The statement refers to the Delaware Medical Board Order and the defendant's subsequent decision not to use fluoroscopic guidance.

- On cross-examination, again speaking about the Delaware Medical Board Order, the defendant was asked: "And you would agree that paragraph 22 indicates that the standard of care per this Delaware board order requires the use of fluoroscopic

9

guidance when performing cervical nerve blocks. Is that correct?" To which he answered, "Yes." Trial Tr. 976 at 4-8.

- On cross-examination, speaking about the Delaware Medical Board Order, the defendant was asked: "And is it fair to say that in the middle of the page in this order it indicates that you failed to embrace the technology available to you and required by that standard of care?" To which he answered, "It does say that." Trial Tr. 976 at 22-25, 977 at 1.

These admissible non-hearsay statements by the defendant are directly relevant to his knowledge, intent, and lack of mistake in billing Medicare for fluoroscopy-guided spinal injections — many of which explicitly refer to the Delaware Medical Board findings and sanctions — and further support the Court's Order denying the defendant's motion to exclude the 404(b) evidence.

## V.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court clarify its Order as follows: that defendant's prior discipline by the Delaware Medical Board and prior restrictions imposed by the District of Columbia are admissible in the government's case in chief without precondition.[3]

Dated:   December 30, 2022

Respectfully submitted,

GLENN S. LEON
Chief, Fraud Section

*/s/ Jil Simon*

JIL SIMON
Trial Attorney
ALEXANDER KRAMER
Assistant Chief
Criminal Division, Fraud Section
United States Department of Justice

---

[3] As stated above, the government proposes using the previously admitted redacted version of GX 10C.

## CERTIFICATE OF SERVICE

I, Jil Simon, certify that the foregoing Motion has been served on counsel via ECF as of the date of this filing.

By: /s/ Jil Simon
Jil Simon
D.C. Bar No. 1030206
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Ave., NW
Washington, DC 20005
Tel: (202) 514-3257
Email: jill.simon@usdoj.gov