UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) Criminal No. 19-CR-0255 (TSC) |
| FREDERICK GOODING, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Dr. Frederick Gooding was convicted after a jury trial of 11 counts of Health Care Fraud and Causing an Act to Be Done in violation of 18 U.S.C. §§ 1347 and 2. *See* Indictment, ECF No. 1; Verdict Form, ECF No. 113. As part of this scheme, Dr. Gooding submitted and caused to be submitted false and fraudulent Medicare claims and Medicare paid him millions of dollars on these claims. Indictment ¶ 17, 24. The government has moved for the entry of a preliminary order of forfeiture, ECF No. 132. For the reasons set forth below, the court will GRANT the motion and adopt the government's proposed preliminary order of forfeiture.

### I. LEGAL STANDARD

Restitution is designed to compensate the victim for its loss, while forfeiture is designed to punish the defendant by forcing him to disgorge the proceeds of his criminal activity. *United States v. Emor*, 850 F. Supp. 2d 176, 215 (D.D.C. 2012) (citing *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007)). "Because of the distinct purposes served by restitution and forfeiture, and the mandatory language found within their respective statutory schemes, courts

1

do not offset one based on the other." *Emor*, 850 F. Supp. 2d at 215; *see also United States v. McGinty*, 610 F.3d 1242, 1248 (10th Cir. 2010) ("Nothing in the statutory scheme permitted the district court to reduce the mandated criminal forfeiture order because the defendant also had to satisfy his obligation to pay restitution"); *Browne*, 505 F.3d at 1281 (ordering forfeiture and restitution because "each serve[d] a different goal" and were mandatory under the relevant statutes); *United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011) (finding that the district court could not equitably reduce the forfeiture amount owed by defendant in light of amount he owed in restitution).

## II. PRELIMINARY ORDER OF FORFEITURE

Under Federal Rule of Criminal Procedure 32.2(b)(1)(A), where "the government seeks a personal money judgment," as it does here, "the court must determine the amount of money that the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). The rules further provide that "[t]he court's determination may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A).

The government must prove the facts supporting forfeiture by a preponderance of the evidence. 21 U.S.C. § 853(d); *United States v. Three Hundred Three Virtual Currency Accts.*, No. 20-CV-712 (DLF), 2021 WL 663190, at *2 (D.D.C. Feb. 19, 2021); *United States v. Gaskin*, 364 F.3d 438, 461 (2d Cir. 2004). Forfeiture is mandatory in cases where it applies.

*See United States v. Monsanto*, 491 U.S. 600, 607 (1989); *United States v. Perholtz*, 842 F.2d 343, 369 (D.C. Cir. 1988) ("forfeiture is mandatory" if the statutory criteria is satisfied); *Emor*, 850 F. Supp. 2d at 216 (same).

18 U.S.C. § 982(a)(7), which applies to all 11 counts here, provides that "in imposing sentence on a person convicted of a Federal health care offense," the court "shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." The D.C. Circuit has interpreted the phrase "gross proceeds" broadly, to include 'the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied.'" *United States v. Bikundi*, 926 F.3d 761, 792 (D.C. Cir. 2019) (quoting *United States v. Poulin*, 461 F. App'x 272, 288 (4th Cir. 2012)). The statute does not allow credit for "lawful services," unlike other forfeiture statutes such as 18 U.S.C. § 981(a)(2)(B). *Id.* at 793.

The government seeks a forfeiture money judgment of $2,083,915.84, which it claims represents the gross proceeds Dr. Gooding received from his fraudulent scheme. Forfeiture Hearing Transcript at 6:6-23, ECF No. 147. Dr. Gooding objects to the entry of a money judgment, alleging that the "government has not demonstrated that the funds identified are, in truth and fact, proceeds traceable to the commission of the offense," and the proposed sum of approximately $2 million is unsupported by the evidence. Opp'n to Gov'ts Mot. for Prelim. Order of Forfeiture, ECF No. 137 at 1 (internal quotations omitted).

Applying the standards set forth above, the court finds that a preliminary order of forfeiture of $2,083,915.84 is appropriate. The government arrived at this figure using three exhibits presented at trial during expert witness Stephen Quindoza's testimony: Government Exhibits 9B, 9D, and 9E. Forfeiture Tr. at 6:15-23. Exhibit 9B summarizes Medicare claims

3

data regarding the denervation and destruction of nerves and facet joints, 9D summarizes claims data regarding facet joint injections, and 9E summarizes claims regarding hyaluronan or derivative, Gel-One injections.  *See* Gov't Ex. 9B, 9D, and 9E; Forfeiture Tr. at 6:9-15.  Medicare deposited the total "Amount Paid" in 9B, 9D, and 9E to Dr. Gooding, as evidenced by Government Exhibit 2A, which shows the amount of money Medicare deposited into his WSFS bank account ending in 1950 during the relevant period charged in the Indictment.  Forfeiture Tr. at 6:19-7:8 (discussing Gov't Ex. 2A).  As noted, Medicare paid these proceeds to Dr. Gooding pursuant to Medicare claims he submitted as part of his fraudulent scheme.

Dr. Gooding contends that the funds the government identified in his bank account are not proceeds traceable to the commission of the offense as required by 18 U.S.C. § 982(a)(7).  He argues that Government Exhibits 9B, 9D, and 9E do not fairly and accurately summarize the data in Government Exhibit 7, a large Excel file with Medicare claims data, because Exhibit 7 was "derived from another database" and "no one[] examined the original database or how it was created."  Forfeiture Tr. at 9:25-10:5.  But the court found Quindoza's trial testimony to be credible and noted that the defense had an opportunity to cross-examine him regarding the reliability of his calculations and summaries at trial and chose not to do so.  *Id.* at 13:12-17.  Dr. Gooding further argues that Medicare refused about 60% of bills related to the amounts paid in Exhibits 9B, 9D, and 9E.  *Id.* at 5:24-6:1.  Medicare's reimbursement refusal rate however, does not factor into how the court determines a forfeiture amount because the primary issue is the amount the provider actually paid.

In fact, Dr. Gooding's position is wholly at odds with D.C. Circuit precedent.  In *Bikundi*, the Circuit made clear that 18 U.S.C. § 982(a)(7) applies to "the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied."  926 F.3d

at 792.  The Court also emphasized that, "whereas other forfeiture statutes allow credit for 'lawful services,' . . . the statute for health care fraud does not." *Id.* at 793 (internal citation omitted).  Because Dr. Gooding secured money from Medicare by submitting fraudulent claims, the proceeds from those claims are traceable to his fraudulent scheme, notwithstanding any lawful services he provided.  Accordingly, the court finds that the amounts paid in Government Exhibits 9B, 9D, and 9E are traceable to the commission of the offense and are therefore the appropriate amounts the court must use to issue a forfeiture order in accordance with 18 U.S.C. § 982(a)(7).

18 U.S.C § 853(p)(1) and (2) also apply to all 11 counts.  That provisions state that if property subject to criminal forfeiture "cannot be located upon the exercise of due diligence," "has been transferred or sold to, or deposited with, a third party," "has been placed beyond the jurisdiction of the court," "has been substantially diminished in value," or "has been commingled with other property which cannot be divided without difficulty,". . . "the court shall order the forfeiture of any other property of the defendant, up to the value of any property [previously] described."  18 U.S.C § 853(p)(1)-(2).

At the forfeiture hearing, defense counsel stated that the funds Medicare deposited to Dr. Gooding have dissipated.  Forfeiture Tr. at 23:23-24:1.  Dr. Gooding has listed his property at 204 Buck Road in Wilmington, Delaware for sale with an asking price of $2.3 million, and he has agreed to make the funds available to satisfy the court's forfeiture order.  *See* Joint Status Report, ECF No. 143; Forfeiture Tr. at 24:10-18.

Given the mandatory nature of the forfeiture statutes at issue in this case and the evidence presented at trial, the court finds that the entry of a preliminary forfeiture order is appropriate and required and, accordingly, it will grant the government's motion.

### III. RESTITUTION ORDER

The government also seeks an order of restitution in the amount of $2,083,915.84, in addition to the forfeiture order for the same amount. *See* Gov't's Sentencing Mem. at 2, ECF No. 133. The Mandatory Victims Restitution Act ("MVRA") requires courts to order restitution to the victims of certain offenses, including crimes "committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). The statute directs that "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity," the court must order restitution to "any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). In such cases, the district court "shall order" the defendant to "make restitution to [each] victim of the offense" in "the full amount of each victim's losses as determined by the court and *without* consideration of the economic circumstances of the defendant." *Id.* §§ 3663A(a)(1), 3664(f)(1)(A) (emphasis added). Under the MVRA, courts consider Medicare a person directly harmed where a defendant defrauds the program and limit restitution to "actual, provable loss suffered by the victim and caused by the offense conduct." *See Bikundi*, 926 F.3d at 791. The amount of restitution must be supported by a preponderance of the evidence. *Id.*; 18 U.S.C. § 3664(e).

"Although the MVRA restricts discretion in setting the amount of restitution, the statute expressly authorizes discretion in fashioning how a defendant is required to pay that amount." *United States v. Fields*, No. 99-CR-0286 (KBJ), 2020 WL 32990, at *1 (D.D.C. Jan. 2, 2020) (citing *United States v. Armstrong*, No. 09-CR-135 (BAH), 2018 WL 5923913, at *5 (D.D.C. Nov. 13, 2018)). A court may take into consideration "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the

defendant; including obligations to dependents," 18 U.S.C. § 3664(f)(2), and may order "a single, lump-sum payment," "partial payments at specified intervals," "in-kind payments," or "a combination of payments at specified intervals and in-kind payments." *Id.* § 3664(f)(3)(A). The court may even order "nominal periodic payments" if it "finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments." *Id.* § 3664(f)(3)(B).

The MVRA applies here because a jury convicted Dr. Gooding of engaging in a scheme to defraud Medicare, the victim in this case. Having considered the evidence submitted at trial and the forfeiture hearing, the court finds that government has proven by a preponderance of the evidence that Medicare suffered a loss of $2,083,915.84 because, as previously discussed, that is the amount the program deposited into Dr. Gooding's WSFS bank account. *See* Gov't Ex. 9B, 9D, and 9E; Forfeiture Tr. at 6:19-7:8 (discussing Gov't Ex. 2A).

18 U.S.C. § 3664(e) provides that the "burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." Dr. Gooding contends that the court should take into account his financial resources, needs and earning ability, and his dependents in ordering restitution and forfeiture. Forfeiture Tr. at 27:17-25. But, as noted previously, the MVRA does not provide the court with discretion over the amount of restitution Dr. Gooding must pay but rather the payment schedule. Dr. Gooding's financial circumstances are summarized in the Probation Office's Final Presentence Investigation Report, which described Dr. Gooding as widowed, with three children over 40 years old and no dependents. PSR at 1, 11, ECF No. 135. The PSR states that Dr. Gooding's monthly expenses total $9,012, his monthly cash flow is $5,375, and his net worth is

7

over $9.3 million. *Id.* at 15. It therefore appears that even after paying the amounts the government requests as restitution and forfeiture, a total of $4,167,831.68, Dr. Gooding will have $5,216,476.32 remaining. *Id.* at 15. The court is bound by Congress's language in the MVRA—it "shall" order restitution in the amount of $2,083,915.84. But given that Dr. Gooding is retired and his monthly expenses are significantly greater than his monthly cash flow, the court orders that he immediately pay a lump sum of $1,100 in special assessment ($100 per each of 11 counts); and commence restitution payment 60 days after release from imprisonment. *See* Judgment as to Tarek Abou-Khatwa at 8, *USA v. Abou-Khatwa*, 18-cr-00067, ECF No. 192 (ordering defendant to immediately pay a lump sum of $2,200 in special assessment and ordering forfeiture of $8,402,966.73 and $3,836,709.34 in restitution to begin 60 days after release from imprisonment). The court will set the payment plan based on an assessment of Dr. Gooding's ability to pay at that time.

## IV.  CONCLUSION

For the foregoing reasons, the court finds that the government is entitled to a preliminary order of forfeiture against Dr. Gooding in the amount of $2,083,915.84 and Medicare is also entitled to restitution in the amount of $2,083,915.84. The court will issue an accompanying order.

Date:  September 22, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge